IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DEERE & COMPANY,<br>  Plaintiff,<br><br>v.<br><br>XAPT CORPORATION,<br>  Defendant. | Case No. 4:19-cv-04210-SLD-JEH |

**Order**

  Now before the Court are Plaintiff Deere & Company's Motion for Leave to File Plaintiff's Second Amended and First Supplemental Complaint, Memorandum of Law, and Request for Ruling (Doc. 43) and Defendant XAPT Corporation's Motion to Stay Discovery Pending Resolution on Defendant's Motion to Dismiss (Doc. 36). The Motions are fully briefed and for the reasons set forth below, the Plaintiff's Motion is GRANTED and the Defendant's Motion is DENIED AS MOOT.

**I**

  The Plaintiff filed its original Complaint on October 18, 2019 against Defendant XAPT Corporation (XAPT), and thereafter filed its Amended Complaint (Doc. 5) on October 23, 2019. In the Amended Complaint, the Plaintiff brought claims against XAPT for breach of contract, fraudulent inducement, and reformation. The Plaintiff alleged that it determined in 2013 that it could better serve its dealers by developing a single, fully integrated "Dealer Business System" (DBS) for purchase by all of its dealers in key markets. (Doc. 5 at pg. 4 ¶17). Thus, it determined it needed a platform on which the system would be built, and a

1

developer to create and implement the system as well as provide ongoing support. (Doc. 5 at pg. 5 ¶21).

From the inception of Deere's relationship with XAPT[1] via a telephone call in December 2015 and consistently over the next almost two years prior to contract execution, Deere consistently described its development needs: a global DBS template, customizable by region, including more than three hundred enumerated capabilities, data migration from Deere's prior systems, full integration among its applications, and initial roll-out to dealers in seven countries. (Doc. 5 at pg. 6 ¶25). Four principal contracts between the Plaintiff and Defendant governed the creation and development of the Global DBS: a Master Services Agreement (MSA); a Work Order Template – Global Template; a Work Order – Governance; and XAPT Subscription Delivery Agreement. (Doc. 5 at pg. 10 ¶41). The Plaintiff further alleges that after contract execution, gaps to produce the global DBS multiplied exponentially and the Defendant failed to deliver project deliverables, it produced code riddled with errors, and it racked up costs. (Doc. 5 at pg. 15). The Plaintiff then invested in training XAPT in an effort to support XAPT, but post-training, gaps increased, quality did not improve, and XAPT sought a $10 million increase in the contract price to deliver the same product. (Doc. 5 at pgs. 16-17).

On December 12, 2019, the parties jointly moved to stay this matter so that they could mediate this case, and the Court granted their motion and stayed the case to no later than February 5, 2020. On February 24, 2020, Defendant XAPT filed its Motion to Dismiss (Doc. 24). On March 4, 2020, the Court adopted the parties' discovery plan which includes a deadline of July 10, 2020 to amend the

---

[1] Deere alleged XAPT "styles itself a 'global leading provider of Microsoft Dynamics ERP business solutions' that 'provides a full complement of business consulting services, including implementation and integration, for mid-size and enterprise organizations globally.'" (Doc. 5 at pg. 3 ¶12).

2

pleadings and join additional parties. The next day, March 5, 2020, the Defendant filed its Motion to Stay Discovery Pending Resolution on Defendant's Motion to Dismiss (Doc. 36). On March 27, 2020, the Plaintiff filed its Response (Doc. 41) to the Defendant's Motion to Dismiss and its Motion for Leave to File Plaintiff's Second Amended and First Supplemental Complaint, Memorandum of Law, and Request for Ruling (Doc. 43) (Motion to Amend). In its Motion to Amend now before the Court, the Plaintiff seeks to join additional parties as defendants – XAPT Kft, XAPT Solutions[2], and Cosmo Consult[3] – and to add additional claims that arose from the conduct of XAPT, XAPT Kft, XAPT Solutions, and Cosmo Consult.

## II

### A

The Plaintiff properly seeks leave to file its amended complaint pursuant to Federal Rule of Civil Procedure 15 given that the deadline to amend pleadings and add parties has not yet passed. Rule 15(a)(2) provides in relevant part that the Court should freely give leave to a party to amend its pleading "when justice so requires." FED. R. CIV. P. 15(a)(2). However, leave to amend may be denied where there is undue delay, bad faith on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party if the amendment is allowed, or futility. *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (citations omitted).

