IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| DEERE & COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| XAPT CORPORATION; | ) | Case No. 4:19-cv-4210 |
| XAPT SOLUTIONS PTY LTD; | ) | |
| XAPT KFT; and COSMO CONSULT | ) | |
| BUSINESS SOLUTIONS S.R.L, | ) | |
| | ) | Judge Sara L. Darrow |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2) BY DEFENDANT XAPT SOLUTIONS PTY LTD.**

Defendant, XAPT SOLUTIONS PTY LTD. ("Solutions"), by counsel, pursuant to Fed. R. Civ. P. 12(b)(2), submits its Brief in support of its Motion to Dismiss the Second Amended Complaint filed against it by Plaintiff, DEERE & COMPANY ("Deere"), for lack of personal jurisdiction, stating as follows:

**I. Introduction**

Solutions is an Australian business entity, and lacks minimum contacts sufficient for this Court to exercise either general or specific personal jurisdiction over it. The facts as outlined below establish that Solutions lacked general contacts with Illinois sufficient to submit to personal jurisdiction here, and that its contacts with Illinois related to its involvement with the project that is the subject of Deere's claim ("the Deere Project") likewise are insufficient to submit to personal jurisdiction here. Accordingly, this Court should dismiss Solutions as a defendant for lack of personal jurisdiction.

## II. Facts

### 1. *Solutions' Organization and Relationships*

Solutions is an Australian business organization that has always had its principal place of business in Brisbane. (Hunt Aff., Exh. A, para. 21.) At all times encompassing the Deere Project, its only shareholder was its parent company, XAPT KFT. (Exh. A, para. 22.)

Solutions observes all formalities required by Australian law to maintain its existence as a distinct corporate entity. (Exh. A, para. 23.) It has its own set of officers and board of directors separate from the other XAPT entities; it maintains its own set of books separate from the other XAPT entities and its funds segregated from them; it makes its financial decisions independently of the other XAPT entities and vice versa. (Exh. A, para. 23.) Additionally, Solutions is funded solely by arm's-length transactions, as required by Australian law. (Exh. A, para. 23.)

### 2. *Solutions' Dealings in the United States*

Generally, Solutions never (1) maintained a physical presence in the United States; (2) owned or rented property there; (3) advertised, sold, offered to sell, or provided its products or services there; (4) employed anyone there; or (5) entered into direct business dealings with any customers from there. (Exh. A, para. 24.) Nor does Solutions furnish any product or service directly to the public. (Exh. A, para. 25.) Its only customers are its parent, XAPT KFT, and its sister, XAPT Corp. (Exh. A, para. 25.)

### 3. *Solutions' Specific Involvement with the Deere Project*

Regarding Deere specifically, Solutions' physical presence in Illinois revolved around four of its affiliated persons: Ralph Hunt, its CEO; Bill Singleton, its external counsel; and two employees, Peter Yates and Gyozo Barci. (Exh. A, paras. 5, 14, 15, 17.) Only these four were physically present in Illinois. (Exh. A, para. 18.)

Hunt, Solutions' CEO and head of Asia-Pacific until the end of 2017, simultaneously served as COO and head of global sales for XAPT Corp. during that time. (Exh. A, paras. 5-7.) At the end of 2017, he took a leave of absence from Solutions to serve as Project Director for the Deere Project as an employee of XAPT Corp. (Exh. A, para. 11.) During that time, he resided in Moline, Illinois, and drew a salary from XAPT Corp. and not from Solutions. (Exh. A, paras. 8-11.) In December 2019, he resigned his position with XAPT Corp., returned to Australia, and resumed employment with Solutions, becoming its CEO. (Exh. A, paras. 12-13.)

Yates, like Hunt, took a leave of absence from Solutions to serve as XAPT Corp.'s Project Manager on the Deere Project, during which time he resided in Davenport, Iowa, across the river from Moline. (Exh. A, para. 14.) The other Solutions employee, Barci, was present in Illinois once in late 2019, for an unknown reason. (Exh. A, para. 17.) Aside from Hunt, Yates, and Barci, all of Solutions' employees were based in Australia, and none of them worked on the Deere Project. (Exh. A, para. 18.)

The last person of interest, Singleton, was not an employee of Solutions, but a partner in an external law firm. (Exh. A, para. 15.) Although he served as corporate counsel for all XAPT entities, his dealings with the Deere Project occurred in the course of representing XAPT Corp. (Exh. A, para. 16.)

Regarding other connections to Illinois, Hunt and Yates performed work on the Deere Project only as requested by XAPT Corp. (Exh. A, para. 19.) It invoiced all work on the Deere Project to XAPT Corp., and received all payments from XAPT Corp. (Exh. A, para. 20.)

### III. Standard

"A federal district court sitting in diversity in Illinois has jurisdiction over a non-resident, non-consenting defendant if an Illinois state court would have jurisdiction over that party."

*McIlwee v. ADM Indus., Inc.*, 17 F.3d 222, 223 (7th Cir. 1994). "The burden of demonstrating the existence of jurisdiction rests on the plaintiff." *Id.*

### IV. Argument

**A. Personal Jurisdiction Generally**

"A federal district court sitting in diversity must apply the personal jurisdiction rules of the state in which it sits," and Illinois "permits its courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015) (citing 735 ILCS 5/2–209(c)). Thus, the state inquiry merges with federal due process analysis.

Under the Fourteenth Amendment's Due Process Clause, a state may assert personal jurisdiction over nonresident individuals and corporations only when they have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (quoting *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945)). This personal jurisdiction has two varieties: general and specific. *Id.*

General personal jurisdiction exists when "the defendant has 'continuous and systematic general business contact' with the forum." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). Specific personal jurisdiction "refers to jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contacts with the forum.'" *Id.* (quoting *Helicopteros*, 466 U.S. at 414 n.8). Put in other words, specific personal jurisdiction arises when "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," rather than mere "random, fortuitous, or attenuated contacts" or as the result of "the "unilateral activity of another party or a

third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations omitted).

Because specific personal jurisdiction depends on the defendant's conduct, it does not exist when the plaintiff is "the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). While a "defendant's contacts with the forum state may be intertwined with his transactions or interactions with the plaintiff," a "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286.

**B.     Solutions lacks sufficient minimum contacts with Illinois to invoke this Court's general personal jurisdiction.**

"Unlike specific jurisdiction, general jurisdiction allows a defendant to be sued in the forum regardless of the subject matter of the litigation," but "the constitutional requirement for general jurisdiction is 'considerably more stringent' than that required for specific jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003) (quoting *United States v. Swiss Amer. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001).

Personal jurisdiction over foreign corporations exists "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 317 (1945)). "A corporation is 'essentially at home' both where it is incorporated and where its principal place of business is located." *Abelesz v. OTP Bank*, 692 F.3d 638, 654–55 (7th Cir. 2012). Even repeated physical presence in a forum state accompanied by significant financial dealings does not suffice to establish general personal jurisdiction if the defendant is not "essentially at home" there. *E.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417-18 (1984) (significant negotiations and purchases in Texas insufficient to establish general personal jurisdiction there); *Abelesz*, 692 F.3d at 656, 658 ($147 million held for

United States customers and 53 business trips to the United States over four years insufficient to establish general personal jurisdiction); *Tamburo v. Dworkin*, 601 F.3d 693, 701-02 (7th Cir. 2010) ($8,634 in sales to Illinois customers in fourteen years insufficient to establish general personal jurisdiction).

Here, no contacts exist outside the context of the Deere Project of any weight to confer general personal jurisdiction. Solutions was at all times an Australian company based in Australia. (Exh. A, para. 21.) Solutions did not have any dealings in Illinois outside lending its employees to XAPT Corp. for the Deere Project. It did not maintain a physical presence in the United States, it did not own or rent property there, it did not market or sell any products or services there, it did not employ anyone there, it did not enter into direct business dealings with any customers there, and it did not furnish any product or service directly to the general public. (Exh. A, paras. 24-25.) Its only customers are its parent, XAPT KFT, and its sister, XAPT Corp. (Exh. A, para. 25.)

From 2017 through the end of 2019, only one employee of Solutions was physically present in Illinois without being on a leave of absence from the company, and he was present once in late 2019. (Exh. A, para. 17.) This single incident of physical presence alone is insufficient to establish general personal jurisdiction. In no way can Solutions meet the high standard of being "essentially at home" in Illinois.

C.    **Solutions' contacts with Deere in its involvement with the Deere Project are likewise insufficient to invoke this Court's specific personal jurisdiction.**

Specific personal jurisdiction requires a more detailed analysis, as employees of Solutions were physically present in Illinois engaging in relations with Deere, but did so while on leave from Solutions and under the employment of XAPT Corp., Solutions' sister entity. The analysis nonetheless militates against personal jurisdiction.

Generally, specific personal jurisdiction arises in the context of direct "substantial negotiations" with a person or entity present in the forum state. *E.g.*, *Mid-Am. Tablewares, Inc. v. Mogi Trading Co.,* 100 F.3d 1353, 1361-62 (7th Cir. 1996); *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 581 (7th Cir.1994); *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1216 (7th Cir.1984). Solutions, however, never had any direct dealings with Deere. It was never party to any contract or even negotiations with Deere. Its sole customer in the United States was XAPT Corp. (Exh. A, para. 25.) Instead, two of its employees – Hunt and Yates – were put on a leave of absence during which they worked for XAPT Corp. and resided in the Quad Cities area to work on the Deere Project. (Exh. A, paras. 9-12, 14, 18.)

No case from the Seventh Circuit addresses Solutions' exact situation regarding Deere, but the "borrowed employee" doctrine is helpful in addressing personal jurisdiction here. The Supreme Court articulated the doctrine as follows: "One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation." *Standard Oil v. Anderson*, 212 U.S. 215, 220 (1909). In Illinois, the doctrine, known as the "loaned servant" doctrine, "has generally been limited to instances in which the agent, or employee, 'is wholly free from the control of the first employer and wholly subject to the control of the second employer.'" *Williams v. Shell Oil Co.*, 18 F.3d 396, 400 (7th Cir. 1994) (quoting *Richard v. Ill. Bell Tel. Co.,* 66 Ill. App. 3d 825, 832 (1st Dist. 1978)). The factors to determine whether an employee is loaned "include such things as the power to hire and fire the employee[,] . . . the power to control the direction and manner of performance of the work done by the employee" and "the degree of control, if any, left with the first employer." *Id.*

Here, Solutions retained no control over Hunt or Yates. Both were placed on a leave of absence from Solutions while they resided in the Quad Cities, and both were paid by XAPT Corp., which controlled all work on the Deere Project. (Exh. A, paras. 11, 14, 19.) All employees of Solutions itself remained in Australia and did not perform work on the Deere Project. (Exh. A, para. 18.) Although Hunt and Yates were employees of Solutions before their involvement in the Deere project and resumed employment with Solutions once that involvement ended, they were not employees of Solutions when they were present in Illinois and working on the Deere Project. Instead, they were placed on leave and working in the employment of XAPT Corp. As such, the contacts with Illinois through Hunt and Yates did not belong to Solutions but to XAPT Corp.

The same is the case with Bill Singleton, who was outside counsel for all XAPT entities. He was not employed by Solutions – or indeed by any other XAPT entity – and instead served as attorney for XAPT Corp. in dealings with Deere. (Exh. A, paras. 15-16.) Barci, for his part, was an employee of Solutions when he was present in Illinois once in late 2019, but the reasons for his presence there were unknown to Hunt, who was the project director. (Exh. A, para. 17.) Thus, no evidence supports a reason for Barci's presence in Illinois as being related to the Deere Project, but even if it were, it was a single event at the very end of the project, and is far too minor and fortuitous to form the basis for specific personal jurisdiction.

In sum, Solutions lacked the requisite minimum contacts to establish specific personal jurisdiction in Illinois. It took care to "lend" or transfer its employees to XAPT Corp., the United States entity, to perform work on the Deere Project under the latter entity's supervision and control. As such, all contacts in Illinois with affiliates of Solutions was through their role as borrowed servants of XAPT Corp. acting within the scope of their work for XAPT Corp. and under its control.

**D.    Solutions' connections to XAPT KFT and XAPT Corp. in the context of the Deere Project are insufficient for it to be considered an "alter ego" of either entity.**

Deere also raises "alter ego" claims regarding solutions as part of a scatter-shot approach to pleading. The theory, however, applies to impute "the jurisdictional contacts of a subsidiary corporation . . . to the parent." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 n.17 (7th Cir. 2003). Solutions, however, is not a parent of XAPT Corp. or of XAPT KFT, but a sister entity of the former and a daughter of the latter, and thus does not fall within the class of entities to which the theory is designed to apply.

Addressing Deere's invocation of the theory nonetheless, imposition of alter ego liability requires the parent to "exert[ ] an unusually high degree of control over" the subsidiary – or in this case, one subsidiary company over another subsidiary of the same parent – or the subsidiary's corporate existence must be "simply a formality" such that it is merely an agent for the parent – or sister entity. *Id.*

Here, Solutions' CEO testified that it observes all formalities to maintain its existence as a distinct corporate entity: it has its own officers and board of directors separate from the other XAPT entities; it keeps its books separate and segregates its funds from the other XAPT entities; its makes its financial decisions independently of them; and it is funded solely by arm's length transactions as required by Australian law. (Exh. A, para. 23.)

Thus, even if the alter-ego theory applied to attribute XAPT Corp.'s or XAPT KFT's contacts to Solutions even though Solutions was not its parent company, Solutions observed all the legal formalities necessary to establish it as a separate entity from XAPT Corp. and XAPT KFT, and not their "alter ego." As with its sister and parent entities, its separate corporate existence from both XAPT Corp. and XAPT KFT is to avoid the veil-piercing that Deere indiscriminately

seeks to apply here and drag it into court where it never should reasonably expect to be subject to personal jurisdiction.

## V. Conclusion

For all the above reasons, neither general nor specific personal jurisdiction over Solutions exists in Illinois relating to Deere's claims against it. Nor can the contacts of XAPT Corp. be imputed to Solutions based on Deere's "alter ego" theory. Instead, Deere must seek relief from Solutions in Australia, where it is located and where it can be logically expected to be haled into court. Accordingly, the Court should dismiss the Second Amended Complaint against Solutions for lack of personal jurisdiction.

Respectfully submitted,

XAPT SOLUTIONS PTY LTD.

By: /s/ *Joseph R. Marconi*
     One of its Attorneys

Joseph R. Marconi - #01760173
Victor J. Pioli - #6256527
Samuel D. Branum - #6326622
Johnson & Bell, Ltd.
33 West Monroe Street - Suite 2700
Chicago, Illinois 60603
marconij@jbltd.com
pioliv@jbltd.com
branums@jbltd.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2020, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties of record.

/s/ <i>Joseph R. Marconi</i>