E-FILED
Friday, 10 December, 2021  11:57:12 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| DEERE & COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-04210-SLD-JEH |
| | ) | |
| XAPT CORPORATION, XAPT | ) | |
| SOLUTIONS PTY LTD, XAPT KFT, and | ) | |
| COSMO CONSULT BUSINESS | ) | |
| SOLUTIONS S.R.L., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court are Defendant Cosmo Consult Business Solutions S.R.L.'s ("Cosmo")

Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2), ECF No. 96; Plaintiff Deere & Company's

("Deere") Motion to Conduct Jurisdictional Discovery Re: Cosmo Consult, ECF No. 99;

Defendant XAPT KFT's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2), ECF No. 108[1];

Defendant XAPT Corporation's ("XAPT Corp.") Motion to File Exhibits Under Seal, ECF No.

116; XAPT Corp.'s Motion to Dismiss or Stay the Second Amended and First Supplemental

Complaint, ECF No. 118; Cosmo and XAPT KFT's Motion to Dismiss or Stay Under Fed. R.

Civ. P. 12(b)(1), (6), ECF No. 119; Defendant XAPT Solutions Pty Ltd's ("XAPT Solutions")

Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2), ECF No. 129; Deere's Motion to File Certain

Omnibus Response Exhibits Under Seal, ECF No. 132; XAPT Corp., XAPT KFT, XAPT

Solutions, and Cosmo's (collectively, "Defendants") Motion to Set Status Conference, ECF No.

145; and Defendants' Motion for Leave to File Replies to Deere's Filing Set Forth in ECF # 131,

---

[1] In the Second Amended and First Supplemental Complaint, ("SAC"), Deere refers to this entity as XAPT Kft, *see* SAC 1, ECF No. 60, but the entity refers to itself as XAPT KFT in its motion to dismiss, *see* XAPT KFT 12(b)(2) Mot. Dismiss 1.  The Court will follow the entity's lead and refer to it as XAPT KFT.

ECF No. 155.  For the following reasons, Cosmo's Motion to Dismiss Under Fed. R. Civ. P.

12(b)(2) is DENIED; Deere's Motion to Conduct Jurisdictional Discovery Re: Cosmo Consult is

MOOT; XAPT KFT's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) is DENIED; XAPT

Corp.'s Motion to File Exhibits Under Seal is DENIED; XAPT Corp.'s Motion to Dismiss or

Stay the Second Amended and First Supplemental Complaint is DENIED; Cosmo and XAPT

KFT's Motion to Dismiss or Stay Under Fed. R. Civ. P. 12(b)(1), (6) is DENIED; XAPT

Solutions' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) is DENIED; Deere's Motion to File

Certain Omnibus Response Exhibits Under Seal is DENIED; Defendants' Motion to Set Status

Conference is DENIED; and Defendants' Motion for Leave to File Replies to Deere's Filing Set

Forth in ECF # 131 is DENIED.

## BACKGROUND[2]

### I.      Factual Background

Deere offers services related to heavy machinery through dealers situated around the

world.  In 2013, to facilitate the dealers' work, Deere decided to develop a fully integrated

computer software system that would bring together the many facets of its dealers' business in

one "Dealer Business System" ("DBS").  This required a developer to create the system.  Deere

solicited demonstrations from potential system developers, including XAPT Corp.  Throughout

the vetting process, XAPT Corp. consistently represented to Deere that it was capable of

undertaking a project of this size.  After extensive discussions, demonstrations, and meetings,

Deere selected XAPT Corp. to develop the DBS.

---

[2] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the plaintiff's] favor."  *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016).  Thus, the factual background is drawn from the SAC.

Deere and XAPT Corp. signed four principal contracts pertaining to the development of the DBS (the "DBS Project"): the Master Services Agreement ("MSA"); the Work Order Template–Global Template ("Global Template SOW"), which was amended on February 11, 2019 ("Amendment 1"); the Work Order–Governance ("Governance SOW"); and the XAPT Subscription Delivery Agreement ("SDA") (collectively, the "Contracts").

It soon became clear to Deere that XAPT Corp. had misrepresented its abilities to handle the challenge. XAPT Corp. not only failed to meet deadlines for delivering installments of the product but produced code that was full of errors. Because XAPT Corp. had miscalculated the effort it would take to bring its own system in line with Deere's requirements, in June of 2018, XAPT Corp. sought a $10 million increase in the project price. The parties entered negotiations, which resulted in the aforementioned Amendment 1 six months later. Deere and XAPT Corp., however, had differing opinions about what Amendment 1 meant for the project: Deere believed that XAPT Corp. was still obligated to perform all of the tasks as initially agreed, while XAPT Corp. insisted that Amendment 1 had removed one of XAPT Corp.'s original duties from the scope of the project—service module integration—while still requiring Deere to pay for it. Deere learned of XAPT Corp.'s alternative interpretation and brought it to the attention of XAPT Corp.'s president, Dejan Popovic, on April 23, 2019. In response, Popovic stated that he "of course" knew that Amendment 1 would have this effect and that he was aware that Deere had a different expectation. Second Am. & First Suppl. Compl. ("SAC") 23, ECF No. 60. XAPT Corp. continued to refuse to provide service module integration work.

Section 3.6 of the MSA provides that XAPT Corp. may subcontract services to subcontractors approved by Deere and that before disclosing any of Deere's confidential information to an approved subcontractor, XAPT Corp. was to require the subcontractor "to

execute a non-disclosure agreement in the form provided by Deere." *Id.* at 11 (quoting MSA § 3.6).  XAPT Solutions and XAPT KFT were subcontractors approved by Deere to work on the DBS Project.  In October or November of 2019, Deere learned that XAPT Corp. was using an additional subcontractor on the project.  This subcontractor, which had not been approved by Deere, operated under the email domain @cosmoconsult.com.  Deere notified XAPT Corp. that it considered this a breach of Section 3.6 of the MSA and asked XAPT Corp. to explain its relationship with Cosmo.  XAPT Corp. responded that Cosmo was the same as approved subcontractor XAPT KFT, although the entity's ownership had changed.  In response to a renewed request for an explanation from Deere, XAPT Corp. then stated that S.C. XAPT Solutions SRL, an approved subcontractor, had changed its name to Cosmo.  Because XAPT Corp. continued to use Cosmo as a subcontractor without authorization, Deere removed access to all @cosmoconsult.com email addresses.  However, XAPT Corp. continued to share Deere's confidential information with Cosmo employees.

As of January 2020, the DBS was not available in a single country.  Deere terminated the Contracts on January 24, 2020.  It then asked XAPT Corp. to comply with all of its post termination obligations, which includes the return of Deere's confidential information.  As of the date this case was filed, XAPT Corp. had not returned any materials or documents to Deere.

In a March 9, 2020 email, XAPT Corp. demanded that Deere "either return or destroy all . . . XAPT [i]ntellectual [p]roperty in its possession" and "cease using or accessing" such property.  *Id.* at 29 (quotation marks omitted).  Deere believes that it already owns or has a fully pre-paid perpetual and irrevocable license in and to the intellectual property.

## II.    Procedural History

Deere brought this lawsuit on October 18, 2019, ECF No. 1, then filed an amended complaint on October 23, 2019, ECF No. 5, to address deficiencies in its original jurisdictional statement.  On December 12, 2019, the parties jointly asked to stay the case to allow them to pursue mediation.  Joint Mot. Mediation 1–2, ECF No. 17.  After mediation failed, XAPT Corp. filed a motion to dismiss the amended complaint, arguing that Deere had not complied with the mandatory pre-suit dispute resolution procedure contained in Section 15.6.1 of the Master Services Agreement ("Section 15.6.1") and therefore could not bring this lawsuit.  XAPT Corp. First Mot. Dismiss 1–2, ECF No. 24.  Deere filed a response to the motion to dismiss, ECF No. 41, and, on the same day, a motion for leave to file the SAC, ECF No. 43, which added XAPT KFT, XAPT Solutions, and Cosmo as Defendants.  XAPT Corp. filed a response opposing Deere's motion for leave, arguing that the proposed SAC would be futile because Deere failed to comply with the mutual dispute resolution procedures in Section 15.6.1, this Court lacked personal jurisdiction over XAPT Solutions, and Deere had no viable theory of liability against XAPT KFT, XAPT Solutions, and Cosmo.  XAPT Corp. Opp'n Pl.'s Mot. Leave File Second Am. & First Suppl. Compl. 2–3, ECF No. 53.

On May 6, 2020, Magistrate Judge Jonathan E. Hawley granted Deere's motion.  May 6, 2020 Order, ECF No. 59.  XAPT filed an objection to Judge Hawley's order, making the same argument with respect to the dispute resolution procedure.  Obj. 4–6, ECF No. 63.  Reviewing for clear error, the Court affirmed Judge Hawley's ruling.  Sept. 24, 2020 Order 11, ECF No. 101.

In the SAC, the operative complaint, Deere brings one claim for breach of contract against XAPT Corp. (Count I), two claims for breach of contract against all four Defendants

(Count II, Count III), one claim for fraudulent inducement against XAPT Corp. (Count IV), and one claim for conversion against all four Defendants (Count VIII). SAC 33–40, 46. Deere seeks the reformation of Amendment 1, declaratory relief, injunctive relief, specific performance from all four Defendants, an order of replevin, a finding that the four Defendants are alter ego organizations, and damages. *Id*. at 40–46, 47–59.

On September 9, 2020, Cosmo filed a motion to dismiss the SAC against it for lack of personal jurisdiction. Cosmo 12(b)(2) Mot. Dismiss 1. In response, Deere asks the Court to stay briefing on Cosmo's motion to allow it to conduct jurisdictional discovery. Deere Mot. Conduct Jurisdictional Disc. 1. On October 8, 2020, XAPT KFT filed a motion to dismiss for lack of personal jurisdiction. XAPT KFT 12(b)(2) Mot. Dismiss 1. XAPT Corp. filed a motion to dismiss the SAC or stay the case on October 15, 2020, XAPT Corp. Mot. Dismiss or Stay 1, simultaneously filing a motion for leave to file exhibits under seal, XAPT Corp. Mot. Seal Exs. 1. Cosmo and XAPT KFT filed a similar motion to dismiss or stay the next day. Cosmo & XAPT KFT Mot. Dismiss or Stay 1. On November 5, 2020, XAPT Solutions filed a motion to dismiss for lack of personal jurisdiction. XAPT Solutions 12(b)(2) Mot. Dismiss 1. After receiving permission from the Court, *see* Oct. 26, 2020 Text Order, Deere filed an omnibus response opposing these motions. Deere Omnibus Resp. 1, ECF No. 131. It also filed an accompanying motion to seal the exhibits. Deere Mot. Seal Exs. 1. On December 10, 2020, all four Defendants filed a motion for a status conference. Defs. Mot. Status Conference 1. They jointly filed a motion for leave to file replies to Deere's omnibus response brief on January 8, 2021. Defs. Mot. Leave File Replies 1.

## DISCUSSION

### I.       Motion for Leave to File Replies

In their motion for leave to file replies, Defendants argue that replies are necessary because Deere's omnibus response "include[s] new and unexpected issues that [D]efendants should address in the interest of completeness and for this Court to have all of the relevant information in order to address the pending motions" and "raises new factual issues to dispute the testimony offered to show lack of personal jurisdiction."  Defs. Mot. Leave File Replies 4–5. Deere responds that "[e]ach proposed 'reply' contains new arguments, new case law, spurious unfounded attacks on Deere declarants, a new request to convert the XAPT Defendants' Motion to Dismiss to that of Summary Judgment, and a rehash of their prior arguments" and that "[a]llowing such positions to be advanced now for the first time is unhelpful to the Court and prejudicial to Deere."  Deere Resp. Defs. Mot. Leave File Replies 1–2, ECF No. 161 (footnote omitted).

For all motions not for summary judgment, "[n]o reply to the response is permitted without leave of Court."  Civil LR 7.1(B)(3).  "Typically, reply briefs are permitted if the party opposing a motion has introduced new and unexpected issues in his response to the motion, and the Court finds that a reply from the moving party would be helpful to its disposition of the motion."  *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011). However, "the Court does not typically permit the moving party to file a reply in order to introduce new arguments or evidence that could have been included in the motion itself, or to rehash the arguments made in the motion."  *Id*.  A court may also permit a reply "in the interest of completeness."  *Zhan v. Hogan*, Case No. 4:18-cv-04126, 2018 WL 9877970, at *2 (C.D. Ill. Dec. 18, 2018).

7

The proposed reply briefs in large part merely rehash arguments already addressed in the parties' initial briefs or which could have been addressed, and where they raise new points or provide new evidence, it is in response to arguments by Deere upon which the Court does not rely to reach its conclusions. For example, Defendants argue they should be permitted to reply to Deere's argument that Deere complied with the mutual dispute resolution procedure contained in the MSA, which Deere supports with the McHugh Declaration. Defs. Mot. Leave File Replies 4–5. However, as discussed below, the Court does not reach the question of whether Deere actually complied with the dispute resolution process and therefore does not rely on those portions of the McHugh Declaration. *See infra* Section III(b). As for the motions to dismiss for lack of personal jurisdiction, Defendants argue that "Deere . . . raises new factual issues to dispute the testimony offered to show lack of personal jurisdiction" and that a reply is warranted so that the Court "ha[s] all facts before it to ensure that it can properly exercise its jurisdiction" over XAPT KFT, XAPT Solutions, and Cosmo. Defs. Mot. Leave File Replies 5. But in addressing personal jurisdiction at this stage, the Court must "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Thus, any response by Defendants to the facts provided by Deere would have no impact. For these reasons, the Court does not find it necessary to allow Defendants an opportunity to reply to these issues and does not find the proposed reply briefs helpful to its disposition of the pending motions. Defendants' motion for leave to file replies is denied.

## II.      Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)

### a.  Legal Standard

A defendant may move to dismiss an action pursuant to Federal Rule of Civil Procedure

12(b)(2) for lack of personal jurisdiction.  While "[a] complaint need not include facts alleging

personal jurisdiction," once a motion to dismiss has been made, "the plaintiff bears the burden of

demonstrating the existence of jurisdiction."  *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,

338 F.3d 773, 782 (7th Cir. 2003) (quotation marks omitted).  When the district court rules on

such a motion "based on the submission of written materials, without the benefit of an

evidentiary hearing . . . , the plaintiff need only make out a *prima facie* case of personal

jurisdiction."  *Id.* (quotation marks omitted).  "[T]he party asserting jurisdiction is entitled to the

resolution in its favor of all disputes concerning relevant facts presented in the record."  *Nelson*

*v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983).  The Court must "take as true all well-

pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor

of the plaintiff."  *Tamburo*, 601 F.3d at 700.

"A federal district court sitting in diversity must apply the personal jurisdiction rules of

the state in which it sits."  *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015).

Illinois law provides that courts may exercise personal jurisdiction up to the limits of the federal

Constitution.  *See* 735 ILCS 5/2-209(c) ("A court may . . . exercise jurisdiction on any . . . basis

now or hereafter permitted by the Illinois Constitution and the Constitution of the United

States."); *see Kipp*, 783 F.3d at 697 (citing to this provision to support that "[t]he governing

statute in Illinois permits its courts to exercise personal jurisdiction up to the limits of the Due

Process Clause of the Fourteenth Amendment"); *Hyatt Int'l Co. v. Coco*, 302 F.3d 707, 715 (7th

Cir. 2002) (indicating that, "while . . . these two standards hypothetically might diverge in some

cases," in practice, "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction").  The Due Process Clause of the federal Constitution "authorizes personal jurisdiction over out-of-state defendants when the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Kipp*, 783 F.3d at 697 (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

There are two types of personal jurisdiction—general and specific.  *Id.*  "General jurisdiction is all-purpose; it exists only when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State."  *Id.* at 697–98 (alteration in original) (quotation marks omitted).  Specific jurisdiction, meanwhile, is "case-specific; the claim must be linked to the activities or contacts with the forum."  *Id.* at 698; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("Specific jurisdiction . . . depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." (second alteration in original) (quotation marks omitted)).  "[T]he relationship must arise out of contacts that the defendant himself creates with the forum State," and the "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (emphasis omitted) (quotation marks omitted).  Courts find that the Due Process Clause's "fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks omitted).  "In analyzing whether the defendant's contacts are sufficient

to establish specific jurisdiction, [courts] do not employ a mechanical or quantitative test."
*Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (quotation marks
omitted).

### b.  Analysis

XAPT KFT, XAPT Solutions, and Cosmo have each filed a motion to dismiss for lack of
personal jurisdiction.  The Court will first address whether it has personal jurisdiction over
XAPT KFT.  Deere does not argue that general personal jurisdiction exists over any of these
three Defendants, so the Court's analysis will focus exclusively on specific personal jurisdiction.

### i.   XAPT KFT's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)

Deere brings claims against XAPT KFT for breach of contract resulting from the failure
to return confidential information and deliverables and for the tort of conversion and seeks
injunctive relief, specific performance, and an order of replevin related to those claims.[3]  SAC
36–38, 44–47.  XAPT KFT moves to dismiss these claims against it, arguing that it lacks the
minimum contacts necessary for this Court to exercise personal jurisdiction over it.  XAPT KFT
12(b)(2) Mot. Dismiss 1.  It asserts that it is a Hungarian business organization with its principal
place of business in Budapest.  Br. Supp. XAPT KFT 12(b)(2) Mot. Dismiss 2, ECF No. 109.
While it does own the other XAPT entities, it states that it "observes all formalities to maintain
its existence as a distinct corporate entity."  *Id*.  It affirms that it has never maintained a physical
presence or owned or rented property in the United States; advertised or provided its products or
services there; employed anyone residing there; or entered into any direct business dealings with
customers from there, with the exception of Uptake, an Illinois entity to which XAPT KFT
licenses its software in exchange for a licensing fee.  *Id*. at 3.  XAPT KFT admits it was an

---

[3] Deere also seeks a determination that the four Defendants are alter egos.  SAC 47–48.

approved subcontractor on the DBS Project but states that it primarily communicated through XAPT Corp. *Id*.

Deere contends that specific personal jurisdiction exists in this case. *See* Deere Omnibus Resp. 39–40. In support, it asserts that XAPT KFT is an alter ego of the other XAPT entities and that XAPT Corp. has conceded that personal jurisdiction exists over it. *Id*. at 13–18. It also argues that "XAPT [KFT] itself had significant, regular direct contacts with Deere in Illinois throughout the course of this project." *Id*. at 18.

Regardless of XAPT KFT's alter ego status, the Court finds that XAPT KFT had sufficient minimum contacts with the state of Illinois for specific personal jurisdiction to exist here. By XAPT KFT's own admission, it was an approved subcontractor on the DBS Project, providing consulting, software development, and other services, and it developed the software according to Deere's specifications, which were conveyed to it by XAPT Corp. Br. Supp. XAPT KFT 12(b)(2) Mot. Dismiss 3. Its representatives participated in monthly and weekly video or audio meetings with representatives from Deere and other XAPT entities and, furthermore, would contact Deere representatives directly via email or telephone when they needed clarification or additional support with regard to system functionalities and capabilities. *Id*. at 4.

Deere provides additional evidence showing contacts between XAPT KFT and Illinois. Deere alleges in the SAC that after the DBS Project began and the gaps became apparent, it participated in "over 100 meetings" with XAPT representatives at Deere's office and that "[a]mong the XAPT representatives who traveled to Deere's office located in East Moline, Illinois were individuals who worked for XAPT [KFT]." SAC 18; *see Tamburo*, 601 F.3d at 700 (noting that in resolving a motion to dismiss for lack of personal jurisdiction, a court "take[s] as true all well-pleaded facts alleged in the complaint"). In an affidavit, Rodney Wayne Wittich,

12

Jr., Deere's Scrum Master, declares that Janos Szabo, one of XAPT KFT's project managers, traveled to Deere's office in East Moline, Illinois to participate in an introduction and planning meeting regarding the DBS Project in August 2019.  Wittich Decl. ¶¶ 1, 3, Deere Omnibus Resp. Ex. I, ECF No. 131-18; *see also* Jaffe Decl. ¶ 11, Deere Omnibus Resp. Ex. H, ECF No. 131–17; *see Tamburo*, 601 F.3d at 700 (stating that courts must "resolve any factual disputes in the affidavits in favor of the plaintiff").[4]  Deere further points to MSA § 3.6, which requires all approved subcontractors to sign Deere's Confidential Information Agreement, a document that acknowledges the approved subcontractor's relationship with and duties to Deere regarding confidential information and its obligation to deliver materials to Deere after termination, Deere Omnibus Resp. 19–20—and Deere alleges in the SAC that XAPT KFT agreed to the terms of the Confidential Information Agreement, SAC 37.[5]

In analyzing personal jurisdiction "[i]n contract suits, the focus is on whether the defendant purposeful[ly] availed itself of the privilege of conducting business in the forum; with tort actions, courts instead inquire whether the conduct giving rise to the claim was purposefully directed at the forum."  *United States v. Kellogg Brown & Root Servs., Inc*., Case No. 4:12-cv-4110-SLD-JAG, 2014 WL 4948136, at *4 (C.D. Ill. Sept. 30, 2014).  "[A]n out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts," but "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" can show "the purposeful availment that makes litigating in the forum state foreseeable to the defendant."  *RAR, Inc. v. Turner Diesel,*

---

[4] Wittich also declares that Csaba Palfalvi, another of XAPT KFT's project managers, flew to Chicago, Illinois to attend a product roadmap session regarding the DBS Project in October 2018; however, the session actually took place in Iowa.  Wittich Decl. ¶ 2.

[5] Deere also notes that in the suit XAPT KFT and XAPT Solutions filed against Deere in the Delaware Court of Chancery, XAPT KFT alleges that upon becoming an approved subcontractor, it signed the Confidential Information Agreement.  Deere Omnibus Resp. 19 (citing XAPT KFT & XAPT Solutions Del. Ch. Compl. 5–6, 11, Deere Omnibus Resp. Ex. J, ECF No. 131-19).

*Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (quotation marks omitted).  Here, the Court finds that XAPT KFT's contacts with Illinois were not "merely random, fortuitous, or attenuated," *see Citadel*, 536 F.3d at 761, but, rather, were sufficient to establish personal jurisdiction with respect to both the contract and tort claims.

XAPT KFT was aware that its work on the DBS Project was for Deere, which was headquartered in Illinois, and that the software it was developing would be used by Deere.  *See Tekway, Inc. v. Agarwal*, Case No. 19-cv-6867, 2020 WL 5946973, at *6, *9 (N.D. Ill. Oct. 7, 2020) (finding that personal jurisdiction existed over the defendant where she "knowingly and voluntarily entered into an employment relationship with an Illinois corporation headquartered in Illinois").  As a result of the project, XAPT KFT had an ongoing relationship with Deere, which involved frequent communication directly between representatives from XAPT KFT and Deere, in both individual and group meetings, to ensure XAPT KFT was fulfilling Deere's wishes.  *See Eisenmann Corp. v. Tek-More, Inc*., No. 03C4375, 2003 WL 22220125, at *3 (N.D. Ill. Sept. 25, 2003) ("Courts have often held that an ongoing relationship between the parties is especially significant in making a personal jurisdiction determination. . . .  Because of their on going [sic] relationship with Plaintiff, Defendant could reasonably anticipate suit in Illinois." (citations omitted)).  "Regular communication . . . may support a finding of personal jurisdiction over the defendant."  *Tekway*, 2020 WL 5946973, at *7 (noting that "[w]hile it's true that phone calls or emails between parties might not provide a basis for personal jurisdiction on their own, they do contribute to the larger mosaic of contacts with the forum state"); *cf. 1st Bank Card Servs. Inc. v. Patel*, Case No. 17-cv-8744, 2018 WL 3608545, at *4 (N.D. Ill. July 27, 2018) (finding no personal jurisdiction where "[t]here [wa]s no evidence of any payments, telephone calls, or communications being made to Illinois").

XAPT KFT argues because it was only a subcontractor and XAPT Corp. was the
intermediary between it and Deere, it "never had any direct contractual relationship with Deere."
Br. Supp. XAPT KFT 12(b)(2) Mot. Dismiss 9.  However, the specific personal jurisdiction
analysis is not "mechanical or quantitative," *Citadel*, 536 F.3d at 761 (quotation marks omitted);
the lack of a formal contract, where contacts are otherwise sufficient to establish jurisdiction, is
not dispositive, *see id*. at 762, 764 (finding specific personal jurisdiction even though "the
parties' transaction never closed"); *Dual-Temp of Ill. v. Hench Control Corp*., No. 09-cv-595,
2009 WL 4674105, at *8 (N.D. Ill. Dec. 4, 2009) ("[T]he existence of a contract is neither the
*sine qua non* nor the silver bullet of the personal-jurisdiction analysis.").  Moreover, there *was* a
direct contractual relationship between XAPT KFT and Deere: XAPT KFT signed the
Confidential Information Agreement with Deere.  This contract created long-term, continuing
obligations to Deere with regard to XAPT KFT's work on the DBS Project, and, critically, its
obligations with regard to the return of confidential property after termination.  *See* SAC 36–38
(bringing claims for breach of contract against XAPT KFT for failure to return confidential
information after termination); *id*. at 46 (bringing a conversion claim against XAPT KFT
because it wrongfully assumed control, dominion, and/or ownership over confidential
information).  Such ongoing obligations strongly support the existence of personal jurisdiction.
*See Tekway*, 2020 WL 5946973, at *8 (finding that "[t]he non-competition clause [in a contract
directly between the plaintiff and the defendant] . . . cemented long-term ties to a company based
in Illinois" and noting that "[w]here the defendant 'has created continuing obligations between
himself and residents of the forum, he manifestly has availed himself of the privilege of
conducting business there'" (quoting *Burger King*, 471 U.S. at 476)).

XAPT KFT asserts that "[n]o one from XAPT KFT was physically present in Illinois." Br. Supp. XAPT KFT 12(b)(2) Mot. Dismiss 10. But Deere has declared that one or more XAPT KFT representatives traveled to East Moline, Illinois for discussions related to the DBS Project, *see* Wittich Decl. ¶ 3; *see also* SAC 18, statements the Court must accept as true at this juncture. Regardless, "[s]o long as a commercial defendant's efforts are purposefully directed toward residents of the forum state, the fact that the defendant hasn't physically entered it does not defeat personal jurisdiction there." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 493 (7th Cir. 2014).

Finally, none of the cases cited by XAPT KFT convince the Court that XAPT KFT's contacts with Illinois were so minimal that personal jurisdiction does not exist. XAPT KFT suggests that *Philos Technologies, Inc. v. Philos & D, Inc.*, 802 F.3d 905 (7th Cir. 2015), "involves an international relationship even more intimate than the one presented here" and that, because personal jurisdiction was found not to exist in that case, personal jurisdiction likewise does not exist here. Br. Supp. XAPT 12(b)(2) Mot. Dismiss 8–10. In that case, the agreement between the plaintiff and defendant "was in essence a contract for the provision of goods" produced in Illinois and shipped to Korea, and the only other contact between the defendant and Illinois was a couple of "mostly incidental" trips. *Philos*, 802 F.3d at 914–15. Likewise, in *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc*., 751 F.3d 796 (7th Cir. 2014), the court found that there was not personal jurisdiction merely because the defendant made a few sales in the forum state, which the plaintiff "provide[d] no evidence . . . had any connection with this litigation." *Id*. at 801. The discrete shipment of goods from one place to another is clearly distinguishable from an ongoing business relationship between two parties replete with frequent check-ins, meetings to exchange thoughts about the product being

developed, and continuing obligations with respect to the forum state party's confidential

information.  *See Citadel*, 536 F.3d at 763 (distinguishing cases in which a "contract was to

complete a discrete task" and the purchaser "only needed to accept and pay for the" product from

cases in which the relevant contract was "to provide a service," creating "continuing

obligations").

      The Court finds that this evidence cumulatively indicates that XAPT KFT purposefully

availed itself of the privilege of conducting business in Illinois as to the breach of contract claims

and purposefully directed its conduct at Illinois as to the tort claim.  As such, XAPT KFT

"should have reasonably anticipated being haled into court in Illinois" for a case based on the

DBS Project.  *See id.* at 764; *see Valley Air Serv., Inc. v. Southaire, Inc.*, No. 06 C 782, 2006 WL

3743130, at *3 (N.D. Ill. Dec. 15, 2006) ("The main factor in specific jurisdiction analysis is

foreseeability—was it reasonably foreseeable to the defendant that its action could result in

litigation in the state in question.").  Accordingly, Deere has established a prima facie case of

personal jurisdiction over XAPT KFT, and XAPT KFT's motion to dismiss pursuant to Rule

12(b)(2) is denied.

      **ii.**    **XAPT Solutions' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)**

      Deere brings the same claims against XAPT Solutions as against XAPT KFT: breach of

contract and conversion.  SAC 36–38, 46.  XAPT Solutions has filed a motion to dismiss for lack

of personal jurisdiction, arguing that it lacks the minimum contacts necessary to permit this

Court to exercise jurisdiction over it.[6]  XAPT Solutions 12(b)(2) Mot. Dismiss 1.  It asserts that it

is an Australian business organization with its principal place of business in Brisbane, Australia

---

[6] XAPT Solutions' motion also states that "service has yet to be made on it through the Hague Convention."  XAPT Solutions 12(b)(2) Mot. Dismiss 1.  Because XAPT Solutions has not moved for dismissal for insufficient service of process pursuant to Rule 12(b)(5), the Court does not discuss any issues related to service.

and that it "observes all formalities required by Australian law to maintain its existence as a

distinct corporate entity."  Br. Supp. XAPT Solutions 12(b)(2) Mot. Dismiss 2, ECF No. 130.

Furthermore, it notes, it has never maintained a physical presence in the United States nor owned

or rented property there, advertised or sold its products in the United States, employed anyone

located there, or entered into direct business dealings with any United States customers.  *Id*.  "Its

only customers are its parent, XAPT KFT, and its sister, XAPT Corp."  *Id*.  With regard to the

instant case, XAPT Solutions argues while "employees of [XAPT] Solutions were physically

present in Illinois engaging in relations with Deere," they "did so while on leave from [XAPT]

Solutions and under the employment of XAPT Corp."  *Id*. at 6.  It maintains that "[i]t was never

party to any contract or even negotiations with Deere."  *Id*. at 7.

Deere refutes the argument that XAPT Solutions had no relationship to Deere or the DBS

Project with a citation to the MSA: Section 3.6 provides that "upon execution of [the MSA],

XAPT [KFT] and XAPT Solutions . . . shall be deemed approved subcontractors, for providing

Services pursuant to the terms of this Agreement."  Deere Omnibus Resp. 18–19 (emphasis

omitted) (quoting MSA § 3.6).  In the SAC, Deere alleges that XAPT Solutions agreed to the

terms of the Confidential Information Agreement, SAC 37.[7]  Based on this evidence, the Court

concludes that XAPT Solutions was an approved subcontractor for the DBS Project and that,

through the confidentiality agreement, it had long-term, continuing obligations to Deere with

regard to its confidential information of just the sort that other courts have found to support the

exercise of personal jurisdiction.  *See Burger King*, 471 U.S. at 476; *Tekway*, 2020 WL 5946973,

at *8.

---

[7] Additionally, Deere points to the complaint filed by XAPT Solutions and XAPT KFT in the Delaware Court of
Chancery, Deere Omnibus Resp. 19, in which they allege that "[p]ursuant to the mandates of Section 3.6 of the
MSA, representatives of XAPT Solutions . . . executed the [Confidential Information Agreements]," XAPT KFT &
XAPT Solutions Del. Ch. Compl. 5.

Moreover, Deere has provided evidence sufficient for the Court to find, at this stage, that the XAPT Solutions employees purported to be on leave of absence and working only for XAPT Corp. were simultaneously working for XAPT Solutions, which further supports that XAPT Solutions, through its employees, had numerous contacts with Deere in Illinois.  XAPT Solutions asserts that Ralph Hunt, its Chief Executive Officer, "took a leave of absence" at the end of 2017 "to serve as Project Director for the [DBS] Project as an employee of XAPT Corp." and that "[d]uring that time, he resided in Moline, Illinois, and drew a salary from XAPT Corp. and not from [XAPT] Solutions."  Br. Supp. XAPT Solutions 12(b)(2) Mot. Dismiss 3.  He resigned from XAPT Corp. in December 2019 and "resumed employment with [XAPT] Solutions."  *Id*. But Deere provides evidence that Hunt corresponded with Deere personnel via email throughout 2016 and 2017 while holding himself out to be acting on behalf of XAPT Solutions.  *See* Jaffe Decl. ¶ 19 (declaring that Hunt's signature block in these emails listed his employer as XAPT Solutions).  Deere also provides an affidavit establishing that Hunt "traveled to Deere's offices in East Moline, Illinois on at least eight occasions between February 10, 2016 and July 18, 2017" related to the DBS Project, Wittich Decl. ¶ 4—a time period during which XAPT Solutions admits he was working for them, Br. Supp. XAPT Solutions 12(b)(2) Mot. Dismiss 3.

XAPT Solutions points to another employee, Peter Yates, who it claims "took a leave of absence from [XAPT] Solutions to serve as XAPT Corp.'s Project Manager on the [DBS] Project, during which time he resided in Davenport, Iowa, across the river from Moline."  *Id*. at 2–3.  Deere provides evidence that Yates emailed Deere employees on several dates between October 14, 2017 and January 12, 2018, using a signature block that listed his employer as XAPT Solutions.  Jaffe Decl. ¶¶ 20–21.

19

With regard to Gyozo Barci, another of its employees, XAPT Solutions admits that he "was present in Illinois once in late 2019" but states he was there "for an unknown reason."  Br. Supp. XAPT Solutions 12(b)(2) Mot. Dismiss 2–3.  Wittich declares that Barci "traveled to Deere's offices in East Moline, Illinois on June 16, 2019, for a 'skill assessment' related to the" DBS Project.  Wittich Decl. ¶ 5.  According to another declaration provided by Deere, XAPT Corp. had suggested Barci for the job of Solution Architect, and the assessment was to determine whether Barci had the necessary skills for the role.  McHugh Decl. ¶ 21, Deere Omnibus Resp. Ex. A, ECF No. 131-1.  Ultimately, Deere concluded that he did not, and Barci was not hired. *Id*.

Cumulatively, this evidence establishes that XAPT Solutions had repeated, purposeful contact with Illinois related to the DBS Project and continuing obligations with regard to the confidential information from which Deere's contract and tort claims against XAPT Solutions stem.  *See Burger King*, 471 U.S. at 472.  As such, the Court finds that Deere has made out a *prima facie* case of specific personal jurisdiction.  *See Purdue*, 338 F.3d at 782.  XAPT Solutions' motion to dismiss for lack of personal jurisdiction is therefore denied.

### iii.   Cosmo's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)

Deere also brings claims for breach of contract and conversion against Cosmo.  SAC 36–38, 46.  Cosmo requests that the Court dismiss it as a defendant, arguing that it is a Romanian business entity and lacks the minimum contacts necessary for the Court to exercise personal jurisdiction over it.  Cosmo 12(b)(2) Mot. Dismiss 1–2.  It asserts that it "never had any direct business relationship with Deere" and that "all of Cosmo's business dealings were with the co-defendant XAPT entities."  Br. Supp. Cosmo 12(b)(2) Mot. Dismiss 8–9, ECF No. 97.  Deere counters that Cosmo's "contacts with Deere in Illinois and overall involvement on this project

were anything but trivial or attenuated" and requests an opportunity to conduct limited

jurisdictional discovery to provide the Court with evidence regarding Cosmo's contacts with

Illinois.  Mem. Supp. Deere Mot. Conduct Jurisdictional Disc. 12, ECF No. 100.

The contacts to which Cosmo itself admits in its briefing—and of which it provides

evidence—establish the minimum contacts necessary for the Court to exercise personal

jurisdiction over Cosmo, so the Court finds jurisdictional discovery unnecessary.[8]  Cosmo admits

that it developed software for the DBS Project according to Deere's specifications between July

2018 and January 2020.  Br. Supp. Cosmo 12(b)(2) Mot. Dismiss 3–5.  Eight Cosmo employees

worked on the project.  *Id*. at 3.  Each "in their individual names more than once signed

nondisclosure agreements originating from Deere."  *Id*. at 3–4.  "Aside from their individual

work, the eight Cosmo employees participated in regular team meetings regarding the [DBS]

Project" via online video conferencing with representatives from Deere, XAPT KFT, and XAPT

Solutions.  *Id*. at 4.  At these meetings, the Cosmo team would demonstrate the programs it had

developed, and the parties would discuss areas of improvement.  *Id*.  The Cosmo employees

contacted Deere directly via email when they needed additional support or clarification regarding

their assigned tasks.  *Id*.  Cosmo provides an affidavit from its General Manager and

Administrator, Mihai Madussi, affirming these facts.  *See* Madussi Aff. ¶¶ 4, 18–20, 23–38, Br.

Supp. Cosmo 12(b)(2) Mot. Dismiss Ex. A, ECF No. 97-1.

The Court concludes from this information that Cosmo has the minimum contacts

necessary for this Court to exercise specific personal jurisdiction over it.  Although Deere

considered Cosmo a non-approved subcontractor, *see* Br. Supp. Cosmo 12(b)(2) Mot. Dismiss 4;

---

[8] "Where . . . the defendants submit evidence opposing the district court's exercise of personal jurisdiction, the plaintiffs must similarly submit affirmative evidence supporting the court's exercise of jurisdiction."  *Matlin v. Spin Master Corp*., 921 F.3d 701, 705 (7th Cir. 2019).  Because Cosmo's evidence *supports* the Court's finding of personal jurisdiction, Deere need not submit such affirmative evidence.

SAC 26–27, Cosmo employees spent over a year developing software for the DBS Project, participating in meetings at which they would demonstrate the programs and receive feedback from Deere representatives and contacting Deere representatives directly to clarify that their actions were in line with Deere's expectations.  This prolonged, involved relationship and frequent direct communication between the software developer—Cosmo—and the intended software recipient—Deere—support a finding of purposeful availment.  *See Eisenmann*, 2003 WL 22220125, at *3; *Tekway*, 2020 WL 5946973, at *7.  Cosmo emphasizes that XAPT KFT operated as an intermediary between Cosmo and Deere.  *See* Br. Supp. Cosmo 12(b)(2) Mot. Dismiss 3 ("Cosmo began providing consulting services to XAPT KFT related to the project that XAPT KFT was already undertaking for Deere . . . ."); *id*. ("Cosmo was to develop software features according to Deere's specifications as conveyed to it through XAPT KFT."); *id*. at 4 ("Cosmo invoiced all work on the [DBS] Project to XAPT KFT, and all payments towards the invoices sent by Cosmo for work on the [DBS] Project came from XAPT KFT.").  But Cosmo clearly knew that the product it was developing was not for XAPT KFT but for Deere, headquartered in Illinois, and that it would be used there.  It does not matter if, as Madussi asserts, "[n]one of the members of the Cosmo Team ever was physically present in Illinois at any time when Cosmo . . . performed work related to the [DBS] Project," Madussi Aff. ¶ 22; as long as Cosmo's efforts were "purposefully directed toward" Deere, the fact that its employees did not physically enter the state "does not defeat personal jurisdiction there."  *See Greving*, 743 F.3d at 493.

Furthermore, the Cosmo employees working on the DBS Project signed nondisclosure agreements directly with Deere related to the DBS Project, creating continuing obligations to Deere related to the very claims Deere brings against Cosmo.  *See* SAC 36–38, 46.  Such

ongoing obligations further support a finding of personal jurisdiction.  *See Burger King*, 471 U.S. at 476; *Tekway*, 2020 WL 5946973, at *8.  Cosmo makes much of the fact that the employees signed "in their individual names," Br. Supp. Cosmo 12(b)(2) Mot. Dismiss 3–4, but it is not clear whether Cosmo believes this negates the effect of these agreements on the personal jurisdiction analysis, and if so, why.  The individuals worked on the DBS Project in their roles as Cosmo employees, *see* Madussi Aff. ¶ 20, and the existence of the nondisclosure agreements strengthens the apparent ties between Cosmo, through its employees, and Deere.  (The Court also notes Cosmo as an entity was paid for the work its employees performed.  Br. Supp. Cosmo 12(b)(2) Mot. Dismiss 4.).  As the personal jurisdiction analysis is not "mechanical or quantitative," *Citadel*, 536 F.3d at 761 (quotation marks omitted), personal jurisdiction may be found even absent a formal contract between Cosmo as an organization and Deere—especially where Cosmo's employees, acting in that capacity, agreed to carry out long-term obligations to Deere stemming from Cosmo's involvement in the DBS Project.  *See Dual-Temp*, 2009 WL 4674105, at *8.

This evidence, provided by Cosmo itself, shows sufficient contacts with Illinois for this Court to find that a *prima facie* case for specific personal jurisdiction exists.[9]  Cosmo's interactions with Illinois were more than "merely random, fortuitous, or attenuated," *Citadel*, 536 F.3d at 761—it chose to participate at length in the DBS Project, engaging directly with Deere in the process of creating, testing, and improving the software.  And Cosmo should have known that the consequences of any failure on its part to adequately develop the software or abide by the non-disclosure agreement would be felt in Illinois.  *See RAR*, 107 F.3d at 1277.  As the Court finds that Cosmo should have reasonably foreseen being haled into court in Illinois for disputes

---

[9] The Court rejects Cosmo's reliance on the cases also cited by XAPT KFT, Br. Supp. Cosmo 12(b)(2) Mot. Dismiss 7–10, for the same reasons.  *See supra* Section II(b)(i).

related to the DBS Project, *see id*., Cosmo's motion to dismiss for lack of personal jurisdiction is denied.  Because the Court has found personal jurisdiction to exist over Cosmo, Deere's motion for jurisdictional discovery is moot.

### III.   Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1)[10]

XAPT Corp. asserts that Deere has failed to fulfill a condition precedent to suit: the mutual dispute resolution procedure set forth in Section 15.6.1 of the MSA.  XAPT Corp. Mot. Dismiss or Stay 7.  As a result, XAPT Corp. argues, this case must be dismissed under both Rule 12(b)(6) and Rule 12(b)(1).  *Id*. at 7–12.

### a.   Legal Standards

"A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint."  *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017).  When resolving such a motion, the Court "accept[s] as true all well-pleaded factual allegations and draw[s] reasonable inferences in favor of the plaintiffs."  *Id*.  The court may look beyond the complaint's jurisdictional allegations and view other evidence submitted by the parties to determine whether subject matter jurisdiction exists.  *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008).  "[A] plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met."  *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

A defendant may also seek to dismiss a complaint pursuant to Rule 12(b)(6) for failure to state a claim.  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  At the motion to dismiss stage, the key

---

[10] Because the arguments for dismissal under both Rule 12(b)(6) and Rule 12(b)(1) are related, the Court will address them at the same time.

inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (noting that courts also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice"). While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc*., 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When resolving a Rule 12(b)(6) motion, "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed to be true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and the court must also "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### b.  Analysis

XAPT Corp. believes that the SAC should be dismissed under Rules 12(b)(1) and 12(b)(6) because of Deere's failure to comply with the mutual dispute resolution procedure appearing in Section 15.6.1 of the MSA.  XAPT Corp. Mot. Dismiss or Stay 7–12.  Looking first to Rule 12(b)(6), XAPT Corp. argues that "the failure to engage in a contractually-agreed dispute resolution process prior to litigation is grounds for dismissal of an action for failure to state a

claim" and points to various cases it asserts support its position.  *Id*. at 7–11.  XAPT Corp.

additionally asserts that "[c]ourts have dismissed actions pursuant to Rule 12(b)(1) when a

plaintiff fails to satisfy a condition precedent that was necessary to trigger the right to commence

litigation," urging this Court to follow their example.  *Id*. at 11–12.  Deere counters that "district

courts within the Seventh Circuit analyze the issue of whether failure to satisfy a condition

precedent warrants dismissal under Rule 12(b)(6)—not 12(b)(1)" and that "[t]his Court already

held that Deere has sufficiently pled compliance with pre-suit obligations in the SAC."  Deere

Omnibus Resp. 27, 28 (emphasis omitted).

There is no dispute that the MSA should be interpreted in accordance with Delaware law.

*See id*. at 36 (acknowledging that "the agreements are interpreted under basic Delaware contract

law").  But while the Court must look to state law to resolve substantive matters in this case, *see*

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), whether dismissal should be granted under

the Federal Rules of Civil Procedure is a federal procedural matter, *see Sibbach v. Wilson & Co*.,

312 U.S. 1, 9–10 (1941).  Thus, while the Court will use Delaware law should it need to interpret

any provision of the MSA, it will look to federal law in analyzing the procedural aspects of this

dispute.

Courts in the Seventh Circuit evaluate motions to dismiss suits for breach of contract

based on lack of compliance with pre-suit dispute resolution provisions under Rule 12(b)(6),

looking to whether plaintiffs have adequately pleaded compliance.  *See Redfield v. Cont'l Cas.*

*Corp*., 818 F.2d 596, 610 (7th Cir. 1987) ("An essential allegation of a complaint based upon a

breach of contract is that the plaintiff performed all contractual conditions required of him . . . .

[P]leading the performance of conditions precedent is necessary to state a cause of action for

breach of contract . . . ." (citations omitted)); *Retreat Props., LLC v. KA Designworks Inc*., No.

26

17 C 5608, 2018 WL 4339378, at *7 (N.D. Ill. Sept. 11, 2018) (reviewing the defendants'
argument that the plaintiff "failed to satisfy the provision in the parties' contract that require[d]
mediation as a condition precedent to filing suit . . . under the legal standard applicable to a
motion to dismiss pursuant to . . . [Rule] 12(b)(6)" and looking to the plaintiff's "allegations that
it ha[d] satisfied all conditions of the contract" to come to a conclusion (citations omitted));
*Kmart Corp. v. Footstar, Inc*., No. 09 C 3607, 2010 WL 1541296, at *4 (N.D. Ill. Apr. 14, 2010)
(evaluating, at the motion to dismiss stage, whether the plaintiff's "complaint [was] deficient
because it fail[ed] to plead facts that demonstrate[d the plaintiff] satisfied two notice conditions
precedent").  The question of whether the plaintiff "actually performed all possible conditions
precedent . . . [is a] factual issue[] not ripe for adjudication at the motion to dismiss stage." *My
Canary LLC v. Susieair, LLC*, No. 16 CV 4000, 2017 WL 622235, at *4, *5 (N.D. Ill. Feb. 15,
2017) (finding, in a breach of contract case, that the plaintiff's "allegations sufficiently allege
performance of conditions precedent"); *see Unilever U.S., Inc. v. Johnson Controls, Inc*., Case
No. 16-CV-01849, 2017 WL 622209, at *7 (N.D. Ill. Feb. 15, 2017) (noting that at the motion to
dismiss stage, courts look to pleading standards for conditions precedent and stating that with
regard to exhibits provided by the plaintiff "purportedly showing its efforts to negotiate
[pursuant to a possible condition precedent], . . . the court [could ]not consider them without
converting the . . . motion [before it] into one for summary judgment").

Although XAPT Corp. argues that the Court must now determine whether Deere *actually*
complied with Section 15.6.1 of the MSA, none of the federal cases to which it cites[11] convince

---

[11] XAPT Corp. also cites to a Delaware Chancery Court opinion which it believes establishes that "[u]nder Delaware
law . . . , the failure to engage in a contractually-agreed dispute resolution process prior to litigation is grounds for
dismissal of an action for failure to state a claim."  XAPT Corp. Mot. Dismiss or Stay 7 (citing *Fernstrom v. Trunzo*,
C.A. No. 2017-0518-PWG, 2017 WL 6028871, at *2 (Del. Ch. Dec. 5, 2017)).  As noted above, a state court's
procedure for dismissal is not relevant to this federal action.

this Court that it should do so at this stage. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co*., 811 F.2d 326 (7th Cir. 1987), a Seventh Circuit case which XAPT Corp. argues supports the idea that "[i]f a legal action requires the occurrence of an event that has not yet occurred, the controversy is not ripe for adjudication," XAPT Corp. Mot. Dismiss or Stay 7–8, involves arguments at summary judgment, not at the motion to dismiss stage. *See DeValk*, 811 F.2d at 336–38. *Bailey v. Bicknell Mins., Inc*., 819 F.2d 690 (7th Cir. 1987), concerns the exhaustion of available contractual remedies as a precondition to suit under § 301 of the Labor Management Relations Act, 29 U.S.C. §§ 141–97, a federal statutory scheme which has no relevance to the instant diversity breach of contract suit. *See Bailey*, 819 F.2d at 691–92.

While XAPT Corp. cites to two non-Seventh Circuit district court cases in which the court dismissed the suit for failure to satisfy a condition precedent, XAPT Corp. Mot. Dismiss or Stay 10–11 (citing *Tattoo Art, Inc. v. Tat Int'l, LLC*, 711 F. Supp. 2d 645, 648, 652, 655 (E.D. Va. 2010) (dismissing the case without prejudice pursuant to Rule 12(b)(1) because the plaintiff "failed to satisfy the condition precedent necessary to trigger the right to initiate litigation"); *Trone Health Servs., Inc. v. Express Scripts Holding Co*., No. 4:16CV1250 RLW, 2017 WL 3412158, at *3 (E.D. Mo. Aug. 8, 2017) ("[T]he [c]ourt finds that dismissal without prejudice [pursuant to Rule 12(b)(6)] is warranted where the parties agreed to complete certain prerequisites prior to commencing litigation.")), in both of these cases, the plaintiffs admitted they did not comply with conditions precedent, *see Tattoo Art*, 711 F. Supp. 2d at 651 ("[The p]laintiff does not dispute that it failed to request mediation prior to commencing the instant lawsuit."); *Trone*, 2017 WL 3412158, at *2 ("[The d]efendants assert, and [the p]laintiffs do not dispute, that [the p]laintiffs did not comply with the provisions of [the dispute resolution section of the contract].").  Here, Deere asserts that it has fulfilled all conditions precedent.  Deere

28

Omnibus Resp. 31.  Moreover, XAPT Corp. fails to explain why this Court should follow the example of the Eastern District of Virginia and the Eastern District of Missouri while ignoring the holdings of myriad cases from district courts within the Seventh Circuit.

Courts presented with evidence beyond the pleadings may, at their discretion, choose to convert a motion to dismiss to a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."); *Marques v. Fed. Rsrv. Bank of Chi*., 286 F.3d 1014, 1017 (7th Cir. 2002) ("A motion under Rule 12(b)(6) becomes a motion for summary judgment when the defendant attaches materials outside the complaint . . . and the court actually considers some or all of those materials." (quotation marks omitted)); *see also Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (noting that "[i]t was within [the] discretion" of the district court to choose "to handle the case as a straightforward motion to dismiss, rather than converting it to a motion under Rule 56").  The Court declines to do so here.  Deere has stated that discovery is not complete, *see* Deere Omnibus Resp. 30, and the Court does not wish to resolve a motion for summary judgment when one party believes it has not yet obtained all of the information it needs.  *See Juarez v. Sobie Builders, Inc*., No. 09 C 4671, 2012 WL 6051968, at *2 (N.D. Ill. Dec. 5, 2012) ("We decline to convert [the] defendants' motion into a summary judgment motion.  [The p]laintiffs have not yet obtained all of the discovery that they need and had difficulty earlier in this proceeding obtaining discovery from the defendants.  Moreover, discovery is not limited to the [issue at hand].  We will disregard the documents submitted by defendants and continue under Rule 12.").

29

For these reasons, the Court looks to the Rule 12(b)(6) standard and evaluates whether

Deere has adequately pleaded compliance with the mutual dispute resolution procedure in the

SAC, not whether the evidence presented shows actual compliance.  According to Deere, Section

15.6.1 of the MSA provides that

> The Parties agree to work together in good faith to resolve controversies, claims
> or disputes relating to this Master Agreement ("Dispute").  The respective Project
> Managers will first attempt to resolve the Dispute; however, if there is no
> resolution within ten (10) business days, either Party may then require that their
> next level of management meet within the next ten (10) business days to resolve
> the Dispute.  If these managers are unable to resolve the Dispute, then there may
> be one final escalation to designated leaders, who will meet within ten (10)
> business days to make one last attempt to resolve the Dispute.  Except for
> injunctive relief described below, the Parties agree to use this mutual dispute
> resolution process before pursuing any legal action against the other.  Each Party
> will provide the other with information and documentation to substantiate its
> position with respect to the Dispute.

Deere Omnibus Resp. 10 (emphases omitted).  And in the SAC, Deere alleges

> Despite Deere providing notice as required under the Contracts and following the
> parties' mutual dispute resolution process, including months of communications
> with the requisite Project Manager, "next level" management, and "designated
> leader" levels at XAPT, and a failed mediation "conducted by a mutually
> agreeable mediator in a mutually agreed location," XAPT has failed to cure the
> breaches as required pursuant to MSA §§ 10.12, 15.6.1, 15.6.2.

SAC 35.

Federal Rule of Civil Procedure 9(c) provides that "[i]n pleading conditions precedent, it

suffices to allege generally that all conditions precedent have occurred or been performed."  *Cf.*

*id*. ("But when denying that a condition precedent has occurred or been performed, a party must

do so with particularity.").  This Deere has clearly done.  *See* SAC 35 ("Despite Deere . . .

following the parties' mutual dispute resolution process . . . .").  Even if the more stringent

pleading standard set forth in *Twombly* and *Iqbal* were to apply, requiring facial plausibility, *see*

*Iqbal*, 556 U.S. at 678; *cf. Unilever*, 2017 WL 622209, at *7 (noting that "[b]ased on Rule 9(c),

courts in this district have held that the Rule 8 pleading standard enunciated in *Twombly* and

*Iqbal* does not govern pleading compliance with conditions precedent" (citation omitted)),

Deere's allegations suffice.  *See* May 6, 2020 Order 5 ("[Deere's] allegation easily satisfies the

motion to dismiss standard set forth in *Iqbal* and *Twombly*."); Sept. 24, 2020 Order 11 (holding

that Magistrate Judge Hawley's finding was not clearly erroneous).  Deere has adequately

pleaded compliance with the mutual dispute resolution process, and the Court will accordingly

not dismiss the SAC for failure to state a claim.  XAPT Corp. spends much time in its brief

presenting the facts it believes show Deere's failure to comply, but whether it actually has is not

the question with which the Court is currently faced.  The issue before the Court is whether

Deere adequately alleges compliance with Section 15.6.1 of the MSA, and the Court finds that it

does.

## IV.    Motions to Stay or Dismiss Under the *Colorado River* Abstention Doctrine

In the alternative, joined by Cosmo and XAPT KFT, Br. Supp. Cosmo & XAPT KFT

Mot. Dismiss or Stay 1, ECF No. 120, XAPT Corp. moves to stay the case pursuant to the

*Colorado River* abstention doctrine, contending that a parallel proceeding is pending before the

Delaware Court of Chancery and that this Court's abstention in favor of that proceeding is

justified.  XAPT Corp. Mot. Dismiss or Stay 12–22.[12]  In *Colorado River Water Conservation*

*District v. United States*, 424 U.S. 800 (1976), the Supreme Court established a very limited

exception to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction

given them," *id*. at 817–18, holding that "in exceptional cases, a federal court should stay a suit

and await the outcome of parallel proceedings as a matter of 'wise judicial administration, giving

regard to the conservation of judicial resources and comprehensive disposition of litigation,'"

---

[12] Because XAPT KFT and Cosmo adopt XAPT Corp.'s *Colorado River* argument, Br. Supp. Cosmo & XAPT KFT
Mot. Dismiss or Stay 1, the Court will cite to XAPT Corp.'s briefing for these three Defendants' arguments.

*Finova Cap. Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) (quoting

*Colorado River*, 424 U.S. at 817). The "task in [such] cases . . . is not to find some substantial

reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain

whether there exist exceptional circumstances, the clearest of justifications, that can suffice

under *Colorado River* to justify the surrender of that jurisdiction." *Moses H. Cone Mem'l Hosp.*

*v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983) (emphases omitted) (quotation marks

omitted).

To determine whether a stay or dismissal under *Colorado River* is appropriate, a district

court must conduct a two-part analysis. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013,

1018 (7th Cir. 2014). "First, the court must determine whether the state and federal court actions

are parallel." *Id.* If they are not parallel, then the *Colorado River* doctrine does not apply. *Id.*

But if the court finds that they are parallel, it next "must decide whether abstention is proper by

carefully weighing ten non-exclusive factors." *Id.* These factors are:

> (1) whether the state has assumed jurisdiction over property; (2) the
> inconvenience of the federal forum; (3) the desirability of avoiding piecemeal
> litigation; (4) the order in which jurisdiction was obtained by the concurrent
> forums; (5) the source of governing law, state or federal; (6) the adequacy of
> state-court action to protect the federal plaintiff's rights; (7) the relative progress
> of state and federal proceedings; (8) the presence or absence of concurrent
> jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived
> nature of the federal c[ase].

*Id.* "[T]he decision whether to dismiss a federal action because of parallel state-court litigation

does not rest on a mechanical checklist, but on a careful balancing of the important factors as

they apply in a given case, with the balance heavily weighted in favor of the exercise of

jurisdiction." *Moses H. Cone*, 460 U.S. at 16. "The district court is given the discretion to apply

more significant weight and analysis to those factors that are most relevant to the case at hand."

*Freed*, 756 F.3d at 1021.

Before proceeding to the *Colorado River* test, the Court notes one important circumstance that will bear greatly on its analysis: the relevant state court case,[13] currently proceeding before the Delaware Court of Chancery, has been stayed in favor of the federal suit. *See* Del. Ch. Oct. 11, 2021 Order 3, Joint Not. Ruling Ex. C, ECF No. 175-1.  Should Defendants be granted their request—the stay or dismissal of this case—there would be no case actively proceeding before either court.  Nevertheless, mindful that "to avoid reversal, a district court . . . must consider the factors listed in *Colorado River* and its progeny and determine whether in light of those factors exceptional circumstances exist warranting abstention," *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001), the Court will conduct a full *Colorado River* analysis.  But that the Delaware state court case is now stayed will play a large role in this Court's evaluation.  *See LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1559 (7th Cir. 1989) ("[T]he district court should consider any special factors counselling for or against the exercise of jurisdiction in the case before it." (quotation marks omitted)).

### a.  Parallel Suits

"Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." *Finova*, 180 F.3d at 898 (quotation marks omitted).  While "[t]he cases need not be identical to fulfill the requirement of parallelism," there has to be "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Freed*, 756 F.3d at 1018–19 (quotation marks omitted); *see DePuy Synthes Sales, Inc. v. OrthoLA, Inc*., 953 F.3d 469, 477 (7th Cir. 2020) ("Formal symmetry is unnecessary . . . .").  An

---

[13] Initially, two separate actions were proceeding before the Delaware Court of Chancery: *XAPT Corp. v. Deere & Co*., C. A. No.: 2020-0252-JRS, and *XAPT Solutions & XAPT KFT v. Deere & Co*., C. A. No.: 2020-0787-JRS.  *See* Del. Ch. Oct. 11, 2021 Order 1, Joint Not. Ruling Ex. C, ECF No. 175-1.  The Delaware Court of Chancery consolidated these two cases on October 11, 2021, ordering that all future filings in the litigation be made in Case No. 2020-0252-JRS.  *See id*. at 2.

important factor for a court to consider is "whether both cases would be resolved by examining largely the same evidence." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 647 (7th Cir. 2011). "[T]he mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel," *AAR Int'l*, 250 F.3d at 518; "the parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants," *Freed*, 756 F.3d at 1020 (alteration omitted) (quotation marks omitted). Nor "can it be dispelled by repackaging the same issue under different causes of action." *Id*. (quotation marks omitted). "[A]ny doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction." *Id*. at 1019 (alterations in original) (quotation marks omitted).

XAPT Corp., XAPT KFT, and Cosmo assert that this suit and the Delaware suit are parallel because the Delaware suit involves substantially the same parties—Cosmo is not a party to the Delaware action[14]—and because both suits stem from "XAPT [Corp.'s] development of the DBS for Deere and the various contractual agreements between XAPT [Corp.] and Deere relating to that project," bring claims for breaches of those contracts, and seek to assert rights over the intellectual property resulting from the DBS Project. XAPT Corp. Mot. Dismiss or Stay 14–15; *see also id*. at 16 ("In sum, in both proceedings the parties are asking the court to construe the parties' contracts, determine who has breached, and declare and enjoin the parties' contractual obligations. Thus, complete relief regarding Deere and XAPT's competing claims can be afforded in either forum, rendering duplicative proceedings pointless and wasteful."). Deere argues that the suits are not parallel because although the claims raised in the Delaware case are essentially compulsory counterclaims in the instant case, case law does not show that

---

[14] Conversely, XAPT Solutions *is* a party to the Delaware action but does not join in its co-Defendants' motions here.

actions are parallel where claims raised in one case are compulsory counterclaims of claims raised in the other case.[15]  *See* Deere Omnibus Resp. 34.

Like the SAC filed in the instant case, XAPT Corp.'s complaint against Deere in the Delaware Court of Chancery seeks relief related to the DBS Project and the underlying Contracts.  The fact section of the complaint focuses on the negotiations between the parties, the Contracts that resulted, and the breakdown between the parties.  XAPT Corp. Del. Ch. Compl. 6–34, Shen Decl. Ex. 2, ECF No. 118-6 at 10–49.  XAPT Corp. brings various claims for breach of contract, including for the alleged misappropriation of intellectual property and confidential information, failure to make required payments, and failure to comply with the contractually required mutual dispute resolution process before filing this suit before the Court.  *Id*. at 35–37. It seeks preliminary and permanent injunctions "prohibiting Deere from using, accessing, transmitting, or disclosing XAPT[ Corp's] intellectual property," an order directing "Deere to return to XAPT [Corp.] all confidential information and property as required by the parties' contracts," an award of "damages for Deere's breaches of contract," and attorney's fees and costs.  *Id*. at 38.  In a complaint filed with the Delaware Court of Chancery on September 16, 2020, XAPT KFT and XAPT Solutions seek a declaratory judgment that liability in the action pending before this Court may not attach to them because they were not parties to the Contracts. *See* XAPT KFT & XAPT Solutions Del. Ch. Compl. 12, Deere Omnibus Resp. Ex. J, ECF No.

---

[15] Deere also argues that "by pleading the Delaware actions as they have—attaching the Illinois Complaint and alleging that the claims made in this case are 'baseless'—Defendants have actually conceded that the Illinois case must be decided before their dependent Delaware claims can proceed" and that "[o]therwise, if this Court were to dismiss under the abstention doctrine, Defendants' allegations incorporating the Illinois pleadings would indirectly be dismissed."  Deere Omnibus Resp. 34.  The Court does not see how this argument supports the conclusion that the cases are not parallel.

131-19.  The two Delaware cases were consolidated on October 11, 2021.  Del. Ch. Oct. 11, 2021 Order 2.[16]

The Court finds that the Illinois federal action and the consolidated Delaware state action are parallel for purposes of the *Colorado River* analysis.  The parties are identical, with the exception of the omission of Cosmo from the Delaware suit.  The evidence underlying both cases is the same: the Contracts, the negotiations between the parties, and the course of dealing related to the DBS system.  The cases would both resolve whether any party breached the Contracts and to whom the intellectual property belongs, as well as whether XAPT KFT and XAPT Solutions may be held liable for breaches of the Contracts despite not being parties to them.  Deere's compulsory counterclaim argument is unavailing—while the cases it cites find that a suit based on claims which would be compulsory counterclaims in another pending suit is not *necessarily* parallel to that other suit, they do not hold that such a suit *cannot* be considered parallel, provided that other criteria are met.  *See AAR Int'l*, 250 F.3d at 520–22 (noting that "the appellees point to no authority . . . suggesting that a federal action is parallel to a state or foreign action for *Colorado River* abstention purposes when the claim upon which the federal action is based is pleadable as a compulsory counterclaim in the other action" but distinguishing the case before it from cases with essentially the same parties and closely intertwined issues); *Scion Dwight Managing Member LLC v. Dwight Lofts Holdings, LLC*, No. 10 C 6118, 2011 WL 2020677, at *2–3 (N.D. Ill. May 24, 2011) (declining to find two suits parallel where an important issue in the federal suit was missing from the state suit and noting that even if that

---

[16] In granting the motion to consolidate, the court found that "the questions of fact are basically the same in both cases" and that "[i]t seems highly likely these two actions will involve the same witnesses, substantial overlaps in discovery, the same contracts, and substantially similar facts and questions of law."  Del. Ch. Telephonic Rulings Tr. 8:9–10, 15–18, Joint Not. Ruling Ex. A, ECF No. 174-1.

issue were a compulsory counterclaim in the state suit, this "would not make the two suits parallel").

As such, the Court finds that "substantially the same parties are litigating substantially the same issues" in the federal and state actions and that the suits are therefore parallel for purposes of the *Colorado River* test. *See Finova Cap.*, 180 F.3d at 898 (quotation marks omitted); *cf.* Del. Ch. Telephonic Rulings Tr. 14:22–15:5, Joint Not. Ruling Ex. A, ECF No. 174-1 (finding that "there [wa]s more than enough factual and legal overlap between the Delaware and Illinois actions" to justify a stay of the Delaware action pursuant to *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281 (Del. 1970)).

### b. Exceptional Circumstances

Having found that the two suits are parallel, the Court next evaluates the ten non-exclusive factors to determine whether abstention would be appropriate. "[B]ecause of the presumption against abstention, absent or neutral factors weigh in favor of exercising jurisdiction." *Huon*, 657 F.3d at 648.

#### 1. State Jurisdiction over Property

All parties agree that the state of Delaware has not assumed jurisdiction over any property relevant to this case. *See* XAPT Corp. Mot. Dismiss or Stay 17 (stating that "neither court has assumed in rem jurisdiction"); Deere Omnibus Resp. 34 (asserting that "Delaware has no contact or interest in the property that is at issue in the litigation"). This factor is thus neutral.

#### 2. Inconvenience of the Federal Forum

The Court does not find that the federal forum is less convenient than the state forum for any party. Although XAPT Corp. argues that the Central District of Illinois "is a decidedly inconvenient forum for XAPT [Corp.], whose principal witnesses are located in Europe and

which has no physical presence in Illinois," it does not explain why Delaware—where it likewise

has no physical presence—would be more convenient, apart from its own decision to file suit

there.  *See* XAPT Corp. Mot. Dismiss or Stay 17–18.  Moreover, as Deere's offices are located in

Illinois, "virtually all of Deere's employee and/or former employee witnesses are located in

Illinois, and none are in Delaware," and "[n]one of the [D]efendants' documents or witnesses are

located in Delaware, nor are they located within the subpoena power of the Delaware court."  *See*

Deere Omnibus Resp. 35.  This factor therefore weighs against abstention.

### 3.   Desirability of Avoiding Piecemeal Litigation

This factor "turn[s] on . . . concerns about the efficient use of judicial resources and the

public's perception of the legitimacy of judicial authority."  *Freed*, 756 F.3d at 1022 (quotation

marks omitted).  Where two courts are overseeing substantially similar proceedings, the amount

of judicial resources necessary to reach a resolution is "effectively duplicat[ed]," which "cause[s]

wasteful litigation, hindering judicial economy."  *Id*. (quotation marks omitted).  Furthermore,

this "risk[s] duplicative rulings."  *Tyrer v. City of S. Beloit*, 456 F.3d 744, 756 (7th Cir. 2006).

As the two cases are substantially similar, *see supra* Section IV(a), this factor would

ordinarily weigh in favor of abstention.  But as the Delaware Court of Chancery has stayed the

state case, awaiting this Court's resolution of the federal case, Del. Ch. Oct. 11, 2021 Order 3,

only one case is actively proceeding.  As such, piecemeal litigation is not a concern.  This factor

weighs against abstention.

### 4.   Order in which Jurisdiction Was Obtained

Deere filed suit in this case on October 18, 2019, Compl., and XAPT Corp. was served

on October 21, 2019, Executed Summons, ECF No. 8.  XAPT Corp. filed its complaint in

Delaware Court of Chancery on April 3, 2020.  XAPT Corp. Del. Ch. Compl. 38.  Thus, this

Court obtained jurisdiction over XAPT Corp. more than six months before the Delaware Court of Chancery did.

Deere initially sought leave to file an amended complaint adding XAPT KFT, XAPT Solutions, and Cosmo as Defendants on March 27, 2020, Mot. File SAC 1, and was granted such leave on May 6, 2020, May 6, 2020 Order 16.  Cosmo asserts that it was not served until August 19, 2020, and XAPT KFT states it was not served until September 17, 2020.  Br. Supp. Cosmo & XAPT KFT Mot. Dismiss or Stay 2.  XAPT KFT and XAPT Solutions initiated their Delaware suit on September 16, 2020, XAPT KFT & XAPT Solutions Del. Ch. Compl. 14.  Assuming Defendants' dates are correct, they were served in the federal action prior to or around the time of the filing of XAPT KFT and XAPT Solutions' state complaint.  This does not indicate abstention is warranted—given the "presumption against abstention," *Huon*, 657 F.3d at 646— nor does it counteract that the SAC was filed months before XAPT KFT and XAPT Solutions' Delaware case was initiated.

This factor weighs strongly against abstention.

### 5. Source of Governing Law

This is a diversity suit alleging breach of contract, fraudulent inducement, and conversion.  *See* SAC 3, 33–40, 46.  As such, this Court will look to state law to resolve substantive legal issues.  *Erie*, 304 U.S. at 78.  Neither party disputes that the relevant contracts must be interpreted using Delaware law, *see* XAPT Corp. Mot. Dismiss or Stay 19–20; Deere Omnibus Resp. 36, and thus Delaware law governs for at least part of the suit.  "[A] state court's expertise in applying its own law favors a *Colorado River* stay."  *Freed*, 756 F.3d at 1022 (quotation marks omitted).  This factor weighs in favor of abstention.

### 6.   Adequacy of State-Court Action to Protect Deere's Rights

Absent a stay, the Court does not question that the Delaware state court action would have adequately protected Deere's rights. But given the stay put in place by the Delaware court, this factor weighs against abstention.

### 7.   Relative Progress of State and Federal Proceedings

Both this suit and the suit before the Delaware court are at the motion to dismiss stage. *See* Del. Ch. Oct. 11, 2021 Order 3 (deferring ruling on arguments raised in Deere's motions to dismiss the Delaware complaints apart from the motion to stay in favor of the Illinois litigation). Thus, prior to the stay in the Delaware suit, both cases had progressed to roughly the same stage. *See Huon*, 657 F.3d at 648 ("The question whether the state litigation has reached an advanced stage turns not on the amount of discovery completed but on how far the state court has progressed toward a final resolution."). Now that the Delaware case is stayed until this Court reaches a resolution, it is evident that (absent a federal stay) the instant suit will continue to proceed while the Delaware suit will not. *See Moses H. Cone*, 460 U.S. at 21 (noting that "[t]his factor . . . is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand"). This factor thus weighs strongly against abstention.

### 8.   Presence of Absence of Concurrent Jurisdiction

Concurrent jurisdiction exists here; thus, as both parties agree, this factor is neutral. *See* XAPT Corp. Mot. Dismiss or Stay 21 (stating that this factor would be neutral if the Court finds that personal jurisdiction exists over Cosmo); Deere Omnibus Resp. 38 (asserting that this factor is neutral but that Deere has filed a motion to dismiss the Delaware action for lack of subject matter jurisdiction); *see also* Del. Ch. Telephonic Rulings Tr. 10:6–9 (declining to rule on Deere's motion while the case is stayed).

### 9.   Availability of Removal

This "factor intends to prevent a federal court from hearing claims that are closely related to state proceedings that cannot be removed." *Freed*, 756 F.3d at 1023.  The Delaware case is not removable to Delaware federal court, which Deere appears to concede.  *See* Deere Omnibus Resp. 38 (acknowledging that its "efforts to remove the Chancery Court case to Delaware federal court on the basis of a federal question were unsuccessful").  No federal question is apparent in the Delaware case, *see* XAPT Corp. Del. Ch. Compl. 35–37; XAPT KFT & XAPT Solutions Del. Ch. Compl. 12, and Deere is incorporated in Delaware, precluding diversity jurisdiction in that state, *see* SAC 3.  Indeed, after Deere removed the case brought by XAPT Corp. on April 7, 2020, the United States Court for the District of Delaware granted XAPT Corp.'s motion to remand.  Del. Aug. 17, 2020 Mem. Opinion 4, 8, Shen Decl. Ex. 6, ECF No. 118-6 at 145–155. This factor weighs in favor of abstention.

### 10. Vexatious or Contrived Nature of the Federal Claim

Finally, XAPT Corp., XAPT KFT, and Cosmo argue that Deere's suit in the Central District of Illinois is vexatious and contrived, suggesting that because Deere filed suit before fulfilling the mandatory dispute resolution requirements, the case is "premature" and "designed to impose an inconvenient forum on" Defendants.  XAPT Corp. Mot. Dismiss or Stay 21–22. The Court disagrees.  As discussed above, Deere has adequately alleged compliance with Section 15.6.1 of the MSA, *see supra* Section III(b), and there is no evidence before the Court that the federal suit is vexatious or contrived.  This factor weighs against abstention.

### 11. Balancing of the Factors

Having weighed each of these factors, the Court finds that abstention would not be appropriate.  Eight out of ten factors either weigh against abstention or are neutral (and thus also

41

weigh against abstention, *Huon*, 657 F.3d at 648), with the order of jurisdiction and the relative progress of the state and federal proceedings strongly weighing in favor of exercising jurisdiction.  And while the source of the governing law and the unavailability of removal of the state action weigh in favor of abstention, these factors do not outweigh the factors weighing against abstention or overcome the strong presumption in favor of retaining jurisdiction— "federal courts determine difficult questions of state law every day," *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1157 (7th Cir. 1990); *see AXA Corp. Sols. v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 279 (7th Cir. 2003) ("The district court found that the fact that only state-law claims were at issue did not carry much weight, because it had jurisdiction in any event because of the diversity of the parties.").

The Court is not required to abstain from this breach of contract suit simply because a similar state court action is also pending; "[a]bstention requires more than the pendency of another lawsuit, because judicial economy will always be an issue when there is concurrent litigation." *Huon*, 657 F.3d at 649; *see also Carr*, 903 F.2d at 1157–58 (7th Cir. 1990) ("At bottom, Carr's argument for a *Colorado River* stay is founded on the proposition that this is a diversity suit in which at least two proceedings will be necessary to adjudicate all claims.  That is not enough to tip a balance heavily weighted in favor of the exercise of federal jurisdiction."). Defendants might prefer to litigate in their chosen forum, but "[t]he *Colorado River* doctrine is not intended to give defendants the upper hand by stalling the federal case to wait for a favorable final judgment in the state proceeding that then can be used to bar the plaintiff's claims in federal court." *Huon*, 657 F.3d at 650.  XAPT Corp., XAPT KFT, and Cosmo's motions to dismiss or stay this suit pursuant to the *Colorado River* doctrine are denied.

42

## V.        Motion to Set Status Conference

All four Defendants have filed a Motion to Set Status Conference, requesting that the Court hold a status conference with the parties to determine whether or not Deere complied with Section 15.6.1 of the MSA.  Defs. Mot. Status Conference 1–3.  They argue that this is "a central issue . . . that would effectively dispose of all of the claims against all of the Defendants."  *Id*. at 1.  At the status hearing, Defendants indicate they intend to "request a short evidentiary hearing" to address the "deceptions and untruths" of a declaration Deere has provided regarding its compliance with the mutual dispute resolution procedure.  *Id*. at 2–3.

As the Court made clear, *see supra* Section III(b), at this stage, Deere need only adequately plead compliance with Section 15.6.1, which, the Court found, it has.  The Court declined to convert XAPT Corp.'s motion to dismiss into a motion for summary judgment, *see id.*, and accordingly has not considered any of the evidence beyond the pleadings provided by either party with regard to this issue.  Defendants' requested status conference would not aid the Court in resolving any issue currently before it; rather, it would involve issues properly suited for the summary judgment stage.  The Motion to Set Status Conference is therefore denied.

## VI.       Motions to Seal

Both XAPT Corp. and Deere have filed motions to seal documents provided in support of their motion to dismiss or stay and omnibus response brief, respectively.  *See* XAPT Corp. Mot. Seal Exs. 1; Deere Mot. Seal Exs. 1.  The Court has not relied on any portion of the documents filed under seal in addressing the motions before it.  Accordingly, both motions for leave to file under seal are denied, and the sealed documents will remain sealed on the docket.  *See Bd. of Trs. of Univ. of Ill. v. Micron Tech., Inc*., 245 F. Supp. 3d 1036, 1043 (C.D. Ill. 2017) (denying a motion for leave to file under seal after noting the material portions of the relevant documents

43

were not relied upon).  The Court will not consider them for any purpose.  *See* Civil LR 5.10(A)(4).

**CONCLUSION**

For the foregoing reasons, Defendant Cosmo Consult Business Solutions S.R.L.'s ("Cosmo") Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2), ECF No. 96, is DENIED; Plaintiff Deere & Company's ("Deere") Motion to Conduct Jurisdictional Discovery Re: Cosmo Consult, ECF No. 99, is MOOT; Defendant XAPT KFT's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2), ECF No. 108, is DENIED; Defendant XAPT Corporation's ("XAPT Corp.") Motion to Dismiss or Stay the Second Amended and First Supplemental Complaint, ECF No. 118, is DENIED; Cosmo and XAPT KFT's Motion to Dismiss or Stay Under Fed. R. Civ. P. 12(b)(1), (6), ECF No. 119, is DENIED; Defendant XAPT Solutions Pty Ltd's ("XAPT Solutions") Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2), ECF No. 129, is DENIED; XAPT Corp., XAPT KFT, XAPT Solutions, and Cosmo's Motion to Set Status Conference, ECF No. 145, is DENIED; and XAPT Corp., XAPT KFT, XAPT Solutions, and Cosmo's Motion for Leave to File Replies to Deere's Filing Set Forth in ECF # 131, ECF No. 155, is DENIED.  XAPT Corp.'s Motion to File Exhibits Under Seal, ECF No. 116, and Deere's Motion to File Certain Omnibus Response Exhibits Under Seal, ECF No. 132, are DENIED, and the sealed documents will remain under seal on the docket.

Entered this 10th day of December, 2021.

s/ Sara Darrow

SARA DARROW

CHIEF UNITED STATES DISTRICT JUDGE
