IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DEERE & COMPANY, INC., <br>    Plaintiff, <br> <br> v. <br> <br> XAPT CORPORATION, *et al.*, <br>    Defendants. | Case No. 4:19-cv-04210-SLD-JEH |

**Order**

Now before the Court are Plaintiff Deere & Company, Inc.'s Updated and Supplemental Memorandum in Opposition (Doc. 218) to XAPT Corporation's Motion for Entry of Proposed Order Regarding Shifting Costs for Preservation of Certain Electronic Data and Defendant XAPT Corporation's Response (Doc. 233) to Deere & Company's Memorandum. The matter is fully briefed and for the reasons set forth below, Defendant XAPT Corporation's Motion for Entry of Proposed Order (Doc. 166) remains denied, and the Court will not reconsider its September 2, 2020 oral Order.

I

This case was filed by Plaintiff Deere & Company (Deere) originally against only Defendant XAPT Corporation (XAPT) on October 18, 2019. Deere claimed breach of contract, fraudulent inducement, and reformation after XAPT had been selected as the developer to create Deere's single, fully integrated "Dealer Business System." Subcontractors XAPT KFT, XAPT Solutions Pty Ltd, and Cosmo Consult Business Solutions S.R.L.[1] were later added as Defendants in this case. Plaintiff

---

[1] Deere alleges only XAPT KFT and XAPT Solutions Pty Ltd were approved subcontractors.

1

Deere continues to pursue breach of contract claims and a claim for fraudulent inducement against XAPT, breach of contract against the additional three Defendants, and conversion against all four Defendants, among other things.

Pertinent here are Sections 8.1 and 14.7 of the XAPT Subscription Delivery Agreement (SDA) between XAPT and Deere.  Section 8.1 provides in relevant part that "Deere agrees that the fees payable to XAPT for each contract year during the Minimum Commitment Period shall not be less than Five Hundred Thousand Dollars ($500,000) ('Minimum Commitment amount')."   (Doc. 30 at pg. 15).  Section 14.7 provides, "With respect to any amount to be reimbursed or otherwise credited or refunded by XAPT to Deere, Deere may, at its option, set off that amount against any amounts otherwise payable to XAPT under this Agreement, other than the Minimum Commitment Amount." *Id*. at pg. 21.  There is no dispute that Plaintiff Deere paid the Minimum Commitment Amount (MCA) for three contract years, July 2017 – June 2018, July 2018 – June 2019, July 2019 – June 2020.  Deere's contracts with XAPT were ultimately terminated on January 24, 2020.

## II

On September 2, 2020, the Court held a hearing on the Plaintiff's motion (Doc. 79) pertaining to electronically stored information (ESI) protocols at which time the issue of ESI preservation costs was addressed.  The parties discussed that there were different licensed environments that needed to be preserved, and they specifically identified Deere's Microsoft license subscriptions.  XAPT's counsel explained that XAPT "essentially sold the license rights to John Deere . . . we are still paying for these licenses, but Deere is the only entity that has access." 9/2/2020 Hearing Transcript (Doc. 95 at pg. 24).  The Court stated:

> So, on the who will pay for it question, ordinarily, the person who has to pay, under the rules, to preserve ESI is the person who owns that ESI . . . so, let's just take an ordinary case.  You're asking for the preservation of emails related to the case, that ESI is in the control,

> ownership of, let's say, the plaintiff. Plaintiff has to preserve that information and has to pay for the cost of responding to discovery requests. Might be a bad way to run things, but that's the way the rules work under the federal rules, is that the burden of preserving the information and the burden of the costs of producing the ESI is, under normal circumstances, on the person who owns the ESI.

9/2/2020 Hearing Transcript (Doc. 95 at pgs. 30-31). The Court observed: "The problem here is we have this hybrid situation where XAPT has been paying for the licenses. Maybe you could say Deere paid for the licenses initially; now XAPT is paying for the licenses itself while this issue is pending, but Deere is the only one who has the access to it." *Id*. at pg. 32. Plaintiff's counsel stated there should be some cost-sharing to preserve the Microsoft environments. Defense counsel stated XAPT had been preserving "at great cost and continues to preserve at great cost" those environments. *Id*. at pg. 35. The Court ultimately concluded:

> I think it's clear that you both have an interest in the information that's in this environment. And Deere initially paid through a prepayment for the licenses, and then XAPT at some point assumed, out of its own pocket, the payment of licenses for one set it ordinarily wouldn't have kept going but for this litigation for a certain period of time. That's a readily determinable period of time to determine what XAPT has paid after Deere's prepayment was exhausted and what that amount of money was. And so they have paid that much out of its own pocket.
> And then it makes sense, to me, for Deere to pay out of its own pocket an equivalent amount of time to extend these licenses during this litigation. And once that period has expired, that the two of you share the cost for any additional time period necessary to extend the license.

*Id*. at pg. 38.

The Court reiterated later in the hearing:

[T]he licenses should be maintained, and that for any of the licenses that Deere is not currently paying for and XAPT is for the LCS and Microsoft requirements, that XAPT would calculate what costs they

> have incurred to maintain those particular licenses solely for the purposes of preserving those environments for purposes of the litigation. And after Deere's prepayment of the licenses has expired, figure out what that amount is, and that Deere would pay an equivalent amount to maintain those licenses. And once that equivalent amount has been expended, the two parties will share whatever additional costs – again, once they each have equally spent to maintain those licenses for purposes of the litigation. Once those amount are equalized, they will share those expenses. Because of the complicated nature of the licensing and the ownership, that seems to me to be a reasonable way to deviate from what would ordinarily be the standard rule.

*Id*. at pgs. 68-69.

On February 24, 2022, the Court held a hearing on Defendant XAPT's Motion for Entry of Proposed Order (Doc. 166) governing ESI protocol. The Court said it appeared that the parties did not agree on the following facts as relevant to its previous cost-sharing oral order: how much of Deere's prepayment[2] had been applied to the Microsoft licenses; what those licenses currently cost; what XAPT had paid; and what the future costs of those licenses would be. 2/24/2022 Hearing Transcript (Doc. 204 at pg. 11). Deere was of the impression that there were still prepayment amounts available to cover its 50 percent share of the license costs, it stated XAPT had not provided it with the remaining balance figure of the prepayment, and it said XAPT would not tell Deere the basic number for the cost to cover the Microsoft licenses.

Defendant XAPT's counsel responded that as far as the term "prepayment," there was some disconnect between what XAPT believed to be a minimum commitment amount and what Deere was arguing to be a prepayment. *Id*. at pg. 12. XAPT's counsel said it explained multiple times that the MCA under the

---

[2] By "prepayment" to cover the cost of licenses, Deere was referring to the annual $500,000 MCA detailed in the XAPT SDA.

parties' contract was an annual payment that Deere made to XAPT that "was not a credit that would offset any balances that Deere may have owed to XAPT. And this . . . is in the agreements between the parties." *Id*. XAPT's counsel explained to the extent the $500,000 MCA could be applied to any license balances, XAPT did pay license costs from February 2020 through June 2020 out of the MCA that was made in June 2019. XAPT's counsel also emphasized that, as provided in documentation provided to Deere, XAPT had been paying out of pocket for Deere's Microsoft licenses from June 25, 2020 onward, and the amount for those licenses after fall 2020 remained $16,115 per month.

The Court recognized, given the parties' positions, there was a "legal question as to whether or not the $1.5 million was a prepayment." 2/24/2022 Hearing Transcript (Doc. 204 at pg. 14). Counsel for both Deere and XAPT agreed there was a "disagreement as a matter of interpretation of the contract or whatever you want to call it as to how those particular funds should be used[.]" *Id*. The Court stated that was a question it could resolve whereas:

> The other questions are readily ascertainable facts . . . bills, invoices, what's been paid, what's going to be charged? So that is not a question I need to resolve. That is just information which people ought to be able to look at and say, *This is what it costs. This is what we paid. This is what it's going to cost in the future*.
>   So . . . the simple solution to the second part of this issue is for you, XAPT, to provide documentation to the Court regarding the invoices that have been paid, what the costs were, what they were associated with, what the costs are going to be in the future. Those ought to be things that we can look at and agree what those numbers are. And there's – if you're paying bills – you're getting bills and you're paying them, and they're concrete amounts. So, that should be really straightforward to figure that out.
>   And then if the two of you want to brief me what – your separate opinions regarding how the 1.5 million should be characterized, I can decide that for you."

*Id.* at pgs. 15-16 (italics in original). The parties agreed, and the Court's Minute Entry from that day made clear XAPT was to provide documents referenced in the Court's ruling to Deere by March 10, 2022; within 14 days after receipt of those documents, the Plaintiff was to file a memorandum regarding how the documents characterize the $1.5 million as discussed; and the Defendant was given 14 days thereafter to respond.

### III

### A

Though the Court expressly gave the parties the opportunity to brief the limited issue of how to characterize the $1.5 million (payment of the MCA for three contract years) – whether it was a "prepayment" for the Microsoft licenses that was to necessarily be applied toward those licenses – nowhere in Deere's brief does it address that limited issue. As the party asserting the $1.5 million was a "prepayment" for the relevant Microsoft licenses, it was Deere's burden to establish that fact to the Court. *See, e.g.*, *Hart v. FedEx Ground Package System Inc.*, 457 F.3d 675, 679 (7th Cir. 2006) ("In general, of course, the party invoking federal jurisdiction bears the burden of demonstrating its existence"); *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 566 (7th Cir. 2018) (explaining district court correctly concluded the plaintiff, as the party seeking modification, had the burden of showing good cause to modify a protective order); *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) ("To amend a pleading after the expiration of the trial court's Scheduling Order deadline to amend pleadings, the moving party must show 'good cause'"); *and Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014) (providing that a plaintiff must establish the elements of his breach of contract claim). Here, Deere did not point to any facts in the record nor any legal authority to support its position at the February 2022 hearing regarding its $1.5 million "prepayment." It merely reiterated its position

that its prepaid licensing fees have not been exhausted, offering calculations of the remainder that should be applied toward its portion of the license costs. On the other hand, XAPT directly confronted the issue with citation to the parties' SDA, arguing that the MCA is not an offset or credit Deere may arbitrarily apply to satisfy its ESI preservation cost burden. Simply put, Deere failed to sustain its burden, and so the Court does not find that the MCA for any of the three contract years was to be used solely toward the Microsoft license fees currently at issue.

Deere identifies January 24, 2020 as the date the parties' contract terminated.[3] That termination date was, of course, the end of the parties' respective obligations to perform under the terms of their contract. The funds XAPT expended on the Microsoft licenses thereafter, to the extent done to satisfy its obligation to preserve ESI for litigation, were thus to be borne equally by the parties; the Court made very clear at the September 2, 2020 hearing that the parties would share preservation costs for the Microsoft licenses equally. *See Sonrai Systems, LLC v. Romano*, No. 16 C 3371, 2021 WL 1418405, at *10 (N.D. Ill. Jan. 20, 2021) ("It is well-settled that a duty to preserve evidence can arise before litigation actually ensues . . . ."). To the extent XAPT applied the MCA for the July 2019-June 2020 contract year to cover the license fees for February to June 2020 (the remaining four months of the contract term) was for XAPT to decide to do or not do. XAPT apparently chose to apply the MCA funds toward the license fees for February to June 2020. It explained in correspondence to Deere's counsel that it was not asking Deere to pay its share of costs for Deere's Microsoft licenses until after June 25, 2020, and XAPT now seeks payment for its Microsoft license accounts during the period of June 2020 through the present. Dft's Opp. Exh. 12 (Doc. 233-

---

[3] XAPT states that it has had no access to the project data in the LCS and Sandbox environments since Deere completely and unilaterally removed XAPT's access to those environments on January 24, 2020, at the latest. Dft's Opp. (Doc. 233 at pg. 6).

12 at pg. 2). The Court need not consider what happened to the remainder of the MCA from the first two contract years as Deere has not proven it was to be applied solely to the relevant Microsoft license fees.

**B**

XAPT's out of pocket costs to preserve the Microsoft licenses post-June 25, 2020 were incurred solely for litigation purposes such that the parties are to equally bear the costs per the Court's September 2, 2020 order. At this time, the Court should be able to determine who owes who what amount of money to effectuate its September 2020 oral ruling. But the parties insist on doing things the hard way. The Court could not have stated it more clearly at the February 2022 hearing: in order for XAPT to be reimbursed its out-of-pocket costs so that the parties equally bore the Microsoft license costs, XAPT was "to provide documentation to the Court regarding the invoices that have been paid, what the costs were, what they are associated with, what the costs are going to be in the future." 2/24/22 Hearing Transcript (Doc. 204 at pg. 15).

The Court has several times scoured the documents attached to the parties' briefs on this issue as well as the docket as a whole and nowhere do the Microsoft license invoices appear. Sure, XAPT provided emails and letters between counsel for Deere and XAPT dated before and after the February 2022 hearing which stated that Microsoft's monthly invoices were attached (and do purportedly appear, for instance, in a list of attachments to February 12 and 23 and March 2, 2021 emails) and that explained XAPT's calculations for what Deere owed it. Dft's Opp. Exh. 7 (Doc. 233-7 at pg. 2); Exh. 9 (Doc. 233-7 at pg. 2); Exh. 12 (Doc. 233-12 at pg. 2). XAPT even included the July 1, 2022 Declaration of Shauna Carney, Accountant and Regional Controller for XAPT Corporation, in which she stated among other things that she was the Custodian of Records for XAPT Corporation, the Microsoft license subscription invoices XAPT produced to Deere were part of the records of

XAPT Corporation's regularly conducted business activity, and that the records were made at or near the time the acts, events, conditions, or opinions occurred or within a reasonable time thereafter, and the method and preparation of those records is trustworthy. Dft's Opp. Exh. 14 (Doc. 233-14 at pg. 2). Deere stated in its Memorandum that remaining unanswered is the question of why XAPT "inexplicably continues to charge $95.00 per license" when the parties' SDA shows the fee for the license is $74.00 per license. XAPT did not address this in its Response.[4] Just as it was Deere's burden to show the $1.5 million was to be applied exclusively to the Microsoft licenses (as Deere requests such relief), it was XAPT's burden to show it, in fact, paid to Microsoft out of pocket $391,319.10[5] in licenses costs since June 2020 (as XAPT requests that amount of reimbursement). XAPT has not sustained its burden. In the end, without the actual invoices, the Court cannot definitely determine "*This is what it costs. This is what we paid. This is what it's going to cost in the future.*" 2/24/22 Hearing Transcript (Doc. 204 at pg. 15) (italics in original).

In case the parties have any doubt as to what the Court's foregoing findings mean, these findings mean that both parties are in the very same position they were before they presented their June 2022 (Deere) and July 2022 (XAPT) briefs regarding the costs to preserve the Microsoft licenses. It is therefore unnecessary to address Deere's additional argument that XAPT's proposed order (of June 2021)

---

[4] XAPT's counsel addressed the question once in correspondence. In a March 2021 email, XAPT's counsel stated it provided Deere with the actual invoices Microsoft charges XAPT to maintain Deere's licenses, the invoice amount is the actual charge XAPT pays to maintain Deere's licenses, and, thus, "What other documentation does Deere expect to receive in order to substantiate these costs?" Dft's Opp. Exh. 12 (Doc. 233-12 at pg. 2). XAPT has provided no further explanation or evidence in support of that amount, and again, the Court does not have the invoices to even attempt to confirm the $95 per license cost.

[5] Deere's initial payment of $52,904.10 which is currently in the Lewis Brisbois client trust account plus $338,415 XAPT says it has paid out-of-pocket from September 2020 to June 2022.

specifying allocation of costs for preservation and production of ESI impermissibly penalizes Deere and invites error.

## IV

As for the parties' remaining arguments, the Court finds no reason to deviate from the status quo at this time. Deere requests that the Court reconsider its September 2020 oral order requiring it to pay 50% of Microsoft licensing fees. It says that, "In view of the massive imbalance in the amounts for licensing paid by XAPT and Deere to date, Deere should no longer be subject to XAPT's unjustifiable and unverifiable demands or the ambiguity as to whether Deere remains in compliance with the Court's Order in view of XAPT's lack of transparency regarding actual costs and the use of Deere's prepaid funds." Plf's Memo (Doc. 218 at pg. 16). To the extent XAPT has not sufficiently verified the amounts it has allegedly paid out of pocket for the Microsoft licenses (see *supra*) such that the Court cannot and will not order reimbursement to accomplish equalization, it is only a detriment to XAPT and not to Deere at this time that the Court's cost-splitting order remains as is. Obviously, the Court is not rewarding XAPT for its lack of transparency.

Deere also argues that the Court's September 2020 order is further inequitable because it does not require all parties to share the license fee costs incurred by Deere to maintain environments that Defendants have demanded to be preserved and is based on an inaccurate premise that only XAPT Corporation incurs a license fee to preserve environments. With regard to those environments that Deere is preserving, as the Court noted at the September 2020 hearing, "the burden of preserving the information and the burden of the costs of producing the ESI is, under normal circumstances, on the person who owns the ESI. 9/2/20 Hearing Transcript (Doc. 95 at pg. 31); *see Cary v. Ne. Illinois Reg'l Commuter R.R. Corp*, No. 19 C 3014, 2021 WL 678872, at *4 (N.D. Ill. Feb. 22, 2021) ("Generally, in

federal litigation, each party bears its own cost of producing documents or ESI to the other unless there is some reason to vary from that presumption, such as when a party requests information that is inaccessible or the discovery being sought is not proportional to the needs of the case") (collecting cases).  Here, the Court deviated from the ordinary rule only insofar as the Microsoft licenses, which presented a hybrid situation, were concerned such that it was "not as simple as saying, 'You own it.  You pay to preserve it.'"  9/2/20 Hearing Transcript (Doc. 95 at pg. 38).[6]  The Court did not previously find a reason to deviate from the ordinary rule as to the preservation of other ESI in this case and does not now.  That the costs to Deere to satisfy XAPT's preservation and discovery demands is substantial is not entirely unexpected; this is a lawsuit pertaining to the development of a fully integrated *computer software system*.  To say that ESI preservation and production in such a case would compose a substantial amount of discovery costs, especially for the Plaintiff, is to state the obvious.

To the extent Deere requests reconsideration because XAPT has asserted affirmative defenses and counterclaims that impermissibly and artificially drive up the costs of preservation, Deere has gone far afield from the limited issue on which the Court allowed briefing.  Deere's argument is also premature as it is based, in part, on its position that XAPT and other Defendants are pursuing futile claims though no such finding has been formally made.  Lastly, for the same reasons (far afield, premature), the Court will not address Deere's argument that the Court should consider cost sharing 1/5 to each of the five parties now in this case.  Once again, the Court deviated from the ordinary rule in the context of one particular hybrid situation between just two parties – Deere and XAPT.

---

[6] Ample discussion was held between the Court and parties as to the details of the hybrid situation.

## V

For the reasons set forth above, Defendant XAPT Corporation's Motion for Entry of Proposed Order (Doc. 166) remains denied, and Plaintiff Deere & Company, Inc.'s requests for relief in its Updated and Supplemental Memorandum in Opposition (Doc. 218) to XAPT Corporation's Motion for Entry of Proposed Order Regarding Shifting Costs for Preservation of Certain Electronic Data are DENIED.

*It is so ordered.*

Entered on July 28, 2022.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE