UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

ROCK ISLAND DIVISION

| | |
|---|---|
| DEERE & COMPANY<br><br>    Plaintiff,<br><br>    v.<br><br>XAPT CORPORATION; XAPT SOLUTIONS PTY LTD; XAPT KFT; COSMO CONSULT BUSINESS SOLUTIONS S.R.L,<br><br>    Defendants. | Case No. 4:19-cv-04210-SLD-JEG |

**RESPONSE IN OPPOSITION TO COSMO CONSULT BUSINESS SOLUTIONS S.R.L. MOTION TO COMPEL COMPLETE ANSWERS TO INTERROGATORIES**

Deere & Company ("Deere") respectfully submits that Cosmo's Motion to Compel, Docket 236, ("the Motion") be denied for failure to meet Cosmo's initial burden under Rule 26 (See, Section II A below), for the valid objections stated in Deere's interrogatory answers (See Section II B below), and for the reasons stated and authority provided herein. Cosmo's discovery complaint is predicated on truncated quotes pulled out of context from the complete Deere interrogatory response. *See* Motion ¶6 a-x, pages 2-4. Illustrating the infirmity of Cosmo's assertions, Deere attaches as **Exhibit 1** its complete response, highlighting the language corresponding to the truncated quotes in Cosmo's Motion Para 6 a-x. In section II A below, Deere delineates how the Cosmo assertions are incorrect and that it's Motion distorts the Deere responses. Deere also outlines in section II A its compliance to date with the Cosmo's discovery requests. The propriety of Deere's written objections to the Cosmo interrogatories are addressed below in Section II B. The Court should deny the Motion and grant Deere any and all relief deemed appropriate by the Court.

I.  **Background**

   A. **Deere's Claims against Cosmo**

Among its allegations, Deere alleges that Cosmo was an unauthorized subcontractor on the Deere Project and that use of unapproved subcontractors was a material breach of the Master Services Agreement ("MSA"). *See e.g.* Amend Complaint at Dkt 60, ¶¶ 123-134. During the term of the MSA, Deere informed both Cosmo and XAPT Corporation of this material breach and demanded return of Deere's project related information. Cosmo readily admits that it received this instruction from Deere during the term of the MSA, and that it had signed agreements requiring it to comply with Deere's requests for return of information. *See* **Exhibit 2** Affidavit of Mihai Madussi ("Madussi Affidavit") Dkt 97-1, ¶¶23-26, 42 and Cosmo email chain attached hereto as **Exhibit 3,** an email withheld by Cosmo at the time of Deere's interrogatory response, and produced the day before Cosmo filed the instant Motion.

In the **Exhibit 3** email chain, on November 26, 2019 Deere states, "Please immediately remove anyone from Cosmo Consult Business Solutions SRL from working on Deere's Project" and "Additionally we require all Deere information be removed from Cosmo computers, servers and/or storage devices and destroyed or returned to Deere." In direct defiance of this clear instruction from Deere, XAPT told Cosmo          **REDACTED**

*Id*. Madussi describes these events in the Madussi Affidavit at paragraph 42. In fact, in the Madussi Affidavit, Cosmo admits that it continued to work on the Deere Project until January 28, 2020, after Deere's November 26 instruction to cease work and after Deere's January 24, 2020 termination of the MSA. *See* **Exhibit 2**, ¶ 45 ("January 28, 2020, was the last day on which anyone from Cosmo performed any work on the Deere Project.").

Pursuant to the terms of the MSA, Deere demanded the return of information owned by and/or belonging to Deere. *See* Dkt 60, ¶138, 140-141, 196-215; *see also,* MSA 12.4.1 ("Deere shall not have obligation to return any Supplier Modifications and Supplier Pre-Existing Works for which irrevocable perpetual licenses have been granted hereunder.) XAPT now disputes which party has ownership of and/or right to possess the Deliverables, and what information is included in the scope of the irrevocable, perpetual, global license referenced in MSA 6.6.4, 12.4.1 and SDA 18.1. Given this controversy, in April 2020 Deere sought declaratory relief, specific performance and injunctive relief requiring the return of this wrongfully retained information by Cosmo and the other Defendants. Dkt 60, ¶239-272. In short, for these claims against Cosmo, the identification of what project related information each of these Defendants have in their respective possession is something that is solely and uniquely in Defendants' knowledge.

### B. Cosmo Objects to and Withholds all Documents Except 127 pages

Cosmo initially ignored the discovery requests served on it, and Deere sought and obtained a Court order requiring Cosmo to respond by March 24, 2022. Dkt 202 and related text order. Before Cosmo responded to Deere's discovery requests, Cosmo served on Deere the premature contention interrogatories now at issue, knowing that Deere would not have the benefit of any Cosmo documents by the time Deere was required to respond to those interrogatories. Cosmo then made sure that Deere would not have the benefit of any meaningful Cosmo production at the time Deere was required to respond by providing written boilerplate objections to nearly every document request Deere propounded and, as its counsel eventually conceded, Cosmo never even looked for documents in response to Deere's earlier discovery requests. Further, Deere requested that Cosmo provide dates for Madussi's deposition and Cosmo ignored those requests as well. *See* Deere's Motion to Compel Cosmo, Dkt 238.

## II. Argument

When bringing a motion to compel, each party has a different burden. Deere addresses Cosmo's failure to meet its initial burden in section A below. Deere addresses how it has met its burden on its objections in section B below.

**A. Cosmo Failed to meet the Initial Burden of Persuasion.**

Cosmo, as the party seeking relief, has the burden of persuasion under FRCP Rule 26. *Mintel Int'l Group, Ltd. v. Neergheen*, 08 C 3939, 2008 WL 10718842, at *1 (N.D. Ill. Aug. 28, 2008), aff'd, 08 C 3939, 2008 WL 4148524 (N.D. Ill. Sept. 3, 2008) (As to the defendant's motion to compel, the party seeking relief has the burden of persuasion under Rule 26. *Trading Technologies Intern., Inc. v. eSpeed, Inc.,* 2005 WL 1300778, *1 (N.D.Ill. April 28, 2005).)

The only relief Cosmo requests in the Motion is for an identification of documents Deere believes supports its contentions and allegation in Interrogatories No. 3-14. Motion p. 5. The Motion however, cites truncated language pulled out of context of Deere's complete response. *See*, **Exhibit 1**, highlights. Cosmo argues in its Motion at paragraph 3 that; "The term 'identify,' when used with respect to a document (as previously defined) means to state the date, subject matter, author, recipient, and type of document (e.g., letter, memorandum, computer printout, sound reproduction, chart, etc.), the author and recipients." (*Id.* at 3.). Yet as discussed below, Cosmo received the requested identity of documents under its own definition it now (incorrectly) claims requires a Court order to receive. Cosmo has thus failed to meet its initial burden, and the Motion should be denied.

1. **Cosmo Motion paragraph 6a-j and Language appearing on Page 5-7 of Deere's Answer**

4

Cosmo is not substantially justified in bringing its Motion regarding the truncated quotes from page 5 – 7 of Deere's interrogatory answers. **Exhibit 1**. On page 4, right before the language Cosmo complains about in its Motion, Deere states:

> According to the Affidavit of Mihai Madussi ("Madussi") at paragraph 10, in May 2018 XAPT Kft transferred the entire ownership interest in XAPT Solutions SRL to XAPT Solutions KFT, and that Cosmo Consult acquired XAPT Solutions KFT in September 2019. The Madussi Affidavit at page 12 also states "On September 25, 2019, after Cosmo Consult AG acquired XAPT Solutions KFT, XAPT Solutions SRL changed its name to Cosmo Consult Business Solutions SRL."
>
> Cosmo has failed to produce documents responsive to Deere's discovery requests regarding the Madussi Affidavit, or the acquisition, and in doing so conceals the nature and type of acquisition and information that may be relevant to this interrogatory and also conceals the documents and information that would either confirm or impeach Madussi's representations in the Affidavit. The discovery failure is the subject of meet and confer discussions before motion practice is initiated to obtain the requested information.[1]
>
> Given the dates denoted in the Madussi Affidavit, XAPT Solutions SRL and XAPT Solutions Kft had certain contractual confidentiality obligations to Deere which survived the acquisition and/or which Cosmo acquired or assumed as part of the acquisition. Madussi signed such agreement himself, which he omits reference to in his Affidavit, and Madussi's signature on such confidentiality agreement was witnessed by Zoltan Schvarcz ("Schvarcz"), an individual who is a current Director of XAPT Corporation according to the Florida Secretary of State documents.

The documents referenced on page 4-6 of Deere's interrogatory answer are the Madussi Affidavit, the MSA, the July 2018 Variation Agreement, the July 2018 Subcontractor Submission, Florida Secretary of State Documents and Cosmo documents Cosmo 000069-74. Deere addresses each as follows:

- A copy of the Madussi Affidavit referenced throughout the Deere interrogatory answer by page number, paragraph number and at docket number is at Dkt 97-1 and attached hereto as **Exhibit 2**. Cosmo has not moved for further identification.

- The MSA is identified by paragraph number throughout the interrogatory answer. Cosmo has

---

[1] *See* Deere Motions to Compel Cosmo and XAPT Kft and XAPT Solutions.

- not moved for further identification.

- The agreement referenced on pages 4-6 of Deere's interrogatory answer is noted as an agreement containing a confidentiality agreement signed by Madussi but omitted from identification in the Madussi Affidavit. This Agreement is not a Deere document, but instead a "Variation Agreement" possessed by and produced by XAPT as "Confidential."[2] Deere provided a written description of this document on page 5 of its interrogatory answer which states:

  > "However, documents produced by XAPT Corporation dated in July 2018 identify Madussi as the Managing Director of XAPT Solutions Kft and XAPT Solutions SRL. Madussi was the individual who signed on behalf of XAPT Solutions KFT a Variation Agreement with XAPT Corporation related to the "provisions of services specifically for the project Thor for XAPT's Customer Deere & Company." Madussi, on behalf of XAPT Solutions Kft personally signed a confidentiality agreement (in the form of Exhibit D to the MSA) and Madussi's signature was witnessed by Schvarcz identified as "appropriate representative of XAPT."

In Deere's Interrogatory Responses at page 5, Deere provides the date (July 2018), the type (Variation Agreement produced by XAPT Corporation), and signatories to the Agreement (Madussi on behalf of XAPT Solutions and Schvarcz identified as "appropriate representative of XAPT"). Because the Variation Agreement is not a Deere document, Deere would not know who the "author" is, and beside the signatories, Deere would not know who the recipients are. That information is uniquely in the possession of XAPT and Madussi. Cosmo's lawyers represent both Madussi and XAPT Kft, in addition to Cosmo. The Motion fails to address at all how this written description of the Variation Agreement is deficient. It provides exactly what the Cosmo interrogatory asks for in the definition of "identity." *See* Motion p. 3. Cosmo's complaints that

---

[2] Cosmo's lawyers concurrently represent XAPT Kft. Schvarcz is identified as the Managing Director of XAPT Kft in the Variation Agreement. Consequently, Cosmo cannot credibly claim that it does not know of the Variation Agreement.

Deere does not repeat its identification again on page 6 is an argument without substantial justification, as that is not required by the interrogatory, nor the Rules.

- The document identifying Schvarcz as a current Director of XAPT Corporation is in the written description on page 4 as "according to the Florida Secretary of State documents." This is a public record, not a Deere document.[3] Cosmo complains that Deere's reference to the Florida Secretary of State public record is not repeated on page 6 where Deere states "Schvarcz is currently listed as a Director of XAPT Corporation." This is another argument without substantial justification as it asks for information that Deere previously provided.

- The referenced July 2018 subcontractor approval submission is also a document that XAPT possessed, created and produced and the written description in the interrogatory answer provides the date (July 2019), type (subcontractor approval), sender (presumed to be Chris Wittusen), recipient (to Deere under identified provisions of the MSA).

- The referenced confidentiality agreements on the bottom of Deere's response pages 5 and 6 are identified by date, reference to Madussi Affidavit referring to them and Cosmo production number Cosmo000069-74. This is yet another argument Cosmo makes without substantial justification.

    **2. Language appearing at Deere Answer on pages 6-10 relating to the Cosmo Acquisition.**

---

[3]https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=XAPT%20P080000793660&aggregateId=domp-p08000079366-f7112499-454e-4c77-8c62-e35d50568160&searchTerm=XAPT&listNameOrder=XAPT%20P080000793660.

Cosmo's truncated quotes from pages 6-10 of Deere's Interrogatory Response as they relate to the Cosmo acquisition are highlighted in **Exhibit 1**. Cosmo's Motion complains about a portion of the interrogatory response that constitute conclusions drawn from the already identified agreements and documents discussed above. Deere's interrogatory answer on these pages are set forth under the following headings:

- **"The Cosmo Acquisition" (Ex 1 p. 6).**

- **"Acquisition/Assumption of Ongoing Confidentiality Obligations of acquired employees and acquired General Manager" (Ex 1 p. 7).**

- **"Post-acquisition knowing wrongful receipt and retention of Deere Confidential Information through another's breach of obligations" (Ex 1 pp. 7-8)**

Page four of Deere's answer states:

> Cosmo has failed to produce documents responsive to Deere's discovery requests regarding the Madussi Affidavit, or the acquisition, and in doing so conceals the nature and type of acquisition and information that may be relevant to this interrogatory and also conceals the documents and information that would either confirm or impeach Madussi's representations in the Affidavit. The discovery failure is the subject of meet and confer discussions before motion practice is initiated to obtain the requested information. Ex 1, p. 4.

In this section, Cosmo ignores this valid objection and then current state of discovery,[4] and ignores all of the descriptions given previously in Deere's Interrogatory response about the agreements referenced on pages 7-10. Instead, Cosmo calls out language that constitute conclusions drawn from these already identified agreements and documents. The highlighted language from these pages in Exhibit 1 have nothing to do with the "Identity of Documents" discovery issue upon which Cosmo brings its Motion.

---

[4] On page 8 Deere also stated: Cosmo has objected to and failed to comply with its discovery obligations and to date has produced a token number of documents while wrongfully withholding all email and technical documents in violation of its discovery obligations.

Deere's interrogatory answer also clearly refers to documents believed to be in Cosmo and Kft's possession (not Deere's) and on page eight of the interrogatory response Deere references its discovery dispute with Cosmo where Deere attempted to get this information. That was the then current state of discovery at the time of the Deere interrogatory response. That discovery status remained unchanged until the day before Cosmo brought this Motion, when Cosmo made two productions. Less than 24 hours before Cosmo brought this Motion, Cosmo produced the previously withheld email chain referenced in the Madussi Affidavit (**Exhibit 3**). Further, less than two hours before filing the Motion, Cosmo sent an email attempting to produce another 32,855 previously withheld documents. That production was defective in several ways, and those defects were not corrected with a new production of these documents until July 29, 2022, weeks after the Cosmo Motion was filed. This is further support that Cosmo's Motion directed to highlighted language on Exhibit 1, pages 7-10 of Deere's response is without substantial justification.

   3. **Chart of individuals with knowledge and related highlighted language on Cosmo emails (Ex 1, pp. 6, 8, 9 and 11).**

The Motion, as it relates to emails of Cosmo Individuals with knowledge and related highlighted interrogatory language referencing Cosmo's emails, should be denied for several reasons, including the violation of attorney work product, discussed below in Section II B.

First, as discussed in Section II B, Cosmo's interrogatory seeks a written description of every email and the identity of all documents that *refer or relate* to those emails. Essentially Cosmo is improperly asking the Court to order that Deere provide a written list of any email or document that "refers or relates" to emails of Cosmo individuals (something only uniquely in Cosmo's possession), regardless of whether they were produced by Cosmo, XAPT, or by Deere. This cataloging is unnecessary for the needs of the case, and as demonstrated below, Cosmo already

has sufficient identification of these emails through Deere's production of the emails and associated metadata fields.

Second, Cosmo itself is a party to the emails at issue and is in possession, custody and control of all of the information it is demanding this Court order in a "written interrogatory form." Cosmo produced 32,855 of such documents approximately one hour before filing its Motion. Cosmo knows how burdensome creating a written description would be for these 32,855 documents. Cosmo failed to inform the Court of the likely volume of email its demands would affect.

Third, Fed.R.Civ.P. 34 (E) (iii) expressly provides that "(iii) A party need not produce the same electronically stored information in more than one form." With respect to Deere's production of the Cosmo emails (with associated metadata), Cosmo is effectively asking this Court to order Deere to produce the exact metadata provided with Deere's email production pursuant to the parties ESI protocol and agreed to search protocol in another second different form – *i.e.*, a written interrogatory answer. Cosmo's demand is cumulative and duplicative of information Cosmo has already received from Deere, violative of Rule 34, and burdensome and oppressive because there are hundreds if not thousands of such emails and a written listing is inappropriate and well beyond the needs of the case. Deere's email production came with metadata and in searchable form. That is sufficient "identification."

Fourth, with respect to XAPT Corporation's production of Cosmo's emails, Cosmo is further demanding that even though these are not Deere" documents, Deere be ordered to provide, in the form of an interrogatory response, the equivalent of the metadata for the email documents produced by XAPT that hit on "Cosmo" as a search term. Cosmo obtained that metadata identification of these emails directly from XAPT Corporation with XAPT's production of emails and associated metadata.

10

Thus, Cosmo's complaint that **Deere** somehow did not provide the "identification" is wrong. Cosmo already has the identification in a much more usable and efficient form. Thus, a written listing of the metadata already provided to Cosmo by XAPT Corporation is unnecessary, inappropriate and well beyond the needs of the case. *See also* Deere's Objections set forth below.

Finally, on pages 4 and 8 of Deere's response, Deere refers to the fact that Cosmo itself had objected to and refused to produce email and technical documents. Quoting from page 8:

> "Cosmo has objected to and failed to comply with its discovery obligations and to date has produced a token number of documents while wrongfully withholding all email and technical documents in violation of its discovery obligations."

Based on the above, Deere respectfully submits that Cosmo's Motion should be denied for Cosmo's failure to meet its initial burden of persuasion.

### B. Deere's Objections

Deere has provided written objections to Cosmo's contention interrogatories. Deere acknowledges that with respect to its objections, Deere holds the burden. *Whitlow v. Martin*, 259 F.R.D. 349, 354 (C.D. Ill. 2009). The burden "rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Protection District,* 235 F.R.D. 447, 449–50 (N.D.Ill.2006). The objecting party must show with specificity that the request is improper. *Graham v. Casey's General Stores,* 206 F.R.D. 251, 254 (S.D.Ind.2002). As more fully delineated below, Deere submits that it has met its burden.

### 1. Premature Contention Interrogatories

Deere objects to the contention interrogatories as being premature. Contention interrogatories, which are intended to require a party to commit to a position on *factual* specifics, should be deferred until discovery is near an end. Deere's written interrogatory responses state "contention interrogatories are often better answered after parties are near the end of discovery because they

are better able to give complete responses." *See Whitchurch v. Canton Marine Towing Co., Inc.*, 16-CV-3278, 2017 WL 1165988, at *2 (C.D. Ill. Mar. 23, 2017) (citing *Logan v. Burge*, 2010 WL 4074150, at *4 (N.D. Ill. October 12, 2010); *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. December 7, 1995). *Inojosa v. Bd. of Trustees of City Colleges of Chicago, Cmty. Coll. Dist. 508*, No. 20 C 1114, 2021 WL 4461579, at *3 (N.D. Ill. Apr. 12, 2021) (plaintiff's motion to compel denied on the basis that "[t]he general policy is to defer contention interrogatories until discovery is near an end, in order to promote efficiency and fairness," and that "plaintiff does not explain why compelling defendant to answer this interrogatory now will promote efficiency or fairness.").

Deere's objections to premature contention interrogatories is appropriate in this case because Cosmo served its contention interrogatories at a time when Cosmo had produced only 127 pages of documents, mostly comprised of Deere's Complaint, and Cosmo objected to producing anything further until just hours before filing the Motion. Asking the Court to compel a more complete identification of documents under these circumstances is improper, inherently unfair, and would not promote efficiency in discovery. Therefore, Deere's objection should be sustained.

2.  **Impermissible Invasion of Attorney Work Product**

"Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Hickman v. Taylor*, 329 U.S. 495, 516, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (Jackson, J., concurring). Codified at Rule 26(b)(3) of the Federal Rules of Civil Procedure, the work-product doctrine is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and **(2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts.** *Sandra T.E. v. S. Berwyn Sch. Dist.* 100, 600 F.3d 612, 621–22 (7th

Cir. 2010) (emphasis added).  As explained by the Seventh Circuit, the purpose of the work-product doctrine is to "establish a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary." *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir.2006).  Court's in this district regularly hold that the opponent shouldn't be allowed to take a free ride on the other party's research, or get the inside dope on that party's strategy … *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 767–68 (7th Cir. 2006).

Here Cosmo is asking to piggyback on the fact finding investigation of Deere's counsel to cull through over 700,000 pages of documents produced to date by XAPT, Deere and Cosmo and provide an unnecessary written description of those documents Deere's counsel deems legally significant to or "support" a legal contention.  This is an impermissible invasion of the attorney work product. *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Relevant Products Liab. Litig.*, 3:09-MD-02100-DRH, 2011 WL 2580764, at *1–2 (S.D. Ill. June 29, 2011) in instructive.  The *In Re Yasmin* Court states:

> All of the documents plaintiffs are seeking have already been produced by Bayer during the normal course of discovery.  Forcing Bayer to disclose the compilation would implicitly reveal the thought processes of the attorney who selected the documents and would allow plaintiffs to glean which documents, out of the millions already produced, opposing counsel believes are legally significant. This result would be contrary to the principles underlying the work-product doctrine. See e.g., Mattenson v. Baxter Healthcare Corp., 438 F.3d 763, 767–68 (7th Cir.2006) (the doctrine shields materials "on the theory that the opponent shouldn't be allowed to take a free ride on the other party's research, or get the inside dope on that party's strategy"). Accordingly, the Court finds that counsel's selection of documents in preparation for a client's deposition is shielded from discovery under the work-product doctrine.

Courts also recognize that a party may not ask for identity of people or things in a fashion that effectively infringes upon the opposing attorney's preparation of his case for trial." *Bd. of Educ. of Evanston Twp. High Sch. Dist. No. 202, Cook Cnty., Ill. v. Admiral Heating & Ventilating, Inc.*,

13

104 F.R.D. 23 (N.D. Ill. 1984).  In *Bd. of Educ. of Evanston*, plaintiff served an interrogatory asking for the identification of individuals interviewed regarding certain meetings, discussions, or communications.  The Court agreed with defendants' work product objection on the basis that while a party may inquire about the identity and location of persons having knowledge of relevant facts, it "may not do so in a fashion that effectively infringes upon the opposing attorney's preparation of his case for trial." Id. at 104 F.R.D. 23, 32 (N.D. Ill. 1984). Deere objects to Cosmo's contention interrogatories asking for a description of all documents that "support" a particular basis or calling for Deere counsel to provide its mental impressions and analysis.   This issue also illustrates why Cosmo's request for identification of documents is premature as trial exhibit lists are not due until April 16, 2024.  Dkt 220 A, Text Order Discovery Plan.

Consequentially, Deere's objection on work product grounds should be sustained.

**3.  ESI is not Required to be Provided in More than One Form**

Fed.R.Civ.P. 34(E)(iii) expressly provides that "(a) party need not produce the same electronically stored information in more than one form."  Cosmo served a request for production of documents and Deere produced documents with searchable metadata.  Doing so provided Cosmo with the equivalent of the "written description" it is complaining it has not received." *See* Motion p. 3 in comparison to the ESI metadata fields in the parties ESI protocol.

As discussed below, Cosmo has elected to serve broad, burdensome interrogatories with subparts seeking duplicative information in the form of written descriptions of documents and written descriptions of documents "referring and relating" to documents, facts and individuals.  As addressed in section II B 4-5, Cosmo's interrogatories ask for "all" facts, "all" individuals, "all" bases, "all" documents, and then all documents "referring and relating to the same" are likely

14

encompass every Deere document with metadata already provided to Cosmo in the case, the over 400,000 documents produced by XAPT Corporation and the over 32,855 documents Cosmo itself just produced.

Deere also should not have to provide back to Cosmo the ESI descriptions Cosmo provided to Deere and/or XAPT provided to Deere. Cosmo's lawyers already confirmed they have those productions and metadata. Cosmo's Motion asking for the "identity" of documents by way of written description should be denied because the information requested is duplicative of information Cosmo already has been provided. Deere objections to providing duplicate information by way of written description in response to interrogatory should be sustained.

4. **Compound and Improper use of Subparts to Exceed Limit on Number of Interrogatories.**

Cosmo cannot evade the 25 interrogatory limit through creative use of subparts. Fed.R.Civ.P. 33(a) (a) In General. (1) Number. Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, **including all discrete subparts**; Wright & Miller, Federal Practice and Procedure, § 2168.1 ("an interrogatory with subparts inquiring into discrete areas is likely to be counted as more than one for purposes of the limitation"); *Coleman v. Illinois*, No. 19 C 3789, 2021 WL 4242465, at *3 (N.D. Ill. Apr. 30, 2021) ("Plaintiff posed 25 interrogatories, so the two subparts bumped plaintiff over the limit, and defendants' objection to Interrogatory Nos. 17 and 18 is sustained."); Am. Council of Blind of Metro. Chicago v. City of Chicago, No. 19 C 6322, 2021 WL 5140475, at *2 (N.D. Ill. Nov. 4, 2021) (granting protective order under which defendant was not obligated to respond further to interrogatories where plaintiff went "well beyond" the twenty-five allotted interrogatories).

Each Cosmo contention interrogatory is impermissibly compound, with at least five subparts per interrogatory, taking Cosmo's overall number of interrogatories well beyond the 25 interrogatory limit permitted under the Rules. Each Cosmo interrogatory posits a contention and then asks the following additional interrogatories by subpart: a description of 1) "all facts," 2) "all individuals," 3) "all bases," 4) "all documents" (subparts 1-4 referred to herein as the "All Subparts"). A fifth subpart to each of the subparts requests the identification of "all documents" that **_refer or relate_**" to each of the A*ll* Subparts. To add even further burden to the fifth subpart asking for identity of documents, Cosmo argues at paragraph 3 that "[t]he term 'identify,' when used with respect to a document (as previously defined) means to state the date, subject matter, author, recipient, and type of document (*e.g.*, letter, memorandum, computer printout, sound reproduction, chart, etc.), the author and recipients." (*Id.* at 3.). Deere's Objection to responding to the Cosmo interrogatories because they exceed the 25 interrogatory limit should be sustained.

5. **Requests for Description of Documents and Descriptions that "refer and relate" to the All Subparts is Impermissibly Vague, Ambiguous and Unduly Burdensome.**

Cosmo's Interrogatory requesting the identification by written description of "all documents" that "**_refer or relate_**" to each of the All Subparts is vague and ambiguous, abusive, harassing and powerfully disproportional to the needs of the case. Requiring a written description of "all documents" that "refers or relates" to another document is incomprehensible. For example, Deere's interrogatory response references the MSA. Cosmo's interrogatory subpart asks for a written description of all documents "referring or relating" to the MSA. This subpart alone could conceivably seek a written "description" of every document produced by every party in the litigation because all documents produced thus far refer or relate to the MSA.

Requiring a written description of "all documents" that "refer or relate" to an "individual" is equally overly broad, burdensome, and irrelevant to and disproportional to the needs of the case.

16

It is tantamount to requesting a "description" of every document "referring or relating" to a person's name regardless of whether the document has any relationship at all to the issues in the interrogatory, issues relating to Cosmo, or even issues related to the case as a whole.

Further requiring a written description of all documents "referring or relating" to a "fact" or "bases" is too vague and open ended to enable a response. For example, if a fact has a date of July 2018 is the interrogatory asking for a written description of "all documents" "referring or relating" to July 2018?

Cosmo's interrogatory would also require Deere to provide a description of, for example, all documents "referring or relating to" Madussi's Affidavit because Deere referenced the Madussi Affidavit in its interrogatory response. Deere would not know of or possess this information, and Cosmo itself refused to produce such documents in response to Deere's requests for production[5]. Assuming Cosmo is ordered to produce all documents relied upon by Madussi, is Deere thereafter required to provide back to Cosmo a "written description" of what Cosmo just provided to Deere? Cosmo's counsel, who also represent XAPT Kft and XAPT Solutions, have purportedly provided documents from these entities to XAPT Corporation for production, thereby masking who is in possession of what documents. Is Cosmo's interrogatory asking Deere to provide a written description of documents for each of the Defendants as well? That demand is unduly burdensome and disproportional to the needs of the case. Requests for "descriptions" of documents via interrogatory as opposed to requesting and obtaining production of documents with the metadata is unnecessary, unduly burdensome, duplicative of what has already been provided to Cosmo and

---

[5] Cosmo sent an email *the day before filing its Motion* representing that it was finally producing documents its counsel contend are referred to in the Madussi Affidavit.

17

disproportional to the needs of the case. Consequently, Deere's objections on this issue should be sustained.

### C. Deere's Initial Interrogatory Response Provides the Identification of Documents that Cosmo Incorrectly Contends is Lacking

Cosmo's Motion should also be denied because the premise upon which it is brought - that Deere has not provided Cosmo with a sufficient written description of documents supporting its claims at this point in discovery, is plainly wrong. Deere illustrated this above in Section II A.

### 4. Conclusion

Deere requests that Cosmo's Motion to Compel be denied and that Deere be awarded any and all relief this Court deems appropriate.

Dated: August 29, 2022             Respectfully submitted,

/s/ Kara E.F. Cenar

Kara E. F. Cenar
S. Patrick McKey
GREENSFELDER, HEMKER & GALE, P.C
200 West Madison Street, Suite 3300
Chicago, Illinois 60606
(312) 419.9090 (tel)
(312) 419.1930 (fax)
kcenar@greensfelder.com
pmckey@greensfelder.com

Mary Ann L. Wymore
GREENSFELDER, HEMKER & GALE, P.C
10 S. Broadway, Suite 2000
St. Louis, Missouri 63102
(314) 241.9090 (tel)
(314) 241.8624 (fax)
mlw@greensfelder.com

Matthew Fischer
Lauren Jaffe
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900

Chicago, Illinois 60602
(312) 471-8700 (tel)
(312) 471-8701 (fax)
mfischer@rshc-law.com
ljaffe@rshc-law.com

*Attorneys for Plaintiff Deere & Company*

CERTIFICATE OF COMPLIANCE The undersigned hereby certifies, in reliance of the word and character count of Microsoft Word, that the foregoing memorandum complies with USDC/CDIL Local Rule 7.01(B)(4)(b)(1) and consists of 5,507 words and 34,821 characters with spaces.

*/s/ Kara E.F. Cenar*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 29th day of August 2022, a copy of the foregoing document was electronically served on all counsel of record via the Court's CM/ECF system.

*/s/ Kara E.F. Cenar*