UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DEERE & COMPANY,<br><br>             Plaintiff,<br><br>    v.<br><br>XAPT CORPORATION; XAPT SOLUTIONS PTY LTD; XAPT KFT; COSMO CONSULT BUSINESS SOLUTIONS S.R.L,<br><br>             Defendants. | Case No. 4:19-cv-04210-SLD-JEH |

**XAPT CORPORATION'S MOTION TO COMPEL DEERE & COMPANY TO RESPOND TO REQUEST FOR PRODUCTION**

Defendant XAPT CORPORATION moves this Court to compel Plaintiff Deere & Company to respond to XAPT's requests for production of January 3, 2023, a copy of which is attached as Exhibit A to comply with Rule 34, including Rule 34(b)(2)(E), and either (1) identify those documents and things responsive to the requests for production which Deere informed the Court on April 21, 2022 Deere had already provided to XAPT in a prior document production but which Deere refused identify as responsive to requests in XAPT's subpoena to Microsoft, and (2) produce any responsive documents and things responsive to each request for production Deere has not previously produced.

As well, and consistent with Rule 26(b)(5), and in light of the fact Deere has claimed privilege as to substantially all of the discovery requests at issue, the Court should also order Deere to provide a privilege log without further delay.

In support, XAPT would show the following:

**CERTIFICATE OF CONFERENCE**

As set forth in more detail below, the parties have repeatedly conferred concerning this motion. Although XAPT seeks identification or production of documents plainly relevant to this claims and defenses in this case – indeed documents and things Deere reported to the Court Deere has previously produced - Deere continues to refuse to either identify or other produce documents and things responsive to these requests for production.

Despite repeated requests by XAPT, Deere has also refused to provide a privilege log for documents Deere claims to be withholding that are otherwise responsive to these requests.

Because the parties are at an impasse on these issues, the Court's March 6, 2023 Minute Entry instructed XAPT to file this motion with the Court.

**INTRODUCTION**

Even though Microsoft did not move to quash XAPT's subpoena, Deere did, arguing, *inter alia,* that Deere had produced or would produce a significant portion of the documents and things XAPT sought from Microsoft. So, to identify what, if any, documents Deere has actually produced to XAPT and to obtain those Deere has or has control of, XAPT sent a simple, straightforward request to Deere to identify or produce the documents Deere *claims* it has already provided XAPT and to produce any responsive documents or things Deere has not yet produced.

Instead of replying to XAPT's January 3, 2023 request for Deere to identify documents and things responsive to XAPT's November 30, 2021 subpoena to Microsoft, which Deere previously told the Court Deere had already produced to XAPT and to produce any responsive documents or things Deere had not actually previously produced, Deere first sought a 30-day extension to respond. XAPT offered to agree to the requested extension provided only Deere confirm that Deere was not extending the response time only to serve objections and that, instead, at the end of the then 60-day response period, Deere would, consistent with Rule 34(b)(2)(E)

actually identify which documents or things Deere claims to have previously produced that are, as Deere told the Court on April 21, 2022, responsive to the Microsoft subpoena and to produce any other responsive documents or things. **Tellingly, Deere repeatedly refused to agree it would abide by this rule.** Instead, Deere just ignored the deadline imposed by Rule 34(b)(2)(A) and made no response at all by February 2, 2023.

On March 3, 2023, and only after granting itself a 30-day extension to respond, Deere sent XAPT a 46 page response – attached as Exhibit B - **wherein Deere not only failed, but refused to identify a single responsive document**, made inappropriate boilerplate objections to every request, and otherwise refused to produce any documents or communications containing any information Deere subjectively believes is confidential to any third parties (e.g., Microsoft) based upon Deere's unilateral assertion that the Court's confidentiality protective order is insufficient.[1]

However, Deere's March 3rd response did make clear, on no fewer than 77 different occasions, that Deere "will not search for or produce"[2] documents or communications responsive to XAPT's Microsoft subpoena.

Deere's March 3, 2023, response is consistent with the delay tactics Deere has employed throughout the entire discovery process in this matter, the Court should not countenance Deere's discovery abuse and should order Deere to identify or produce information responsive to XAPT's subpoena to Microsoft within 30 days.

## PROCEDURAL BACKGROUND

1.  On November 3, 2021, XAPT issued a subpoena to Microsoft Corporation. [Dkt. No. 178].

---

[1] Notably, to the extent Deere withheld production of responsive documents based upon claims of privilege, Deere was obligated to produce a privilege log. To date, Deere has not produced any such privilege log in response to XAPT's requests for production.

[2] Exhibit B, p. 7 ("Deere will not search for any such communications" or "Deere will not search for or produce documents "referring or relating" to communications based on the above objections.").

91763074.2                                    3

2. On April 21, 2022, after Deere moved to quash the Microsoft subpoena, and following extensive briefing and oral argument on the Microsoft subpoena issue by the parties, the Court found that "the Subpoena is premature at this time." April 21, 2022 Minute Entry.[3]

3. Finding that the Microsoft subpoena was premature apparently based at least in part on Deere's representation that Deere had produced to XAPT or otherwise had many of the documents and things responsive to XAPT's subpoena to Microsoft, the Court explained that, for discovery to proceed in an "efficient manner" and before Deere and XAPT may "pull[] in third parties" such as Microsoft, the "first step" the parties must take is:

> [B]oth sides learn precisely what they have and what they don't have and, and where everything is, and it is a lot easier for me to regulate the discovery among the parties than when we're pulling in third parties.

Exhibit C, Page 25, lines 12-17. The Court went on to point out its expectation that "much of this [Microsoft subpoena] information is information that's going to need to be exchanged without question, but **the bulk of it ought to be in the possession of Deere**."[4]

---

[3] The Court's Minute Entry ordered the parties to "continue to seek discovery from each other and have a meet and confer. After the exchange, if there is any specific information needed from Microsoft, the issue should be brought back before the Court." April 21, 2022 Minute Entry.

[4] Exhibit C, pp. 25:25, 26:1-3 (emphasis added). The Court also instructed the parties:

> Let's, let's get all of the information that the parties have. You get your own information and exchange it among yourselves. What you disagree about, what you have but refuse to produce, bring that to me. I'll straighten that out. And then once we have that universe of information, if there's a piece missing that no one seems to have, that only Microsoft has, that someone -- then that can be the subject of a subpoena when we get to that stage.

Exhibit C, p. 25:6-15.

4.  To be sure, Deere agreed with the Court's proposal.[5] Deere further conceded that Deere had "received discovery requests from XAPT to Deere & Company seeking the vast majority of what they're seeking from Microsoft." Exhibit C, p. 5, lines 15-17. Specifically, Deere represented to the Court that:

> To date [Deere] produced over 10,000 documents that relate to communications between Deere and Microsoft during the term of the agreement. And so that has been done. And we've -- we have produced a substantial amount of other responsive documents. You know, for example, one of the requests that they served on Microsoft was for Microsoft's evaluation of XAPT's code. I went back and asked my team, before we came here today, whether that had been produced with a Bates stamp number, and it has.

Exhibit C, p. 6, lines 7-17.

5.  To effectuate the Court's ruling directing the parties to exchange Microsoft-related documents, on January 3, 2023, XAPT sent Deere a request for production which requested Deere "please provide [XAPT] a list with identification of all documents and things Deere has provided that are responsive to each subpoena request [XAPT] sent to Microsoft."[6] Importantly, XAPT's letter did not ask Deere to re-produce any Microsoft-related documents, but rather asked Deere to identify documents and things Deere claimed it had already produced when Deere told the Court that Deere had "produced over 10,000 documents that relate to communications between Deere and Microsoft during the term of the agreement."[7] XAPT's letter also informed Deere that to avoid any confusion, Deere should treat XAPT's January 3rd request as a request for production under Fed. R. Civ. P. 34(b)(2)(e). XAPT's January 3rd letter concluded by re-stating the Court's directive

---

[5] "Your Honor, I agree with your proposal to quash the subpoena subject to their ability to reissue a narrow and focused subpoena at a later date **after the parties have exchanged discovery**." Exhibit C, pp. 26: ll. 25-27.

[6] Exhibit A.

[7] Exhibit C, p. 6:7-9.

that once Deere identified previously produced documents responsive to the Microsoft subpoena, XAPT would then "gauge whether [XAPT] need to send another, more limited subpoena to Microsoft for anything Deere may not have already actually already provided."[8]

6. On January 10, 2023, Deere answered XAPT's January 3, 2023 correspondence with a 7-page letter, whereby Deere characterized XAPT's January 3, 2023 correspondence as "unhelpful, inflammatory, and truly unnecessary."[9]

7. Deere's January 10th letter went on to postulate that, before Deere deigns to even "'consider' the restated document requests in [XAPT's January 3rd] letter as a formal discovery requests [sic]," Deere will condition its response upon XAPT agreeing to no fewer than seven (7) conditions Deere insisted XAPT must meet,[10] including, but not limited to: 1) XAPT must agree to Deere's complex multi-tier protective order (or some variation thereof); 2) XAPT change the "objectionable wording" in the Microsoft subpoena; and 3) XAPT agree to Deere's familiar, self-serving argument that Deere may condition production of communications with *any* of its software vendors/developers, including Microsoft, upon XAPT providing identification of XAPT trade secrets which only Deere deems acceptable.[11] Of course, Deere's position may appear familiar to the Court because it reflects Deere's zero-sum attitude towards discovery since the inception of this case.

---

[8] Exhibit A.

[9] Exhibit D. This type of ad *hominem* is an unfortunately frequent aspect of Deere's counsel's communications.

[10] This "bargaining" approach is also a regular feature of Deere's responses to XAPT's efforts to confer on discovery disputes. Deere has recently written about another Deere refusal to respond to a request for production and testing for a "code analysis" by asserting that Deere will not address these requests until Deere's counsel XAPT has done other things Deere's counsel demands.

[11] Courts across the country – including courts in this district that have affirmed rulings similar to that the Magistrate Judge issued in similar trade secret cases – have roundly rejected Deere's self-help approach to source code and trade secret discovery. *See* Dkt. No. 252, pp. 19-21.

8. On January 26, 2023, Deere demanded XAPT agree provide Deere "at least an additional 30 days" to respond to XAPT's January 3, 2023 requests.[12] Anticipating that Deere's past conduct was prologue here and that Deere would simply serve objections after a then-extended 60 days, XAPT agreed to Deere's request for an extension, provided only that Deere comply with the Rule:[13]

> after an additional 30 days, Deere "will identify, consistent with Rule 34(b)(2)(e), which documents are responsive to each specific request [XAPT] previously sent Microsoft *and* where the appropriate answer is "none. [XAPT] would agree to extend the time for Deere's response to a date certain. **If on the other hand,** Deere does not intend to respond to these requests or intends to object instead of providing substantive responses, Deere does not need more time."

For reasons known only to Deere at the time, Deere's counsel repeatedly refused to either provide Deere's objections by the February 2nd response deadline or to accept XAPT's 30-day extension to provide substantive responses to XAPT's January 3, 2023 requests.

9. On February 2, 2023, instead of either providing objections or substantive responses to XAPT's requests, Deere unilaterally granted itself an extension of time to respond to XAPT's January 3rd requests.[14] Notably, XAPT's counsel did not agree to Deere's unilateral extension and made clear that Deere's "responses were due today. [Deere] should submit complete, compliant responses by the close of business tomorrow (2/03)."[15]

10. On February 3, 2023, already past the due-date and in contravention of both Judge Hawley's Standing Order and Judge Hawley's instructions to the parties during the February 24, 2022, hearing, and without a phone conference with XAPT's counsel, Deere filed a substantive motion to extend time to these requests for production.[16]

---

[12] Exhibit E.
[13] Exhibit F.
[14] Exhibit G. pp. 2-3.
[15] Exhibit G, p. 1.
[16] [Dkt. No. 265].

11.     On February 6, 2023, in accordance with the Court's Standing Order and instructions to the parties, after a telephone conference with Deere's counsel to confirm the need, XAPT moved the Court for a telephonic hearing regarding the Microsoft discovery dispute.[17]

12.     On March 3, 2023 and after the Court had set a conference, Deere sent its responses – actually nothing but boilerplate objections in a 46-page letter (77-pages with exhibits)[18] - to XAPT's 29 requests for production related to the identification of Microsoft documents Deere had allegedly already produced to XAPT. Other than to explain Deere's unwillingness to agree to XAPT's offer of an extension to provide substantive responses, Deere's March 3rd letter provided XAPT no new information, **failed to identify a single responsive document**, made inappropriate boilerplate objections to all 29 requests, failed to produce any privilege log, and otherwise made clear **Deere's refused to even look** to identify or produce any documents things to which Deere was referring when Deere encouraged the Court to quash XAPT's subpoena to Deere. Deere's March 3rd letter did make clear, on no fewer than 77 different occasions, that **Deere "will not search**[19] **for or produce"**[20] **documents or communications** responsive to XAPT's requests related to the Microsoft subpoena.

13.     On March 6, 2023, the parties appeared before the Court to address the Microsoft subpoena discovery dispute. When the Court pressed Deere for an answer regarding whether Deere produced anything other than objections in response to XAPT's requests at issue here, Deere told the Court and XAPT Deere made a "rolling production" on February 17, 2023. To be sure, prior to the March 6, 2023 hearing, Deere had never drawn any connection between its February 17, 2023, limited

---

[17] [Dkt. No. 267].
[18] Exhibit B.
[19] Since Deere has refused to search as late as earlier this month, it is hard to imagine how counsel could have honestly represented to the Court almost a year ago that Deere had already produced to XAPT thousands of documents responsive to XAPT's subpoena to Microsoft.
[20] Exhibit B, p. 7 ("Deere will not search for any such communications" or "Deere will not search for or produce documents "referring or relating" to communications based on the above objections.").

production and the Microsoft subpoena. Regardless, in connection with Deere's counsel repeated references to various productions of thousands or even tens of thousands of documents, Deere's counsel is referring to Deere's impermissible "document dumps" with no identification of what, *if any,* documents are responsive to any request. Despite the Court's clear instruction in April of 2022, and as Deere's own March 3rd letter makes clear, Deere has not looked, let alone identified even one document – whether previously produced or not – as required by Rule 34(b)(2)(E) that is responsive to XAPT's requests for production that are the subject of this motion.

14. Considering the undisputed and indisputable facts, the Court should find Deere has waived any objection and compel Deere to identify or otherwise produce documents and things responsive to XAPT's requests for production related to the Microsoft subpoena without further delay, to provide a privilege log as to any document or thing Deere has not produced based on a claim of privilege, and award XAPT its costs related to obtaining Deere's compliance.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b)(1) provides that a party may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1).  A motion to compel discovery is appropriate where another party fails to respond to a discovery request or where a discovery response is evasive or incomplete.  Fed. R. Civ. P. 37. Under Federal Rule of Civil Procedure 37(a)(3)(iii) and (iv), a party seeking discovery may move for an order compelling discovery when "(iii) a party fails to answer an interrogatory submitted under Rule 33;" and "(iv) a party fails to produce documents or fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(iii) and (iv).

The federal discovery rules are to be construed broadly and liberally. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). "Parties are generally allowed to obtain discovery regarding any nonprivileged matter relevant to the claim or defense of any party, subject to factors set forth in FRCP 26(b)(1). *Bd. of Trs. of the Univ. of Ill. v. Micron Tech., Inc.*, No. 2:11-cv-02288-SLD-JEH, 2016 U.S. Dist. LEXIS 102013, at *6 (C.D. Ill. Aug. 3, 2016) (Magistrate Judge Hawley presiding). For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. Daimler Chrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002), quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

"The party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Micron Tech.*, Inc, 2016 U.S. Dist. LEXIS 102013 at *7. Here, since Deere failed to respond to XAPT's January 3, 2023 requests on or before the February 2, 2023 deadline, Deere waived its objections to XAPT's requests under Rule 34.[21] *See Autotech Techs., Ltd. P'ship v. AutomationDirect.Com, Inc.*, 236 F.R.D. 396, 398-399 (N.D. Ill. 2006). However, even if the Court finds Deere has not waived objections, the Court should not countenance, let alone sustain, Deere's boilerplate, obviously block-and-copied objections. Rather, like most, this Court rejects

---

[21] To the extent Deere relies upon its boilerplate objections to XAPT's Microsoft requests for production, this Court and others have found such boilerplate objections to be insufficient and summarily deemed them waived. *See, e.g., See Micron Tech.*, 2016 U.S. Dist. LEXIS 102013 at *7 (Judge Hawley presiding). An objection to discovery is not satisfied by the invocation of routinized boilerplate objections. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). To be sure, courts within the Seventh Circuit have routinely held that boilerplate objections, like those advanced here, "are no better than not filing objections at all." *Bankdirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2017 U.S. Dist. LEXIS 146907, at *4 (N.D. Ill. Sep. 12, 2017) (citing *RealPage, Inc. v. Enter. Risk Control, LLC*, 2017 U.S. Dist. LEXIS 46270, 2017 WL 1165688, at *3 (E.D. Tex. 2017). As a result, Deere must identify or produce in response to all of XAPT's requests for production the non-privileged, responsive documents that it can locate from a reasonable search of locations where documents are expected to be found without generally holding back responsive documents or categories of documents because of Deere's failure to specifically object.

boilerplate objections. Rather, an objecting party must do more than simply recite boilerplate objections such as overbroad, burdensome, oppressive or irrelevant. *Id*. If the basis for an objection is lack of relevance, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Chavez*, 206 F.R.D. at 619.

<u>**ARGUMENTS AND AUTHORITIES**</u>

A.    **The Court should compel Deere to identify or produce the documents Deere repeatedly told the Court Deere had already produced to XAPT.**

In the pre-motion conference, Deere refused to acknowledge Deere's responses to XAPT's requests in which Deere not only failed to identify any documents and, rather, made clear (77 times) that Deere would not even search for, let alone identify or produce, responsive documents and things. Rather, Deere repeatedly referred to document dumps of thousands of pages. Yet, to be clear, Deere stood by its word – stated 77 times – that Deere would not search for, let alone identify or produce any document or thing in response to XAPT's requests for production.

Thus, the Court should ignore, as failing to comply with Fed. R. Civ. P. 34(b)(2)(E)(i) Deere's repeated vague references to various document dumps of thousands and thousands of pages, none of which are identified as being responsive to any request:

> Essentially, the Federal Rules of Civil Procedure require that the producing party give some structure to its production: **a party may not dump voluminous, poorly organized documents on its adversary and force him or her to rummage through piles of paper in search of what is relevant**. To comply with the rule, a party must rationally organize its productions, so that the requesting party may readily identify documents, including ESI, that are responsive to the production requests.

*E-Z Dock, Inc. v. Snap Dock*, LLC, No. 1:21-cv-02761-TWP-KMB, 2023 U.S. Dist. LEXIS 15809, at *34 (S.D. Ind. Jan. 31, 2023) (internal citations omitted) (emphasis added). Accordingly, this

Court, Chief Judge Darrow presiding, has explained, that specific identification of documents responsive to each category of documents requested "must be specific enough that [opposing] counsel can comprehend which documents are pertinent to each response." *H.C. Duke & Son v. Prism Mktg. Corp.*, No. 4:11-cv-04006-SLD-JAG, 2013 U.S. Dist. LEXIS 204905, at *6 (C.D. Ill. Nov. 7, 2013) (Judge Darrow presiding). *See also*, *United States ex rel. Schutte v. Supervalu, Inc.*, No. 11-cv-3290, 2018 U.S. Dist. LEXIS 67662, at *10 (C.D. Ill. 2018) (Schanzle-Haskins, M.J.); *Glover v. Bd. of Educ.*, No. 02 C 50143, 2004 U.S. Dist. LEXIS 6358, at *6 (N.D. Ill. Apr. 9, 2004) (holding a litigant may "not haphazardly produce documents without reference to which request the documents are produced"). Judge Darrow's reasoning in *H.C. Duke & Son* is especially appropriate when, as in the instant matter, Deere stated to the Court that Deere had already produced "10,000 documents" responsive to XAPT's Microsoft subpoena, thus precluding the need for XAPT to request the same documents from Microsoft. In order to address the Magistrate Judge's April, 2022 instruction to first see what Deere has that is responsive, and to confirm the accuracy of Deere's counsel's representation that what Deere may have tendered in actually responsive to the Microsoft subpoena "[Deere should] redo their written responses to [XAPT's] requests to specifically identify which documents respond to which requests. At the least, each response should identify by control-stamp number the responsive documents [previously] produced." *H.C. Duke & Son,* 2013 U.S. Dist. LEXIS 204905 at *10-11 (Judge Darrow Presiding).

B.     **Deere should pay sanctions for its abuse of the discovery process.**

A court may impose sanctions on a party who fails to obey an order to provide or permit discovery. *H.C. Duke & Son*, 2013 U.S. Dist. LEXIS 204905 at *7 (citing Fed. R. Civ. P. 37(b)(2)(A)) (Judge Darrow presiding). Further, district courts have broad discretion in supervising discovery, including whether and how to sanction discovery misconduct, due to their

proximity to the management of the case and the many intangible and equitable factors that may be relevant in exercising such discretion. *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012) (citations omitted). Sanctions should be "proportionate to the circumstances" of a party's discovery violation. *Collins v. Illinois*, 554 F.3d 694, 696 (7th Cir. 2008). Courts consider: "(1) the frequency and magnitude of the [party's] failure to comply with court deadlines, (2) the effect of these failures on the court's time and schedules, (3) the prejudice to other litigants, and (4) the possible merits of the plaintiff's suit." *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2002) (citation omitted).

Quite relevant to the issues presented here, where "the actual production of [] documents [] constituted a classic document dump that provided no workable or navigable way to search the documents to determine their relevancy and help Defendant prepare its case[,]" this Court imposed sanctions. *Strategic Capital Bancorp, Inc. v. St. Paul Mercury Ins. Co.*, No. 10-CV-2062, 2015 U.S. Dist. LEXIS 128063, at *4-5 (C.D. Ill. 2015) (Bruce, J.). *See also, Stiller v. Arnold*, 167 F.R.D. 68, 71 (N.D. Ind. 1996) (finding sanctions warranted when party failed to organize and label documents in accordance with Rule 34).

Rule 37 presumptively requires the loser "to make good the victor's costs." *Rackemann v. LISNR, Inc.*, No. 117CV00624MJDTWP, 2018 U.S. Dist. LEXIS 112467, at *2 (S.D. Ind. July 6, 2018) (citation and internal quotation marks omitted); *see Rickels v. City of S. Bend, Ind.*, 33 F.3d 785, 786 (7th Cir. 1994). "[A] court must . . . require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

Here, XAPT did exactly what the Court directed in April of 2022: XAPT asked to identify or otherwise produce documents Deere reported to the Magistrate Judge Deere had produced in

one or more document dumps. Instead of showing XAPT and the Court whatever Deere's counsel was referring to only in vaguest terms, Deere sought to delay its response, then did so unilaterally, and then only responded in any manner after the Court set a pre-motion conference. Even then, Deere not only refused to identify or produce documents, but Deere also repeatedly made clear Deere would not even search to determine which, *if any*, of the "thousands of documents" to which Deere's counsel referred in arguing to quash the XAPT subpoena are actually responsive to the subpoena at all.

## CONCLUSION

Deere's ongoing efforts to forestall discovery, drive-up litigation costs, and tax the Court's and Defendants' time and resources are not only impermissible, but they are also deserving of sanctions. The Court should compel Deere to (1) identify or produce any previously untendered documents and responsive request for production related to the subpoena requests XAPT sent to Microsoft Corporation; (2) compel Deere to provide a log of any otherwise responsive documents withheld based upon a claim of privilege; and (3) order Deere to pay XAPT's attorney fees and costs incurred in obtaining Deere's compliance with this request for production.

March 14, 2023                                          Respectfully submitted,

                                                     **LEWIS BRISBOIS BISGAARD & SMITH**

                                                     By:   */s/ William S. Helfand*
                                                            One of the XAPT Corporation's Attorneys

William S. Helfand
Lewis Brisbois Bisgaard & Smith
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
P: 832.460.4614
F: 713.759.6830
William.Helfand@lewisbrisbois.com

Felix Digilov, Esquire
Lewis Brisbois Bisgaard & Smith
24 Greenway Plaza, Suite 1400
Houston, TX  77046
P: 713.659.6767
F: 713.759.6830
Felix.Digilov@lewisbrisbois.com

Josh M. Kantrow
Lewis Brisbois Bisgaard & Smith
550 West Adams Street, Suite 300
Chicago, Illinois 60661
P: 312.345.1718
F: 312.345.1778
Josh.Kantrow@lewisbrisbois.com

*Attorneys for XAPT Corporation*

## CERTIFICATE OF COMPLIANCE

In compliance with Local Rule 7.1 (B)(4)(c) and 7.1 (B)(4)(b)(1), XAPT counsel certifies this memorandum complies with the type volume limitation as this response contains 4,604 words.

/s/ *Felix M. Digilov*

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2023, I electronically filed the within document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record in this matter.

/s/ *Felix M. Digilov*
One of the XAPT Corporation's attorneys

91763074.2

15