UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DEERE & COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:19-cv-04210-SLD-JEH |
| XAPT CORPORATION, XAPT SOLUTIONS PTY LTD, XAPT KFT, and COSMO CONSULT BUSINESS SOLUTIONS S.R.L., | ) |
| Defendants. | ) |
| | |
| XAPT KFT, | ) |
| Counter-Plaintiff, | ) |
| v. | ) |
| DEERE & COMPANY, | ) |
| Counter-Defendant. | ) |

ORDER

Plaintiff Deere & Company ("Deere") filed suit against Defendants asserting breach of contract, fraudulent inducement, reformation, conversion, and replevin claims. *See generally* Second Am. Compl., ECF No. 60. Defendant XAPT KFT ("KFT") asserts copyright and unjust enrichment counterclaims against Deere. *See generally* KFT's Countercls., ECF No. 231. Before the Court is Deere's motion to dismiss KFT's counterclaims. Mot. Dismiss, ECF No. 259. For the reasons that follow, the motion is DENIED.

1

# BACKGROUND[1]

KFT developed a software called NAXT 365 ("NAXT"), which is "an enterprise business management software for heavy equipment dealers." KFT's Countercls. ¶ 6. It "builds upon Microsoft Dynamics 365 by extending and enhancing its functionality and features." *Id.* ¶ 7. In other words, it is an add-on software to Microsoft Dynamics 365. KFT develops industry-specific functions and features to add onto Microsoft Dynamics 365 to meet heavy equipment dealers' demands. KFT "writes and prepares, directly or indirectly, the original software, code, and related works that comprise NAXT." *Id.* ¶ 9. When the Court refers to NAXT, it is referring to the software, code, and related works together.[2] KFT has "spent years, millions of dollars, and countless manhours developing and customizing NAXT." *Id.* ¶ 6. It has three copyright registrations for NAXT: TX 9-118-744, TX 9-118-740, and TX 9-118-733.

Deere manufactures heavy equipment that it distributes "via a global group of independent" dealers. *Id.* ¶ 14. Deere hired KFT in 2017 to "deliver a fully integrated computer software system that would bring together the many facets of Deere's dealer businesses into one 'Dealer Business System' ('DBS') based on NAXT for use by Deere and its [d]ealers." *Id.* ¶ 15 (emphasis omitted). KFT worked on this from 2017 to early 2020. During this time, Deere had access to NAXT and "gained an intimate understanding of how" it was coded. *Id.* ¶ 17.

"[P]roblems and difficulties" surfaced during Deere and KFT's relationship. *Id.* ¶ 18. For example, Deere "requested more and more customizations and modifications to NAXT outside of the scope of the project." *Id.* It also "refused to comply" with the parties' agreements

---

[1] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the nonmovant's] favor." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). Unless otherwise noted, the factual background is drawn from KFT's counterclaims.

[2] Deere argues that KFT "pleads undefined unregistered related works that, as a matter of law, are not actionable" under the Copyright Act. Mot. Dismiss 1–2 (quotation marks omitted). KFT clarifies that "'related works' does not refer to any unregistered material" but instead merely refers to "non-code works such [as] nonexecuting comments covered by KFT's copyright registrations." Resp. 5 n.2, ECF No. 264.

about Deere's use of, subscription to, and licensing of NAXT. *Id.* The parties' relationship had completely broken down by January 2020. At that point, Deere "purported to terminate" the parties' agreements. *Id.* ¶ 19.

Termination of those agreements also terminated Deere's subscription and license to use NAXT. But Deere failed to remove NAXT and other KFT work from its DBS after termination. Instead, it has continued "reproduc[ing], creat[ing] derivatives of, distribut[ing], us[ing], and publicly display[ing] a software system or service that is substantially similar to" NAXT. *Id.* ¶ 20. The infringing software, which KFT refers to as the Deere Accused System, "includes Deere's DBS but also may" include upgrades to prior systems or a new system. *Id.* Deere's DBS "is based upon, incorporates, copies, uses, leverages, builds upon, relies upon, or otherwise takes advantage of NAXT or [KFT]'s work." *Id.* For example, Deere "added features, functions, and capabilities to" its DBS "copied from, based upon, or derived from NAXT or [KFT's] work"; continued to use NAXT; and provided NAXT to third parties like Deere's technology vendors, including Hitachi. *Id.* Deere has also allowed third parties like Hitachi and Deere's dealers to, without authorization, reproduce, create derivatives from, distribute, use, and display NAXT as part of creating or using Deere's DBS. Because it continues to use NAXT, "Deere has retained and continues to retain the benefits of [KFT's] services, products, work[, and] NAXT" without compensating KFT. *Id.* ¶ 23.

Deere filed suit against KFT and related entities arising out their relationship. *See generally* Second Am. Compl. KFT asserts three counterclaims against Deere: direct copyright infringement, KFT's Countercls. ¶¶ 26–33; indirect copyright infringement, *id.* ¶¶ 34–41; and unjust enrichment, *id.* ¶¶ 42–46. Deere moves to dismiss all three claims under Federal Rule of

3

Civil Procedure 12(b)(6),[3] arguing that KFT "fail[s] to provide adequate notice of a claim under which [it] is entitled to relief." Mot. Dismiss 1. It also argues that the parties' agreements establish that Deere was assigned all intellectual property rights to work product created under the agreements. *Id.* at 3.

## DISCUSSION

### I.     Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding on a motion to dismiss, the court must take "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, . . . [as] true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

---

[3] Deere also moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Mot. Dismiss 1. Motions under Rule 12(c) are governed by the same standards as motions under Rule 12(b)(6), *see St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016), so the Court need not consider this argument separately.

4

II.   Analysis

    a. Agreements

Deere argues that the parties' agreements "are clear[ and] unequivocal" and that they create for Deere "an irrevocable, perpetual assignment in any code at issue." Mot. Dismiss 18. Citing to caselaw for the proposition that a plaintiff fails to state a claim where a document that forms the basis of the complaint contradicts his claim, Deere argues that provisions of the parties' agreements are "fatal" to KFT's claims. *Id.* (citing, for example, *Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017)). KFT "disputes Deere's interpretation of the parties' agreement" and argues that the Court should not address this issue on a motion to dismiss. Resp. 7–9, 20–22, ECF No. 264.

For two reasons, the Court declines to consider the parties' agreements at this stage. First, while Deere is relying on the principle that "[a] document acknowledged as authentic, referred to in a complaint and central to the plaintiff's claim may be considered on a Rule 12(b)(6) . . . motion," Mot. Dismiss 3 n.10, it failed to provide the agreements for the Court to consider in conjunction with its motion.[4] Instead, it appears to be relying on KFT's answer to its Second Amended Complaint in which KFT admitted that certain quotes from the agreements were accurate. *See id.* at 3 (citing KFT's Answer ¶¶ 49–53, 55–56, 149, 155, 159–69, ECF No. 189). Without the entire set of agreements to consider, however, the Court fails to see how it can interpret the contractual obligations of the parties.

---

[4] Deere and Defendant XAPT Corporation have both previously sought leave to file copies of the relevant agreements under seal. *See* XAPT Corp.'s Mot. Seal, ECF No. 26; XAPT Corp.'s Second Mot. Seal, ECF No. 116; Deere's Mot. Seal, ECF No. 132. But these motions have been mooted or denied. *See* May 6, 2020 Order 16, ECF No. 59 (mooting XAPT Corporation's first motion to seal); Dec. 10, 2021 Order 43–44, ECF No. 183 (denying XAPT Corporation's second motion and Deere's motion because the Court did not rely on the documents the parties sought to file under seal). No party has received permission to file these documents under seal in support of a pleading or a motion to dismiss a pleading, so the Court will not consider them. *See* Civil LR 5.10(A)(4).

Second, along the same lines, the Court does not have sufficient information or argument to rule on the meaning of the agreements.  The contractual relationship between the parties appears complicated.  Four contracts govern the parties' relationship: the Master Services Agreement ("MSA"), a global statement of work, a governance statement of work, and the Subscription Delivery Agreement ("SDA").  Second Am. Compl. ¶ 47; KFT's Countercls. ¶ 15.  Throughout its motion to dismiss, Deere cites more than ten provisions of the MSA and SDA it claims mean it owns any intellectual property arising out the relationship.  *See, e.g.*, Mot. Dismiss 3.  Yet the extent of its briefing on these points is quite repetitive and comprises only four footnotes, *id.* at 1 n.1, 10 nn.16–18, and approximately two pages of argument, *id.* at 3, 9–10, 18.  The little argumentation Deere includes is conclusory and undeveloped.  For example, it simply points to Section 6.5.1 of the MSA for support that it has "an irrevocable, perpetual assignment in any code at issue."  *Id.* at 18.  According to the Second Amended Complaint, Section 6.5.1 provides that "Deere shall own all right, title and interest, including all Intellectual Property Rights in and to all Deere Pre-Existing IP, Deliverables (other than Supplier Modifications) and Deere Modifications" and that "Supplier . . . will require its Representatives to assign to Deere, all worldwide right, title and interest in all IPR in the Deliverables (other than Supplier Modifications) and Deere Modifications."  Second Am. Compl. ¶ 50 (quoting MSA § 6.5.1).  In turn, Deliverables is defined by the MSA and includes deliverables "defined in a SOW," but excludes "the Combined Solution."  *Id.* ¶ 51 (quoting MSA § 1.12).  Deere does little to explain what these terms mean or how they apply to the allegations of the counterclaims.  Absent further explanation and argument, the Court cannot say that the agreements so clearly provide that Deere owns the allegedly copyrighted material such that KFT cannot state a claim to relief.  *Cf. Energy Intel. Grp., Inc. v. Exelon Generation Co.*, No. 20-cv-3983, 2021 WL

1561711, at *6 (N.D. Ill. Apr. 21, 2021) ("Neither side undertakes a meaningful contract interpretation analysis, and it is not the court's role to analyze complex contractual, or any other, questions without the benefit of adequately developed briefing.").

### b. Direct Infringement

In support of its contention that KFT fails to state a copyright infringement claim, Deere argues that KFT fails to "identify what Deere work infringed which of [its] copyrights," fails "to identify which of its works was infringed," and fails to "allege the protectable portions of code covered by" the copyright registrations identified in the counterclaims. Mot. Dismiss 9–16. The elements of a copyright infringement claim are "ownership of a valid copyright" and "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S 340, 361 (1991).

#### i. Ownership

A certificate of a copyright registration made before or within five years of first publication of a work "shall constitute prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c). Here, KFT provides three copyright registration certificates. *See* Certificates of Registration, KFT's Countercls. Ex. A, ECF No. 231-1. The Court has already rejected Deere's arguments that the parties' agreements rebut the presumption of ownership. Accordingly, KFT has sufficiently pleaded ownership of valid copyrights.

#### ii. Copying

Deere makes a few arguments related to the copying element. *See* Mot. Dismiss 10–16 (including these arguments under the subheading of the copying element). First, it argues that "[t]o determine whether the plaintiff has alleged copying of elements of the work that are original, a court first must know what works are at issue," and that KFT fails to "identify which

of its works was infringed." *Id.* at 10–11 (quotation marks omitted); *see Energy Intel. Grp.*, 2021 WL 1561711, at *3 ("[From the elements of copyright infringement,] [c]ourts have implied a requirement that the complaint identify the allegedly infringed work . . . ."). Deere argues that merely providing a list of copyrighted works is insufficient because it invites speculation about which works, if any, were infringed. *See* Mot. Dismiss 11.[5] But the cases Deere relies on are distinguishable. For example, in *Flava Works, Inc. v. Clavio*, No. 11 C 05100, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012), the plaintiff alleged that the defendant downloaded its videos and reposted them on other websites. But the plaintiff had many videos on its websites, and it never identified which of those videos the defendant allegedly improperly shared. *Id.* at *1–2. By contrast, KFT does identify which of its works was infringed—NAXT. *See, e.g.*, KFT's Countercls. ¶ 10.

A related, but more specific, argument Deere makes is that KFT fails to identify the protectable elements of its work. Mot. Dismiss 11–13. Essentially, Deere is arguing that NAXT comprises "millions of lines of code" and KFT has to identify which lines of that code are protectable that Deere has allegedly infringed. *See id.* at 12. This asks too much of KFT at the motion to dismiss stage. *See Arkeyo, LLC v. Saggezza, Inc.*, No. 19-cv-08112, 2021 WL 2254959, at *8 (N.D. Ill. June 3, 2021) (disagreeing with the defendant's argument that the plaintiff "should have to plead, with specificity, the specific code it claims was copied"); *cf. Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *5 (N.D. Cal. Mar. 23, 2018) ("Price f(x)'s challenge to the pleading attempts to undermine the plausibility of the infringement claim by raising questions as to exactly what source code has been registered as

---

[5] In support of this proposition, Deere includes a quote it erroneously attributes to *Flava Works, Inc. v. Clavio*, No. 11 C 05100, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012). *See* Mot. Dismiss 11. The quote—"[A] list of copyrighted works by itself leaves to speculation which, if any, works the defendant allegedly copied."—comes from *Energy Intelligence Group*, 2021 WL 1561711, at *3.

copyrighted . . . . Th[is] argument[] go[es] beyond the pleadings . . . ."). Deere cites no cases decided at the motion to dismiss stage that require what it is asking the Court to require of KFT.[6]

Next, Deere argues that KFT alleges copying in too conclusory a manner. *See* Mot. Dismiss 15. A court can "infer copying from allegations that the . . . [d]efendants had an opportunity to copy the original, referred to as 'access,' and that the works in question are 'substantially similar' to each other." *Antsy Labs, LLC v. Individuals, Corps., LLCs, P'ships, and Uninc. Ass'ns Identified on Schedule A Thereto*, No. 22 C 1801, 2022 WL 17451607, at *3 (N.D. Ill. Dec. 5, 2022) (quoting *Peters v. West*, 692 F.3d 629, 633–34 (7th Cir. 2012)). KFT unquestionably alleges that Deere had access to NAXT. *See, e.g.*, KFT's Countercls. ¶ 17 ("For more than two years, Deere had access to the NAXT software, source code, and related work."). Deere argues that KFT's allegation that the DBS is substantially similar to NAXT is conclusory and without factual support. *See* Mot. Dismiss 14. But KFT alleges that Deere continued to use NAXT after their relationship ended, without permission, and "added features, functions, and

---

[6] The only two cases Deere cites that touch on this issue are distinguishable and do not persuade the Court that anything more is required. *See, e.g.*, Mot. Dismiss 11 (citing *Norman v. B.E.T. Television*, No. 2:16-CV-113 RLM-PRC, 2016 WL 7048894, at *2 (N.D. Ind. Dec. 5, 2016) and *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-cv-02965 SC, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013)). For example, while the court in *Norman* found the plaintiff's infringement claim insufficient on a motion to dismiss because she did not "identify the elements of the copyrighted work she claims B.E.T. copied, such as the specific music and lyrics, or offer any facts suggesting how B.E.T. allegedly infringed on her copyrighted work," this was in the context of a vague claim that B.E.T. played material containing lyrics copyrighted by the plaintiff. *Norman*, 2016 WL 7048894, at *2. She included a certificate of registration for a copyright but did not further identify her work in a way that would allow B.E.T. to appreciate how it infringed on the plaintiff's allegedly copyrighted work. *See id.* at *1–2. Here, by contrast, KFT has alleged that the DBS infringes on NAXT because NAXT was used as a basis for developing the DBS. The Court does not read the reference to identifying the lyrics and music in *Norman* as requiring anything more specific than adequately alleging the infringed work and the infringing work in a way that gives the defendant notice of how it allegedly infringed on a copyrighted work. In *Synopsys*, the plaintiff claimed the defendant infringed its copyrighted software, which included the software for two different tools and may have included another piece of software. *Synopsys*, 2013 WL 5770542, at *1. The court held that, apart from one set of formats the plaintiff specifically identified, the plaintiff "never ma[de] clear what [the d]efendant copied, which ma[de] it impossible for the [c]ourt to find" its claim plausible. *Id.* at *4. The court noted that the claim was "muddle[d]" because the plaintiff asserted that parts of its software were open-source and the plaintiff speculated "on how widespread the copying may be, without describing any acts or works that infringe[d]" its software. *Id.* There were a number of issues with the plaintiff's claim in *Synopsys* such that the Court does not find the case helpful to resolving the motion before it.

capabilities to [the] DBS copied from, based upon, or derived from NAXT." KFT's Countercls. ¶ 20. In the context of the relationship between the parties, KFT's allegations are sufficient for the Court to infer that Deere used, copied, distributed, built upon, or displayed a software—the DBS—that was substantially similar to NAXT. *See Uniface B.V. v. Sysmex Am., Inc.*, 20 C 6478, 2021 WL 2291075, at *10 (N.D. Ill. June 4, 2021) (denying a motion to dismiss where the plaintiff pleaded that the defendant "continued to use" and distribute allegedly copyrighted software following termination of the parties' agreement in part "[b]ecause of the nearly two decades long contractual relationship between the parties described in the [c]omplaint").

In sum, KFT has identified three copyright registrations for NAXT, alleged that Deere had access to NAXT for more than two years and gained a deep understanding of how NAXT was coded, and alleged that Deere lost the right to use NAXT when the parties' agreement terminated but continued to use it and build upon it in creating and using its DBS. This is sufficient to state a direct copyright infringement claim. *See Arkeyo*, 2021 WL 2254959, at *8 (concluding the plaintiff's allegations were sufficient to state a valid copyright infringement claim where the plaintiff alleged that the defendant engaged in unauthorized copying, distribution, and display of the plaintiff's software and created derivative works from the software).

    c. **Indirect Infringement**

There are two theories for holding a party accountable for the infringing acts of a third party: contributory infringement and vicarious infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). "One infringes contributorily by intentionally inducing or encouraging direct infringement and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Id.* (citations omitted). KFT

alleges that Deere has indirectly infringed on its copyrights under both theories. KFT's Countercls. ¶ 36. Deere argues that KFT "has not alleged a single act of indirect infringement by any other party," so its indirect infringement claim "fails on its face." Mot. Dismiss 8. Deere also argues that KFT fails to allege the required elements for a vicarious infringement claim. *Id.* at 8, 16.

KFT responds that it is "simply . . . not true" that it has not identified an act of third-party infringement. Resp. 14. The Court agrees. KFT alleges that "Deere . . . has caused third parties (e.g., technology vendors, [d]ealers) to infringe" KFT's copyrights by reproducing and creating derivatives from NAXT as part of creating, maintaining, or using the DBS. KFT's Countercls. ¶ 21. It specifically names Hitachi as a third party that it alleges Deere provided NAXT to and that it alleges used "features, functions, and capabilities from NAXT" in developing and enhancing the DBS. *Id.* Although KFT alleges that it "is not currently aware of the identity of all of the third parties involved," it identifies at least Deere's technology vendors as the other third parties who similarly infringed on its copyrights. *Id.* ¶ 37. This is sufficient. *Cf. Flava Works*, 2012 WL 2459146, at *3 ("An amended complaint would have to identify a third-party (or if the third-party's name is not known, at least provide some specifics as to a third-party infringer) who infringed with [the defendant's] assistance and knowledge.").

In addition to direct infringement by a third party, a plaintiff must plead "a direct financial benefit to the defendant" and "the defendant's right and ability to supervise the infringers" to state a vicarious infringement claim. *See Monotype Imaging, Inc. v. Bitstream, Inc.*, No. 03C4349, 2005 WL 936882, at *7 (N.D. Ill. Apr. 21, 2005). Deere argues that KFT pleads neither. Mot. Dismiss 8, 16. The Court disagrees and concludes both that KFT sufficiently alleges Deere's right and ability to supervise the third-party infringers and a direct

financial benefit. As to supervision, KFT alleges that the third parties who infringed upon NAXT are technology vendors like Hitachi who Deere hired to develop, modify, and enhance the DBS. *See* KFT's Countercls. ¶ 21. It also alleges that Deere provided NAXT to these third parties for them to use in developing the DBS, *id.*, and that Deere "did not require third parties to stop using NAXT, require third parties to remove NAXT from Deere's DBS . . . or otherwise stop causing third parties to infringe after [KFT] demanded that Deere stop," *id.* ¶ 38. If true that Deere hired the third parties to create a product for Deere, provided the allegedly copyrighted material to those third parties, and could have prevented or required the third parties to stop using NAXT in conjunction with creating the DBS, then Deere had the right and ability to supervise the infringers. *Cf. GC2 Inc. v. Int'l Game Tech. PLC,* 255 F. Supp. 3d 812, 824–25 (N.D. Ill. 2017) (finding that the plaintiff adequately alleged the right and ability to supervise where it alleged the defendants had "the authority to put a stop to the infringing conduct even after a consumer's one-time purchase").

The key inquiry for the direct financial benefit element is "whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Id.* at 825 (quotation marks omitted). KFT contends that Deere gets a financial benefit in two ways: because they no longer have to pay KFT's license fees and because "[t]he presence of unlicensed NAXT code and features in Deere's accused DBS . . . acts as a draw for potential customers and/or is a contributing factor in a customer's decision to use DBS." Resp. 15–16. At least the first is pleaded in the counterclaim. *See* KFT's Countercls. ¶ 23. Allowing technology vendors to use and build upon NAXT to create the DBS without paying license fees to KFT would be a

financial benefit to Deere. Accordingly, the Court finds that KFT has adequately alleged a vicarious infringement claim.

Deere makes no other arguments against KFT's contributory infringement theory, so the Court will not dismiss KFT's contributory infringement claim.

### d. Unjust Enrichment

"Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). The unjustness of the retention usually derives from "some improper conduct by the defendant." *Id.* Deere makes two arguments as to why KFT's unjust enrichment claim should dismissed: first, that it is preempted by the Copyright Act; and second, that because "the MSA clearly governs," KFT cannot bring an equitable claim for relief. Mot. Dismiss 17.

### 1. Preemption

Deere argues that KFT's unjust enrichment claim is preempted by its copyright claims. *Id.* The Copyright Act exclusively governs "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . and come within the subject matter of copyright." 17 U.S.C. § 301(a). The Seventh Circuit has a two-step test for determining whether a state claim is preempted under this provision: (1) "the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright"; and (2) "the right must be equivalent to any of the rights specified in [17 U.S.C.] § 106." *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 500 (7th Cir. 2011) (quoting *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986)). The second element requires an analysis of whether the state law at issue regulates conduct "that is qualitatively

13

distinguishable from that governed by federal copyright law." *Id.* at 501 (quotation marks omitted). But Deere's sole argument on this element is that "the rights [KFT] seeks to vindicate under [the unjust enrichment claim] are equivalent to one of the rights protected by the Copyright Act." Mot. Dismiss 17. The Court will not further address such a woefully underdeveloped and unsupported argument. *See United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("It is not th[e] court's responsibility to research and construct the parties' arguments.").

### 2. Contract Remedy

Deere next argues that "unjust enrichment is an equitable remedy and, thus, can only lie when there is no adequate remedy at law." Mot. Dismiss 17. It also argues that "[w]here a written contract exists . . . the remedy is an action for contract damages." *Id.* (citing *Oyoque v. DePaul Univ.*, 520 F. Supp. 3d 1058, 1065–66 (N.D. Ill. 2021)).

This argument fails for two reasons. First, where, as here, a party is seeking a monetary recovery for unjust enrichment, *see* KFT's Countercls. ¶ 46, the "adequate remedy at law" defense is inapplicable. *Partipilo v. Hallman*, 510 N.E.2d 8, 11 (Ill. App. Ct. 1987); *see also In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010) ("[T]he Illinois Supreme Court has said that restitution, i.e., money damages under an unjust enrichment theory, *is* a legal remedy." (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 678–79 (Ill. 1989))).

Second, the caselaw Deere is relying on, *see* Mot. Dismiss 17, stands only for the proposition that when an "unjust enrichment claim is premised on a failure to fulfill contractual terms," a plaintiff fails to state a claim, *Oyoque*, 520 F. Supp. 3d at 1065–66; *see also Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006) ("Shaw fails to present a claim for unjust

enrichment, because that is unavailable where the claim rests on the breach of an express contract."); *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 2005) ("[A plaintiff] may not include allegations of an express contract which governs the relationship of the parties[] in the counts for unjust enrichment and promissory estoppel." (quotation marks omitted)). While KFT mentions Deere's "failure to adhere to the [a]greements" in its unjust enrichment claim, it also bases its claim on Deere's failure "to pay ongoing royalties, subscription, and license fees." KFT's Countercls. ¶ 43. And in its response to the motion to dismiss, KFT appears to clarify that its claim is that after Deere "terminated the agreements between the parties," it "wrongfully retained the benefits of KFT's work without paying KFT." Resp. 19. Accordingly, at this stage, the Court finds that KFT's claim is not for breach of an express contract or failure to fulfill contractual terms. Finding none of Deere's arguments persuasive, the Court will not dismiss KFT's unjust enrichment claim.

## CONCLUSION

For the foregoing reasons, Plaintiff Deere & Company's motion to dismiss, ECF No. 259, is DENIED.

Entered this 14th day of December, 2023.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
