UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DEERE & COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-04210-SLD-RLH |
| | ) |
| XAPT CORPORATION, XAPT SOLUTIONS PTY LTD, XAPT KFT, and COSMO CONSULT BUSINESS SOLUTIONS S.R.L., | ) |
| | ) |
| Defendants. | ) |

ORDER

Before the Court is Defendant XAPT Corporation's[1] ("XAPT Corp.") Motion for Reconsideration Concerning the Court's Ruling on Motion for Entry of Proposed Order [Dkt. 241], ECF No. 344.  For the reasons that follow, the motion is DENIED IN PART and GRANTED IN PART.

BACKGROUND

This case arises out of a failed project to build a new software system for Plaintiff Deere & Company ("Deere").  Deere hired XAPT Corp. to create this system by building on a Microsoft platform.  *See* Second Am. Compl. ¶¶ 3–5, 38(c), ECF No. 60.  The project was unsuccessful, leading Deere to sue XAPT Corp. for breach of contract, fraudulent inducement, reformation, conversion, and replevin, *see generally id.*, and XAPT Corp. to countersue for breach and repudiation of contract, trade secret infringement, unjust enrichment, and deceptive

---

[1] The motion for reconsideration purports to be brought on behalf of Defendants XAPT KFT, XAPT Corporation, and XAPT Solutions Pty Ltd.  *See* Mot. Reconsideration 1, ECF No. 344.  But the motion seeks reconsideration of an order that only pertains to XAPT Corporation, so the Court will treat the motion as if it were only brought by XAPT Corporation.

1

trade practices, XAPT Corp.'s Answer 7–39, ECF No. 193. What followed has been, to be frank, messy: years of discovery disputes, a failure of the parties to resolve minute issues on their own, failure to follow court orders, and numerous appeals of then-Magistrate Judge Jonathan Hawley's discovery orders.

This specific order concerns a narrow issue—who must pay the cost of maintaining licenses for certain Microsoft "environments" that XAPT Corp. is paying for but only Deere has access to? Deere initially brought this issue to Judge Hawley's attention in a motion for entry of a protocol governing discovery of electronically stored information ("ESI") filed in July 2020. *See* Mot. Entry Protocol, ECF No. 79. Deere noted that XAPT Corp. had licensed "[t]he LCS and Sandbox environments" from Microsoft for the parties' project and asked that XAPT Corp. be ordered to maintain those licenses until discovery regarding those environments could be completed. *See id.* at 4–5, 10–11 & n.18. Judge Hawley took up the issue at a hearing in September 2020. The parties agreed that the environments needed to be preserved, Sept. 2, 2020 Hr'g Tr. 29:5–30:1, ECF No. 95, but there were questions as to how they would be preserved and who would pay for the preservation, *id.* at 30:2–19. On the second question, Judge Hawley noted that the general rule is that "the person who has to pay . . . to preserve ESI is the person who owns that ESI." *Id.* at 30:20–23. But he acknowledged that the issue was complicated in this case because—as conceded by the parties at the hearing, *see id.* at 22:8–16; *id.* at 23:23–25—though XAPT Corp. was paying for the licenses, only Deere had access to the environments. *Id.* at 32:5–12 ("The problem here is we have this hybrid situation where XAPT has been paying for the licenses. . . . [B]ut Deere is the only one who has the access to it. The question is, who actually is in control of this information?"). Judge Hawley concluded that the parties should share the cost of preserving the licenses. *See id.* at 38:3–20. To accomplish that,

Judge Hawley ordered that Deere first pay as much as XAPT Corp. had paid for the licenses itself up to that point and then once the parties had expended equal amounts, the parties would share the expenses. *Id.* at 68:23–69:18.

On June 9, 2021, XAPT Corp. filed a motion asking Judge Hawley to enter a proposed order on ESI that would require Deere to pay more than $181,000 to cover its share of the costs from June 25, 2020 to May 24, 2021 and then pay to XAPT Corp. fifty percent of its documented monthly costs for the licenses. Mot. Entry Proposed Order 2, ECF No. 166; Proposed Order, ECF No. 166-1. Deere opposed the motion, arguing that it had prepaid $1.5 million in license fees pursuant to the contracts governing the parties' original relationship and that XAPT Corp. had "never provided any accounting or reconciliation" of that money, such that Deere could not determine how much money it still needed to pay to comply with Judge Hawley's September 2, 2020 ruling. Mem. Opp. Mot. Entry Proposed Order 1–2, ECF No. 167.

Judge Hawley considered XAPT Corp.'s motion at a hearing in February 2022. XAPT Corp. argued that there had been no "prepayment" of license fees because the $1.5 million Deere was referring to was "not a credit that would offset any balances that Deere may have owed to XAPT" Corp. Feb. 24, 2022 Hr'g Tr. 12:15–25, ECF No. 204. Judge Hawley summarized the two issues underlying the parties' dispute as: 1) "a disagreement as a matter of interpretation of the contract" about the nature of the $1.5 million and what it could be used for; and 2) how much money had been paid toward the licenses and what the charges would be going forward. *Id.* at 14:19–15:17. Judge Hawley's solution was to order XAPT Corp. "to provide documentation to the Court regarding the invoices that ha[d] been paid, what the costs were, what they were associated with, what the costs [we]re going to be in the future" and to allow both parties to brief the issue of how the $1.5 million should be characterized under the contract. *Id.* at 15:18–16:7.

3

He ordered XAPT Corp. to produce its documentation to Deere within fourteen days and Deere to file a memorandum on the interpretation question within fourteen days of receipt of the documents. *Id.* at 17:5–12. He allowed XAPT Corp. fourteen days to file a response. *Id.* at 17:13–14.

Deere filed a memorandum arguing Judge Hawley should reconsider his initial September 2, 2020 ruling because when it was made, "XAPT [Corp.] had not completely or accurately informed the Court or Deere of the actual license fee costs it was incurring to preserve" the at-issue licenses and had not "revealed that it still possesse[d] a substantial amount (almost 1 million dollars) in Deere['s] prepaid license fees." Updated Mem. Opp. 1–2, ECF No. 218. Deere also noted that since September 2020, three more parties had been added to the litigation and it would be "unjust to require Deere to bear a disproportionate share" of the costs. *Id.* at 2. XAPT Corp. stated in response that the total costs it had incurred for the licenses was $391,319.10 and that it incurred an additional $16,115 every thirty days. XAPT Corp.'s Resp. Deere Mem. 2, ECF No. 233. Moreover, it argued again that the $1.5 million Deere paid pursuant to the parties' contract was not a credit that Deere could use; instead, the contract prohibited Deere from using that money to set off amounts otherwise payable to XAPT. *Id.* at 10–11.

Judge Hawley denied relief to both parties. *See generally* July 28, 2022 Order, ECF No. 241. He found that Deere had entirely failed to address the issue of how to interpret the $1.5 million payment under the contract, so he concluded that none of it was required to be used toward the at-issue Microsoft license fees. *Id.* at 6–7. But he also found that XAPT Corp. had failed to provide documentation to the Court from which the Court could determine how much money had been paid toward the licenses and what the charges would be going forward such that

he would not order Deere to make a payment. *Id.* at 8–9. Moreover, he declined to reconsider the cost-sharing allocation that he ordered at the September 2020 hearing. *Id.* at 10–11. After Judge Hawley's order, the parties "[we]re in the very same position they were before they presented their June 2022 (Deere) and July 2022 (XAPT [Corp.]) briefs regarding the costs to preserve the Microsoft licenses." *Id.* at 9.

Over a year later, in August 2023, XAPT Corp. brought up the cost-sharing issue again at a status conference, indicating its belief that the Court had "asked [the parties] to supply additional information." *See* Aug. 11, 2023 Status Conf. Tr. 37:6–11, ECF No. 321. Judge Hawley noted that his recollection was that he "didn't tell [them] go back and give [him] more information" but rather that he "denied the motion" and the issue was "resolved." *Id.* at 39:1–40:2.

XAPT Corp. filed the instant motion for reconsideration under Federal Rule of Civil Procedure 54(b) a few months later. *See* Mot. Reconsideration 1, 9. Deere opposes reconsideration. Opp. Mot. Reconsideration 1, ECF No. 359.

## DISCUSSION

This case raises an interesting question about the interplay between Federal Rules of Civil Procedure 72(a) and 54(b). Federal Rule of Civil Procedure 72(a) sets a fourteen-day deadline for a party to file objections to a non-dispositive order by a magistrate judge and prohibits a party from "assign[ing] as error a defect in the order not timely objected to." *Id.* Rule 54(b) provides that a non-final order may be revised "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." XAPT Corp. does not address this interplay, while Deere argues that XAPT Corp.'s motion is procedurally improper because any objections XAPT Corp. had to Judge Hawley's July 28, 2022 Order

should have been made within fourteen days of its entry. *See* Opp. Mot. Reconsideration 3, 9–10.

Some courts have "expressed reservations about permitting a party to proceed under Rule 54" in circumstances like these, *Vail v. Hyundai Motor Am., Inc.*, No. 23-cv-297-JDR-SH, 2024 WL 5355367, at *1 (N.D. Okla. June 7, 2024), describing it as allowing "an end run around the objection requirements of Rule 72(a)," *Grant v. RentGrow, Inc.*, No. SA-21-CV-1172-JKP, 2023 WL 6518844, at *2 (W.D. Tex. Oct. 4, 2023). But the Court cannot find authority stating that this practice is strictly forbidden. Instead, some courts have simply noted the practice is unusual, *e.g.*, *Belliveau v. Whirlpool Corp.*, No. 3:07CV-621-S, 2008 WL 11358018, at *1 (W.D. Ky. July 25, 2008) ("While this procedure is somewhat unconventional in garden variety discovery matters, we will not belabor the point."), or concluded that the party seeking reconsideration must make a special showing that reconsideration would be in the interests of justice, *see Lowell v. Drummond, Woodsum & MacMahon Emp. Med. Plan*, No. Civ. 03-244-P-S, 2004 WL 1571793, at *6 (D. Me. July 13, 2004) (assuming that if "a litigant who fails to lodge a timely objection to a magistrate judge's nondispositive ruling in accordance with Rule 72(a)" can "invoke Rule 54(b) in aid of a belated challenge," she would "be obliged to demonstrate that reconsideration was in the interests of justice" by providing a justification for failing to object earlier or by showing that she would be prejudiced by failing to reconsider the matter (quotation marks omitted)); *cf. Grant*, 2023 WL 6518844, at *2 (noting that the court would grant relief under Rule 54(b) to a party who did not object under Rule 72(a) only in "rare case[s]").

Accordingly, the Court finds that Rule 54(b) is an allowable vehicle for XAPT Corp.'s motion. But the Court will consider XAPT Corp.'s delay in moving for reconsideration as a factor in ruling on the motion as appropriate.

I.  **Legal Standard**

"[I]t is well established that a district court has the inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment." *Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 149 (S.D. Ind. 1993); *see Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 694 n.5 (7th Cir. 2007) (noting that a "district court ha[s] broad authority to reconsider" an interlocutory order). "Unlike motions to reconsider final judgments, which are governed by . . . Rule . . . 59 or 60, a motion to reconsider an interlocutory order . . . may be entertained and granted as justice requires." *United States v. Gerard*, No. 1:14-CV-67-TLS, 2017 WL 4769662, at *1 (N.D. Ind. Oct. 23, 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment ("[I]nterlocutory judgments [and orders] are not brought within the restrictions of [Rule 60(b)], but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."). A motion for reconsideration "essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995).[2] "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

---

[2] The quoted language from *Russell*, 51 F.3d at 749, pertains to Rule 59(e) motions, but courts generally apply the same standard to motions to reconsider made under Rule 54(b). *See, e.g.*, *Morningware, Inc. v. Hearthware Home Prods., Inc.*, No. 09 C 4348, 2011 WL 1376920, at *2 (N.D. Ill. Apr. 12, 2011).

## II.    Analysis

XAPT Corp. argues that reconsideration is warranted for two reasons: first, Judge Hawley's July 28, 2022 Order "mistakenly stated that XAPT [Corp.] had not complied with the Court's" instruction to submit documentation directly to the Court; and second, because Deere has not yet paid any money toward the licenses despite Judge Hawley's September 2020 ruling that the parties share the cost of maintaining the Microsoft licenses remaining intact. Mot. Reconsideration 9–14.

XAPT Corp.'s mistake argument does not persuade the Court to reconsider Judge Hawley's order. XAPT Corp. could have raised this argument in a timely Rule 72 objection, so the Court is not inclined to consider it now. Moreover, XAPT Corp. cherry-picks from the February 2022 hearing transcript to support its argument. For example, it notes that when setting the briefing schedule, Judge Hawley ordered XAPT Corp. to turn over the documents to Deere within fourteen days of the hearing and did not mention turning over the documents to the Court. *See* Mot. Reconsideration 10–11. It also highlights that Judge Hawley stated that he did not need to resolve the questions of "what's been paid, what's going to be charged?" *Id.* at 10 (quoting Feb. 24, 2022 Hr'g Tr. 15:10–12).

To be sure, Judge Hawley did make that statement. But XAPT Corp. conveniently fails to mention that Judge Hawley said seven lines later that XAPT Corp. needed to "provide documentation *to the Court* regarding the invoices that ha[d] been paid, what the costs were, what they were associated with, what the costs [we]re going to be in the future." Feb. 24, 2022 Hr'g Tr. 15:19–23 (emphasis added). Even if Judge Hawley had not specifically ordered XAPT Corp. to provide those documents to the Court, when XAPT Corp. filed its response to Deere's supplemental memorandum and asked the Court to order Deere to pay nearly $200,000—half of

8

$391,319.10, *see* XAPT Corp.'s Resp. Deere Mem. 2—over Deere's objection, it should have attached evidence from which the Court could find that it had actually incurred those expenses. The Court does not award hundreds of thousands of dollars in costs on a party's mere say so. To allow XAPT Corp. to belatedly provide the documentation it failed to provide earlier would be inappropriate because it could have provided that documentation at the appropriate time. *See LB Credit Corp. v. Resolution Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (holding that a motion to reconsider is "not appropriately used . . . to present evidence that was available earlier").

XAPT Corp.'s second argument—that Deere has yet to comply with the original order that the parties share the costs of maintaining the relevant Microsoft licenses—does not persuade the Court to reconsider Judge Hawley's July 28, 2022 Order. XAPT Corp. had numerous opportunities to provide the Court with documentation of how much Deere should have paid toward the licenses up to that point.

But it does persuade the Court to consider whether it should order Deere to pay expenses postdating July 28, 2022. Judge Hawley's September 2020 ruling that the parties should equally share the cost of the Microsoft licenses that XAPT Corp. holds remained in force even after July 28, 2022. *See* July 28, 2022 Order 10–11 (denying Deere's request for reconsideration of the September 2020 oral ruling). If future costs were not anticipated to be shared, surely Judge Hawley would have simply vacated his original order. Under the September 2020 order, then, Deere is still obligated to pay half of those costs, and it is apparent that Deere has not—or at least had not as of January 2024 when it filed its response to the motion for reconsideration—paid any money toward that obligation.

Deere has asked the Court to, if it is inclined to grant XAPT Corp. any relief, stay the decision so that it can conduct discovery like "deposing XAPT personnel regarding the

9

application of Deere's prepayment." Opp. Mot. Reconsideration 14. The prepayment issue has been decided—just like the Court will not allow XAPT Corp. an opportunity to re-prove what it could have proved earlier, the Court will not allow Deere an opportunity to fix its failure to make contract interpretation arguments.

XAPT Corp. has provided its Microsoft invoices and breakdowns of the portion of those invoices that are attributable to the Deere project. These show that XAPT Corp. has been billed $9,500 for licenses to one environment and $6,615 for licenses to another environment monthly, for a total of $16,115. The Court has documentation to support that this amount was billed by Microsoft in August 2023, July 2023, June 2023, May 2023, April 2023, March 2023, February 2023, January 2023, December 2022, November 2022, October 2022, September 2022, and August 2022. That amounts to $209,495. Deere owes XAPT Corp. half of that, per Judge Hawley's September 2, 2020 order.

## CONCLUSION

Accordingly, Defendant XAPT Corporation's Motion for Reconsideration Concerning the Court's Ruling on Motion for Entry of Proposed Order [Dkt. 241], ECF No. 344, is GRANTED IN PART and DENIED IN PART. Plaintiff Deere & Company shall pay XAPT Corporation $104,747.50 for its share of the cost of maintaining Microsoft licenses from August 2022 to August 2023. XAPT Corporation's counsel may transfer Deere & Company's initial payment of $52,904.10 from the Lewis Brisbois client trust account to XAPT Corporation. If it does so, then Deere & Company will only owe $51,843.40 for the period between August 2022 and August 2023. If the parties cannot agree to the amount of costs that XAPT Corporation has incurred after August 2023, half of which Deere is obligated to reimburse XAPT Corporation

for, XAPT Corporation may file another motion to impose costs. XAPT Corporation must request a specific amount and attach documentation to support that request.

Entered this 5th day of August, 2025.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE

11