Here, Defendant XAPT argues the Plaintiff's Motion to Amend should be denied as amendment would be futile. Specifically, XAPT argues: 1) the amendment is futile because Deere cannot allege compliance with Section 15.6.1

---

[2] XAPT Kft and XAPT Solutions Pty Ltd are identified as "approved subcontractors" in the MSA. (Doc. 27 at pgs. 6-7).
[3] In the proposed second amended complaint, Plaintiff Deere alleges that, "In or about October or early November 2019, Deere learned that XAPT was utilizing an unapproved subcontractor on its project that operated under the email address @cosmoconsult.com." (Doc. 46 at pg. 27 ¶123).

3

of the MSA; 2) the amendment is futile due to a lack of personal jurisdiction over XAPT Solutions; and 3) the amendment is futile due to the absence of a viable theory of liability against XAPT Kft, XAPT Solutions, and Cosmo Consult. An amendment is futile when the new pleading would not survive a motion to dismiss. *Gandhi v. Sitra Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## B

### 1

Defendant XAPT argues that the proposed second amended complaint includes vague allusions to some form of a dispute resolution process which remain insufficient to fulfill the specific requirements of Section 15.6.1 of the MSA which provides for a mandatory pre-suit dispute resolution process. Section 15.6.1 of the MSA specifically provides:

> The parties agree to work together in good faith to resolve controversies, claims or disputes relating to this Master Agreement ("Dispute"). The respective Project Managers will first attempt to resolve the Dispute; however, if there is no resolution within ten (10) business days, either Party may then require that their next level of management meet within the next ten (10) business days to resolve the Dispute. If these managers are unable to resolve the Dispute, then there may be one final escalation to designated leaders, who will meet within ten (10) business days to make one last attempt to resolve the Dispute. Except for injunctive relief described below, the Parties agree to use this mutual dispute resolution process before pursuing any legal action against the other. Each Party will provide the other with information and documentation to substantiate its position with respect to the Dispute.

4

(Doc. 27 at pgs. 29-30). In the proposed second amended complaint, the Plaintiff alleges the following:

> Despite Deere providing notice as required under the Contracts and following the parties' mutual dispute resolution process, including months of communications with the requisite Project Manager, "next level" management, and "designated leader" levels at XAPT, and a failed mediation "conducted by a mutually agreeable mediator in a mutually agreed location," XAPT has failed to cure the breaches as required pursuant to MSA § § 10.12, 15.6.1, 15.6.2.

(Doc. 46 at pg. 36 ¶185). That allegation easily satisfies the motion to dismiss standard set forth in *Iqbal* and *Twombly*. The Plaintiff alleges it provided the requisite notice and followed the parties' mutual dispute resolution process. The Court must accept that allegation as true; thus, this case may proceed at this time because a condition precedent to suit (adherence to the MSA's pre-suit dispute resolution process) has been satisfied.

The Court notes that it is disingenuous for Defendant XAPT to persist in making this argument in response to the Plaintiff's Motion to Amend in light of the record in this case. Defendant XAPT was granted, pursuant to its joint request with Plaintiff Deere on December 12, 2019, a stay in this matter so that the parties could mediate this case. Section 15.6.2 of the MSA provides:

> *If the Dispute has not been resolved through the mutual dispute resolution process described above* within thirty (30) business days of its initiation, the Parties may agree to settle the Dispute by mediation conducted by a mutually agreeable mediator in a mutually agreed location.

(Doc. 27 at pg. 30) (emphasis added). Given that the MSA makes clear mediation becomes an option *after* the parties avail themselves of the mutual dispute resolution process and given that XAPT pursued mediation, its futility argument in this regard at this early stage of the case is even less convincing.

Defendant XAPT also argues that Deere has failed to state claims for breach of contract, a claim for conversion, a claim for replevin, and an "alter ego" claim. XAPT argues that the MSA is a contract between only itself and Deere, and consequently there is no basis for an allegation that XAPT Kft, XAPT Solutions, or Cosmo Consult owed any contractual obligation to Deere under the MSA. In its Reply in support of its Motion to Amend, Deere argues that each of those new defendants has a separate, direct contractual obligation to Deere to deliver and return Deere confidential information via the Confidentiality Agreement binding upon the new subcontractor defendants. Deere argues further that MSA 12.4 is binding not only upon XAPT but also upon all the new defendants as alleged because all of the Defendants acted as the alter egos of the others. In the proposed second amended complaint, Deere alleges in its breach of contract Count II, among other things:

> 200. For example, MSA § 12.4.1 requires Supplier to promptly return (or at Discloser's option destroy) all applicable Discloser Confidential information and other property and materials of Discloser.
> 201. Among other things, XAPT, XAPT Kft, XAPT Solutions, and Cosmo Consult are required to return all Deliverables to Deere.
> 202. Approved subcontractors were obligated to enter into the confidentiality agreement identified as Exhibit D to the MSA and have each sign it . . . Deere requested XAPT comply with its post termination obligation on January 24, 2020, and again on March 23, 2020.

(Doc. 46 at pg. 38). Deere alleges in its breach of contract Count III, among other things:

> 207. XAPT, XAPT Kft, XAPT Solutions, and Cosmo Consult agreed to comply with the terms of the MSA, including agreeing to the terms of the confidentiality agreement in Exhibit D to the MSA.

6

208. On January 24, 2020, Deere terminated the Contracts, including the MSA, for cause and requested that XAPT comply with its post termination obligations.
209. Among other things, following termination of the Contracts, or at any time that Deere requests, Deere is entitled to the return of its Confidential Information.

* * *

211. Despite Deere providing notice as required under the Contracts, XAPT has not complied with its post termination obligation.
212. Again, on March 24, 2020, Deere asked XAPT to comply with its and its approved subcontractors' post termination obligations.

* * *

214. XAPT is responsible for its approved subcontractors' compliance with the Contracts.

*Id*. at pgs. 38-39. Thus, XAPT's reliance upon the fact that the MSA was between only itself and Deere and not the new Defendants disregards Deere's allegations that the new defendants had separate, direct contractual obligations via the confidentiality agreement. That Defendant XAPT apparently disagrees with those allegations does not render them implausible such that Deere's breach of contract claims against the new defendants are futile.

Defendant XAPT similarly argues with regard to Deere's conversion and replevin claims against XAPT and the new defendants that because the new defendants are not parties to the MSA, they cannot be held liable in tort for "violating" an agreement when they are not bound by that agreement in any way whatsoever. XAPT contends Deere attempts to rescue its implausible claims against the new defendants based upon an "alter ego" theory also fails as implausible. Specifically, XAPT argues that Deere's allegations in its alter ego theory County X are grossly inadequate to overcome the presumption of corporation separateness. XAPT specifically argues that Deere's non-conclusory

7

factual allegations to support the claim do not constitute a plausible basis for disregarding the separate legal existence of the new, foreign defendants.

In Count X, Deere alleges, among other things that: XAPT Solutions put out a press release in September 2019 with a headline that read "COSMO CONSULT ACQUIRES XAPT SOLUTIONS;" XAPT and XAPT personnel utilized email addresses @cosmoconsult.com; upon information and belief, XAPT employees were interchangeable with those of Cosmo Consult; initially, XAPT contended that Cosmo Consult was the same consultant as it was approved on July 24, 2018, that the company "is also still called XAPT Kft," and the ownership had changed but no new resources had been added and the resources assigned were the same Deere approved in July 2018; XAPT shifted position and later contended that its approved subcontractor S.C. XAPT Solutions SRL changed its name to Cosmo Consult Business Solution S.R.L. and that the change had no impact on XAPT's contractual relationship with them. (Doc. 46 at pg. 49).

A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Notably, Defendant XAPT argues that the Court would have to examine the law of "alter ego" liability under the law of the state where the entities were formed to determine whether Deere's alter ego theory could proceed. XAPT does not provide the elements of an alter ego claim under Australian law (XAPT Solutions). Nor does XAPT set forth the elements of an alter ego claim under Florida law (XAPT). Without setting forth the elements necessary to state an alter ego claim under those laws, XAPT cannot seriously contend Deere's allegations are so bereft of factual content as to make its alter ego claim facially implausible. The one case Defendant cites in support of its argument that Deere fails to state an alter ego claim *not* in the context of the exercise of personal jurisdiction was at the summary judgment stage. *See Int'l Union of*

8

*Operating Eng'rs, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427 (7th Cir. 1998) (setting forth that the district court had ruled on cross-motions for summary judgment). Certainly, the ultimate success or failure of an alter ego claim is better suited for a time later than the amendment of pleadings stage.

As the Plaintiff has sufficiently pled an alter ego theory of liability, that does away with Defendant XAPT's reasons for why Deere fails to state claims for replevin and conversion. While Defendant XAPT also argues that Deere's remaining allegations as to Count IX for replevin are insufficiently conclusory and boiler-plate, the fact remains that "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555)). "An action for replevin may be brought to recover wrongfully detained goods or chattel." *Rubloff Development Group, Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 751 (N.D. Ill. 2012) (citing Illinois law). Plaintiff Deere's proposed second amended complaint alleges that the parties' contracts provided that Deere owned the Deliverables and Deere Confidential Information, that it has the ownership and/or right to immediate possession of that information, that Defendant XAPT and the new defendants have no right to possess that information, and upon information and belief they still wrongfully possess that information. (Doc. 46 at pg. 48). This is to say nothing of Deere's allegations elsewhere in the proposed second amended complaint detailing the parties' contracts and the particular provisions as to deliverables and confidential information. Deere has provided both fair notice of its replevin claim and the grounds upon which it rests.

## 3

Lastly, Defendant XAPT argues that Deere's proposed amendment in which it adds XAPT Solutions (Solutions) as a defendant is futile because this Court lacks personal jurisdiction over Solutions. Solutions is a foreign company with its

9

principal place of business in Brisbane, Australia. (Doc. 46 at pg. 5 ¶17). Plaintiff Deere has the burden of establishing personal jurisdiction. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). However, if "the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts." *Id.* (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)); *see also Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) ("Where . . . the defendants submit evidence opposing the district court's exercise of personal jurisdiction, the plaintiffs must similarly submit affirmative evidence supporting the court's exercise of jurisdiction"). Accordingly, at this stage, the Court must take as true all well-pleaded facts in Deere's proposed second amended complaint and will resolve any factual disputes in the affidavits and supporting evidence in favor of the plaintiff. *Tamburo*, 601 F.3d at 700.

A district court exercising diversity jurisdiction has personal jurisdiction over a nonresident defendant only if an Illinois court would have jurisdiction. *Purdue Research Found.*, 338 F.3d at 779. Illinois' Long Arm Statute provides that "courts may exercise jurisdiction on any basis allowed by the due process provisions of the Illinois and federal constitutions." *Matlin*, 921 F.3d at 705 (citing 735 ILCS 5/2-209(c)). Defendant XAPT argues, and Deere does not dispute, that it is not necessary to analyze whether Illinois' potentially more restrictive due process requirements are satisfied where Deere's attempt to add Solutions does not satisfy federal due process requirements. Under the Due Process Clause of the Fourteenth Amendment, a defendant must have "certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Deere argues this Court has specific jurisdiction over Solutions. The Court must therefore determine whether Solutions has "purposefully established minimum contacts within the forum State" such that Solutions "should reasonably anticipate being haled into court" in Illinois. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985)). Specific jurisdiction is appropriate where: 1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state; and 2) the alleged injury arises out of the defendant's forum-related activities. *Tamburo*, 601 F.3d at 702.

Defendant XAPT argues that Solutions is not a party to any contracts with Deere, has no business dealings with Deere related to the subject matter of this action, and has not performed any services in Illinois relating to the various contracts described in Deere's proposed second amended complaint. XAPT attached the Declaration of Bill Singleton to its Response to the Plaintiff's Motion to Amend. In his Declaration, Singleton states he is a lawyer licensed to practice law by the Supreme Court of Queensland, the highest court in the State of Queensland, Commonwealth of Australia, Solutions is a proprietary limited company created and existing under the laws of the Commonwealth of Australia, Solutions' principal place of business is in Brisbane, Queensland, Australia, Solutions does not maintain any place of business or office within Illinois, Solutions does not have any employees within Illinois, Solutions does not have any customers within Illinois and generates no revenue from any business within Illinois, Solutions is not a party to any contracts with Deere & Company, and it has not performed any services within Illinois relating to the various contracts described in Deere's proposed second amended complaint.

In reply to XAPT's Response, Plaintiff Deere argues that Singleton's Declaration is riddled with misleading and patently false assertions regarding

11

Solutions' purported lack of contacts with Illinois, and Deere's business records are replete with documentation evidencing Solutions' presence in Illinois through Singleton, Solutions' Chief Executive Officer H. Ralph Hunt and other Solutions personnel.

Attached to Deere's Reply is the Declaration of Erin Scupham, IT Business Process Integrator of Deere & Company, in which he states the documents attached as exhibits to his Declaration are true and correct copies of emails dated between July 2016 and February 2019 maintained in the ordinary course in Deere's email records. One email provided that Bill Singleton was a guest at Deere in July 2016 during which time it appeared he was downloading data illegally. An April 2017 email chain to/from Ralph Hunt with the Subject line "RE: Visitors to Deere May 1- May 12" provided wifi passwords for Ralph Hunt, Dejan Popovic (listed as XAPT's president in the 2017 MSA), and Daniel Enekes (identified as president and CEO of XAPT Group in 2015 in Plaintiff's Exhibit 4 attached to its Reply) and listed the visitors during that time frame to include Hunt and Singleton. Another exhibit is a rental agreement for a unit in Davenport Iowa between XAPT Corporation and City Center Townhomes. One exhibit is the Affidavit of Todd Price, Chief Technology Officer at Page Vault, Inc., a cloud-based service that enables users to control a remote, cloud-based browser to make captures of webpages. Price affirms that attached to his Affidavit are true and accurate copies of captures for the URLs and the dates specified on the first page of each capture. The captures include an announcement dated December 18, 2015 that Ralph Hunt, was appointed as Chief Operating Office of XAPT Corporation and would report to President and CEO of XAPT, Enekes. The announcement also provided that Hunt "remains CEO of XAPT Solutions P/L (Australia)." (Doc. 57-4 at pg. 5). Finally, a promotional video from XAPT includes an email address of www.XAPT.com, states there are more than 450 employees in seven countries, and

12

includes the John Deere logo and logos of other customers in Illinois when it mentions its customers.

Deere elaborates in its Reply that Singleton's and Hunt's trip to Deere's Moline facilities in July 2016 was to negotiate the contracts in dispute in this litigation which included making Solutions an approved subcontractor for the Deere project which, in turn, required Solutions to agree to the confidentiality agreement. Deere also points out that Singleton agreed to Deere's network agreement while physically present in Deere's East Office Building in July 2016 at the time he was flagged for violating Deere's data downloading policy. Deere argues discovery will show that Singleton acted as counsel for all of Defendant XAPT's affiliated entities when he negotiated the various contracts in this case. As for Hunt, Deere argues the evidence will show that he wore dual hats as the CEO of Solutions and COO of XAPT when he lived in Moline, Illinois and at times worked at Deere's Moline facilities on the project at issue in this case. Deere contends that business records reveal that XAPT leased an apartment in Davenport, Iowa for project manager Peter Yates and other Solutions personnel who worked on the project out of Deere's Moline facilities. As for the promotional video, Deere emphasizes that the XAPT family of companies in that video "boasts . . . that it has customers all over the world (many in Illinois)" and that discovery is likely to show the exact roles Solutions had with those relationships in Illinois, in addition to its substantial relationship with Deere. (Doc. 57 at pg. 12-13).

Given the above evidence (the Exhibits attached to the Reply) with which Deere has come forward, a factual dispute exists as to whether Singleton and Hunt came to Illinois to work on behalf of Solutions as part of the original contract negotiations and/or subsequent performance along with other Solutions personnel to perform under the contracts at issue in this case. The MSA expressly provides that Solutions "shall be deemed [an] approved subcontractor[] for

13

providing Services pursuant to the term of this Agreement," and that XAPT would require each approved subcontractor to execute a non-disclosure agreement in the form provided by Deere prior to disclosing any of Deere's confidential information to those subcontractors. (Doc. 27 at pg. 7). Taking as true all well-pleaded facts in Plaintiff Deere's proposed second amended complaint and resolving the factual dispute in favor of Deere, the Court finds such evidence shows Solutions purposefully directed its activities at Illinois and the alleged injury arises out of Solutions' forum-related activities insofar as the contract claims in the proposed second amended complaint are concerned. Deere's evidence shows that Solutions' contacts with Illinois were not merely "random, fortuitous, or attenuated contacts." *Burger King Corp.*, 471 U.S. at 475.

Insofar as Deere's tort claim of conversion against Solutions is concerned, XAPT argues that it is not based upon allegations that the alleged wrongful acts were directed at or conducted in Illinois. The proposed second amended complaint alleges that XAPT, Solutions, and the other new defendants "have, without authorization, wrongfully assumed control, dominion, and/or ownership over the Deliverables and Deere Confidential Information." (Doc. 46 at pg. 47 ¶277). Plaintiff Deere is, of course, in Illinois and has submitted evidence to show Solutions was an approved subcontractor in the MSA, and Solutions personnel were in Illinois at various times. Once again, at this stage, the balance tips in favor of Plaintiff Deere. The Court cannot rule out that Solutions' conduct – its wrongful exercise of dominion and control over the Deliverables and Deere Confidential Information – was purposefully directed at Illinois given the allegations and evidence currently before the Court (resolved in Deere's favor). *See Tamburo*, 601 F.3d at 702 ("[W]here . . . the plaintiff's claims are for intentional torts, the inquiry focuses on whether the conduct underlying the claims was purposefully directed at the forum state").

Finally, Defendant XAPT argues that Deere tests the limits of due process by seeking to attribute XAPT's alleged conduct, and thus the exercise of personal jurisdiction over XAPT, to Solutions under Deere's alter ego theory. As explained above, the ultimate success or failure of an alter ego claim is better suited for a time later than the amendment of pleadings stage. In any event, the allegations of the proposed second amended complaint coupled with the evidence with which Plaintiff Deere has come forward in support of the Court's exercise of personal jurisdiction over Solutions is sufficient at this early stage to overcome the presumption of corporation separateness that XAPT says must be applied in this context. *See* (Doc. 53 at pg. 7) (citing *Taurus IP v. DaimlerChrysler Corp.*, 519 F. Supp. 2d 905, 919 (W.D. Wis. 2007) ("Courts begin with the presumption of corporate separateness")). No longer does the Court have before it only the "paltry" factual support, as XAPT describes it, that Cosmo Consult acquired Solutions and the contradictory explanations regarding the relationship between Defendant XAPT and Solutions. For instance, Plaintiff Deere has presented evidence that Hunt simultaneously served as Defendant XAPT's COO and Solutions' CEO.

The Court remains mindful of the fact that it must consider whether Plaintiff Deere's proposed amendment would be futile at this time. But the Court also remains mindful of the fact that the discovery schedule in this case was only put into place on March 4, 2020, and the deadline to amend the pleadings and add parties is not until July 10, 2020. Whether additional evidence after further discovery may tell a different story, the factual allegations, evidence, and arguments presented thus far and the procedural posture of this case make clear that justice requires Plaintiff Deere be allowed to amend its complaint as proposed. *See Rice v. Nova*, 38 F.3d 909, 915 (7th Cir. 1994) (explaining that "a preliminary challenge to personal jurisdiction . . . is not an automatic bar to the renewal of the motion after evidence bearing on it has been obtained by pretrial discovery or

15

presented at trial"); *MG Design Associates, Corp. v. CoStar Realty Info., Inc.*, 267 F. Supp. 3d 1000, 1011 (N.D. Ill. 2017) ("A ruling declining to dismiss for lack of personal jurisdiction is, by nature, interlocutory in nature . . . [and] [c]ourts can revisit an interlocutory decision"). Ultimately, "'[t]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court.'" *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir.2008).

### III

Because the Plaintiff's Motion to Amend is now granted, the following motions are now MOOT: Defendant XAPT's Motion to Dismiss (Doc. 24); Defendant XAPT's Motion to File Exhibits Under Seal (Doc. 26); Defendant XAPT's Motion to Stay Discovery Pending Resolution on Defendant's Motion to Dismiss (Doc. 36); Defendant XAPT's Motion for Leave to File Declaration of Dejan Popovic in Supplement to its Previously Filed Motion to Dismiss (Doc. 39); and Defendant XAPT's Motion for Leave to File a Reply Brief in Support of its Motion to Dismiss for Failure to State a Claim (Doc. 54). *See* CDIL-LR 7.1(E) ("Whenever an amended pleading is filed, any motion attacking the original pleading will be deemed moot unless specifically revived by the moving party within 14 days after the amended pleading is served").

### IV

For the reasons set forth above, Plaintiff Deere & Company's Motion for Leave to File Plaintiff's Second Amended and First Supplemental Complaint, Memorandum of Law, and Request for Ruling (Doc. 43) is GRANTED, Defendant XAPT's Motion to Dismiss (Doc. 24) is MOOT; Defendant XAPT's Motion to File Exhibits Under Seal (Doc. 26) is MOOT; Defendant XAPT's Motion to Stay Discovery Pending Resolution on Defendant's Motion to Dismiss (Doc. 36) is DENIED AS MOOT; Defendant XAPT's Motion for Leave to File Declaration of Dejan Popovic in Supplement to its Previously Filed Motion to Dismiss (Doc. 39)

16

is MOOT; and Defendant XAPT's Motion for Leave to File a Reply Brief in Support of its Motion to Dismiss for Failure to State a Claim (Doc. 54) is MOOT.  The Clerk is directed to docket the proposed Second Amended and First Supplemental Complaint and Demand for Jury Trial (Doc. 46).

*It is so ordered.*

Entered on May 6, 2020.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE